COOLEY LLP
ALI M. M. MOJDEHI (123846)
(AMOJDEHI@COOLEY.COM)
JANET D. GERTZ (231172)
(JGERTZ@COOLEY.COM)
4401 Eastgate Mall
San Diego, CA  92121
Telephone:     (858) 550-6000
Facsimile:      (858) 550-6420

[Proposed] Counsel for Debtor Vail Lake Rancho California, LLC

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>VAIL LAKE RANCHO CALIFORNIA, LLC,<br>a California limited liability company,<br><br>Debtor. | Case No.  12-16684-LA-11<br><br>Chapter 11<br><br>**DEBTOR'S ANSWER CONSENTING TO ENTRY OF ORDER FOR RELIEF**<br><br>STATUS HEARING:<br>Date:     June 6, 2013<br>Time:     2:30 p.m.<br>Crtrm:    2<br>Judge:   Hon. Louise DeCarl Adler |

**TO THE HONORABLE LOUISE DECARL ADLER, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; AND OTHER PARTIES IN INTEREST:**

**COMES NOW,** Vail Lake Rancho California, LLC, the above-captioned debtor (the "Debtor"), to answer the involuntary petition filed under chapter 11 the Bankruptcy Code on December 26, 2012 (the "Petition").  The Debtor, by its Chief Restructuring Officer, Thomas C. Hebrank of E3 Realty Advisors, Inc. (the "CRO")[1] and pursuant to Rule 1011 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby consents to the Court's entry of an order for relief and does not contest the Petition or this Court's jurisdiction over the Debtor

---

[1] A true and correct copy of the resolution authorizing the CRO to file this Answer on behalf of the Debtor is attached hereto as **Exhibit "1."**

and its estate.

THEREFORE, the Debtor respectfully requests that, pursuant to Bankruptcy Rule 1013(b), this Court enter an order for relief in the above-captioned bankruptcy case forthwith.

Dated: June 5, 2013

By: /s/ Thomas C. Hebrank
Thomas C. Hebrank
Chief Restructuring Officer

Submitted by:
COOLEY LLP
Ali M. M. Mojdehi (123846)
Janet D. Gertz (231172)

By: /s/ Ali M. M. Mojdehi
Ali M. M. Mojdehi
[Proposed] Counsel for Debtor
Vail Lake Rancho California, LLC

# EXHIBIT 1

## LIMITED LIABILITY COMPANY RESOLUTION
## OF
## VAIL LAKE RANCHO CALIFORNIA, LLC

THE UNDERSIGNED BEING PRESIDENT OF SHINING CITY, INC., MANAGING MEMBER OF VAIL LAKE RANCHO CALIFORNIA, LLC ("COMPANY"), DOES HEREBY CERTIFY THAT THE RESOLUTIONS SET FORTH IN THE ANNEX "1" ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE, WERE, OR HEREBY ARE, DULY ADOPTED IN ACCORDANCE WITH THE PROCEDURES SET FORTH IN THE LIMITED LIABILITY AGREEMENT OF THE COMPANY AND THAT SAID RESOLUTIONS HAVE NOT BEEN AMENDED, RESCINDED OR REVOKED, AND ARE IN NO WAY IN CONFLICT WITH ANY OF THE PROVISIONS OF THE COMPANY'S LIMITED LIABILITY AGREEMENT.

IN WITNESS WHEREOF, the undersigned has executed this certification as of the 2 day of May 22, 2013.

_____
William Johnson

843441 v1/SD

**Annex 1**

843441 v1/SD

## LIMITED LIABILITY COMPANY RESOLUTIONS OF
## OF VAIL LAKE RANCHO CALIFORNIA, LLC
## (THE "COMPANY")

**WHEREAS:**   The Company has considered the business and financial condition and results of the operations of the Company, on the date hereof, including the assets and liabilities of the Company;

**WHEREAS:**   The Company has reviewed, considered, and received the recommendations of management and legal, financial, and other advisors of the Company as to the relative risks and benefits of the Company pursuing a bankruptcy proceeding under chapter 11 ("Chapter 11") of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code");

**WHEREAS:**   The Company has reviewed, considered, and received the recommendations of management and legal, financial, and other advisors of the Company in respect to the professionals to be employed by the Company in connection with the Company's pursuing a bankruptcy proceeding under Chapter 11, including, without limitation, the retention of a Chief Restructuring Officer and insolvency and general bankruptcy counsel; and

**WHEREAS:**   The Company has reviewed, considered, and received the recommendations of management and legal, financial, and other advisors of the Company in respect to the indemnities and other liability protections to be provided to the Chief Restructuring Officer in the course of his duties in connection with the Company's analysis of and initiation of any Chapter 11 proceeding;

NOW, THEREFORE, it is hereby:

### Retention and Authorization of Chief Restructuring Officer

**RESOLVED:**   That the Company be, and hereby is, authorized and directed to employ and retain the firm of E3 Realty Advisors ("E3"), which shall, pursuant to their engagement, provide the services of Thomas Hebrank to serve as the Company's Chief Restructuring Officer ("CRO");

**RESOLVED:**   That the manager of the Company be, and hereby is, authorized and directed to execute on behalf of the Company the Engagement Agreement with E3 in substantial similarity to the Exhibit "A" hereto ("Engagement Agreement");

843441 v1/SD

**RESOLVED:** That the CRO be, and hereby is, authorized and directed to assist the Company in evaluating and implementing strategic and tactical options through the restructuring process, including without limitation: (i) assisting the Company in the assessment of and taking any and all appropriate actions to address the Company's liquidity issues, (ii) the determination of whether the Company should consent to the entry for an order of relief under Chapter 11 of the Bankruptcy Code; (iii) representing and assisting the Company in carrying out its duties under the Bankruptcy Code during the course and pendency of any Chapter 11 Case, and to take any and all actions to advance the Company's rights and obligations; and (iv) the retention of Cooley, LLP as general bankruptcy counsel.

**RESOLVED:** That the manager be, and hereby is, authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon filing of the Chapter 11 Case, and cause to be filed an appropriate application for authority to retain the services of E3 and the CRO;

## Indemnification of Chief Restructuring Officer and E3

**RESOLVED:** That the Company shall, as of the Engagement Agreement Effective Date (as defined therein) indemnify, hold harmless, and defend each of CRO and E3 including E3's directors, officers, shareholders, principals, employees, agents and controlling persons (collectively with CRO, the "Indemnified Parties", individually, "Indemnified Party"), to the fullest extent lawful, from and against any and all claims, liabilities, losses, expenses, and damages, or actions in respect thereof, (collectively, "Claims") arising out of or in connection with the Engagement Agreement, and arising out of or in connection with the engagement and services of the Indemnified Parties that are the subject of the Engagement Agreement; and that the Company shall further reimburse the Indemnified Parties for any legal or other expenses, including but not limited to attorneys' fees and expenses, reasonably incurred by each Indemnified Party with respect to any Claims indemnified herein, at the time such expenses are incurred;

## Authorization for Filing Voluntary Petitions
## Under Chapter 11 of the Bankruptcy Code and Related Matters

**RESOLVED:** That it is desirable and in the best interests of the Company and its creditors, stockholders, and other parties in interest that the Company consent to the entry of an order for relief to the involuntary petition filed under the provisions of Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of California (the "Bankruptcy Court");

843441 v1/SD

**RESOLVED:** That the CRO be, and hereby is, authorized and directed, in the name of and on behalf of the Company, to execute the consent to the order for relief and to cause the same to be filed in the Bankruptcy Court at such time as the CRO shall determine to be appropriate in his sole discretion;

**RESOLVED:** That the CRO be, and hereby is authorized and directed to execute and file, in the name of and on behalf of the Company, all petitions, agreements, pleadings, and other documents or papers, and to take any and all action that such CRO deems necessary or proper, in connection with the Chapter 11 Case;

### Reorganization of the Company's Business

**RESOLVED:** That E3 and the CRO hereby be, and hereby is, and each of them acting singly hereby is, and any of its or his employees or agents designated by or directed by any of E3 or the CRO, are authorized, empowered and directed, in the name of, and on behalf of the Company, to cause the Company to enter into, execute, deliver, certify, file and record, and perform, such agreements, instruments, motions, affidavits, applications for approvals or rulings of governmental or regulatory authorities, certifications or other documents, to enter into settlements with third parties, and to take such other actions, as in the judgment of the CRO shall be or become necessary, proper and desirable to effectuate a successful reorganization or winding up of the Company's business, in the CRO's sole discretion;

### General Authority of CRO

**RESOLVED:** That, in addition to the specific authorizations previously conferred herein upon E3 and the CRO, E3 and the CRO or its or his designee hereby be, and hereby is, and each of them acting singly hereby is, authorized and directed, in the name of and on behalf of the Company, to take or cause to be taken any and all such further actions, execute and deliver any and all such petitions, agreements, pleadings, and other documents or papers, and pay all expenses, including filing fees, in each case as in such CRO's judgment shall be necessary or desirable to fully carry out the intent and accomplish the purpose of the resolutions adopted herein; and

**RESOLVED:** That all acts, actions, and transactions relating to the matters contemplated by the resolutions herein done in the name of and on behalf of the Company, which acts would have been approved by the resolutions herein except that such actions were taken before these resolutions were approved and adopted by the Company, are hereby in all respects approved and ratified.

843441 v1/SD

# EXHIBIT A
# ENGAGEMENT LETTER

843441 v1/SD



May 21, 2013

Mr. and Mrs. William Johnson
Owners and/or Managers
Vail Lake-Rancho California LLC and Affiliated Companies
7824 Exchange Place
La Jolla, CA 92037

Dear Bill and Tish:

    This letter, together with the attached <u>Exhibit "A"</u>, incorporated herein by reference, sets forth the agreement ("Agreement") effective on the date first written above (the "Effective Date"), between E3 Realty Advisors, Inc., a California corporation ("E3") and the following entities (collectively referred to herein as the "Company"):

- Vail Lake USA LLC,

- Vail Lake Village & Resort LLC,

- Outdoor Recreational Management LLC,

- Vail Lake Groves LLC,

- Vail Lake Groves II LLC;

- Vail Lake Groves III LLC;

- Sovereign People Productions, LLC a Nevada corporation;

- Shining City, Inc. a Wyoming corporation; and

- Any entities created by the Company or William P. Johnson, or Patricia Johnson or other family members and established within one year prior to the petition date where such companies or entities have any rights associated with, or income derived from, the 8,500 acre project commonly known as Vail Lake,

    The Agreement sets forth the terms for the engagement of E3 to provide certain consulting services to the Company to assist it in its restructuring as described below. All defined terms shall have the meanings ascribed to them in this letter and in the Exhibit A.



## AGREEMENT

### I. OBJECTIVE

Subject to receipt of a copy of an executed consent, resolution (or similar document) of each entity comprising the Company as official confirmation of the appointment, E3 will provide the following consulting services: Mr. Thomas C. Hebrank to serve as the Company's Chief Restructuring Officer ("CRO"). Mr. Hebrank will assist the Company in evaluating and implementing strategic and tactical options through the restructuring process, as set forth in the Exhibit A and the Scope of Work set forth therein.

### II. STAFFING, FEES AND RETAINER

E3 will provide the Company with the services of the individuals set forth on the Exhibit A, with the titles, hourly rates, and other descriptions set forth therein. The Company shall compensate E3 for its services and reimburse E3 for its expenses, as set forth in Exhibit A. CRO may delegate such of CRO's duties and actions herein as are generally delegable.

If CRO determines that in addition to E3 staff, the Objective of the Agreement requires the retention of additional personnel, professionals, agents, and managers, CRO may, with the consent of Company and at Company's sole cost and expense, and further subject to the requirements of Section 327 of the Bankruptcy Code as may be applicable, retain such additional personnel, professionals, agents, and managers at the customary and usual rate of the person, professional, agent, or manager retained.

In the event the Company seeks protection under the Bankruptcy Code, the Company will promptly apply to the Court to obtain approval of E3's retention and Retainer *nunc pro tunc* to the date of filing. E3 acknowledges that such retention and the terms thereof are subject to Court approval.

### III. RELATIONSHIP OF THE PARTIES

The parties intend that an independent contractor relationship will be created by the Agreement. Nothing in this Agreement shall be construed to create an employment, joint venture, partnership, franchise, employment or agency relationship between Mr. Hebrank and/or E3 and the Company or any part thereof. Nothing in this Agreement is intended to create, nor shall be deemed or construed to create a fiduciary or agency relationship between E3 and the Company or its Board of Directors, members, or managers.

The Company acknowledges that it is retaining E3 solely to assist and advise the Company as described in the Agreement. This engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement.

E3

The Company acknowledges and agrees that E3 shall retain general bankruptcy counsel to represent the Company and that such counsel shall take direction solely from the CRO and E3 in respect to the Company.

As a material term of this Agreement, each of Bill and Tish Johnson agree, on behalf of themselves and the Company, to immediately turn over the custody and control of all of Company's books and records and banking and checking accounts to E3 and/or the CRO, and to provide assistance in such transfer and further assurances in connection with same. The parties acknowledge and agree that, due to bank policy, each of Bill and Tish Johnson will remain as additional signatories on the accounts at PacTrust Bank. Notwithstanding their continued status as signatories, as a material term of this Agreement, each of Bill and Tish Johnson acknowledge and agree that (i) they are not to disburse, transfer or otherwise distribute funds from the PacTrust Bank accounts during the term of this Agreement; and (ii) that PacTrust Bank will be provided with a copy of this Agreement.

## IV.    LIMIT OF LIABILITY; INDEMNIFICATION

A.    Neither the CRO, nor E3, its agents or employees shall be liable to the Company, or any party asserting claims on behalf of the Company, except for direct damages found in a final judicial determination to have resulted primarily from the gross negligence, bad faith, willful misconduct, or fraud. Neither the CRO, nor E3, its agents or employees shall be liable for incidental or consequential damages under any circumstances, even if advised of the possibility of such damages, and such persons' aggregate liability, whether in tort, contract, or otherwise, is limited to the amount of fees paid for services under the Agreement.

B.    The Company shall, as of the Effective Date indemnify, hold harmless, and defend each of CRO and E3, including E3's directors, officers, shareholders, principals, employees, agents and controlling persons (collectively with CRO, the "Indemnified Parties", individually, "Indemnified Party"), to the fullest extent lawful, from and against any and all claims, liabilities, losses, expenses, and damages, or actions in respect thereof, (collectively, "Claims") arising out of or in connection with the Engagement Agreement, and arising out of or in connection with the engagement and services of the Indemnified Parties that are the subject of the Engagement Agreement; and that the Company shall further reimburse the Indemnified Parties for any legal or other expenses, including but not limited to attorneys' fees and expenses, reasonably incurred by each Indemnified Party with respect to any Claims indemnified herein, at the time such expenses are incurred.

## V.    TERM; TERMINATION AND SURVIVAL

A.    Term

Unless earlier terminated as set forth below in Section V.B, the Agreement term shall be for a period of two (2) years from its Effective Date, and may be renewed for additional successive terms of one (1) year by the written agreement of the parties.



### B.  Termination

The Agreement may only be terminated: (i) by the Company solely pursuant to an order of the Bankruptcy Court; (ii) by E3, upon 30 days' advance written notice to Company, for material breach of the Agreement by the Company, including, without limitation, the provisions regarding payment set forth in Section II herein and Exhibit A; or (iii) by the mutual written agreement of E3 and the Johnsons.

The Agreement shall automatically terminate upon the earlier of (1) conversion to chapter 7 of all of the entities comprised by the Company; (2) loss of or other disposition of substantially all of the properties by the entities owning those properties; (3) the effective date of a confirmed plan of reorganization, except if the continued services of E3 are provided for under the plan; or (4) a dismissal of all bankruptcy proceedings involving the Company.

Notwithstanding termination of the Agreement, CRO and E3 will be entitled to any fees and expenses due under the provision of the Agreement, in accordance with Exhibit A. Sections IV though VII and the obligation to pay accrued fees and expenses shall survive the cancellation, expiration or termination of the Agreement, or the engagement which is the subject of the Agreement for any reason.

### VI.  GOVERNING LAW

This Agreement is governed by and shall be construed in accordance with the laws of the State of California with respects to contracts made and to be performed entirely therein and without regard to choice of law or principles thereof.

Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration. Each party shall appoint one non-neutral arbitrator. The two party arbitrators shall select a third arbitrator. If within thirty (30) days after their appointment the two party arbitrators do not select a third arbitrator, the third arbitrator shall be selected by the American Arbitration Association ("AAA"). The arbitration shall be conducted in San Diego, California under the AAA's Commercial Arbitration Rules, and the arbitrators shall issue a reasoned award. The arbitrators may award costs and attorneys' fees to the prevailing party. Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

The Company, CRO, and E3 agree that the Bankruptcy Court shall have exclusive jurisdiction over any and all matters arising under or in connection with this Agreement.

## VII.  GENERAL PROVISIONS

### A.  Severability.

If any portion of the Agreement shall be determined to be invalid or unenforceable, the remainder shall be valid and enforceable to the maximum extent possible.

### B.  Entire Agreement

This Agreement, including its Exhibit A, contains the entire understanding of the parties relating to the services to be rendered by CRO and E3 and supersedes any other communications, agreements, understandings, representations, or estimates between the parties with respect to such services that are the subject matter hereof. The Agreement may not be amended or modified in any respect except in a writing signed by an authorized representative of each party.

### C.  Joint and Several Obligations

Each entity which is included in the definition of the Company shall be jointly and severally liable for the Company's liabilities and obligations as set forth in this Agreement.

### D.  Third Party Beneficiaries

Other than the parties hereto, this Agreement is not intended to confer upon any other person any rights or remedies.

### E.  Notices

All notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given on the day when delivered in person or transmitted by e-mail or facsimile transmission or on the third calendar day after being mailed by United States registered or certified mail, return receipt requested, postage prepaid, to the following addresses or to such other address as any party hereto shall designate to the other for such purpose in the manner herein set forth:

If to CRO or E3

    Thomas C. Hebrank, Principal
    E3 Advisors, Inc.
    501 W. Broadway, Suite 800
    San Diego, CA 92101
    Telephone: (619) 400-4922
    Facsimile: (619) 400-4923
    Email: thebrank@ethreeadvisors.com

843727 v1/SD



Facsimile: (619) 400-4923
Email: thebrank@ethreeadvisors.com

If to Company:

Vail Lake-Rancho California LLC and Affiliated Companies c/o Cooley, LLP
4401 Eastgate Mall
San Diego, CA 92121
Attention: Ali M M Mojdehi
Email: amojdehi@cooley.com,
with copy to Bill and Patricia Johnson at: tishjohnson@mac.com
Facsimile: 858.550.6420

If these terms meet with your approval, please sign and return the enclosed copy of the Agreement.

Sincerely yours,

*Thomas C Hebrank*

Thomas C. Hebrank, Principal
E3 Advisors, Inc.

Attachments: Executed Consents for each entity comprising Company

Acknowledged and Agreed to by Company:

**Vail Lake Rancho California LLC**

By: _____

Shining City, Inc., its Managing Member, William Johnson, President

**Vail Lake USA, LLC**

By: _____

E3 Advisors  501 W Broadway, Suite 800 . San Diego, CA 92101

E3

Vail Lake Village and Resorts, LLC

By: _____

William Johnson, Managing Member


Outdoor Recreational Management, LLC

By: _____

William Johnson, Managing Member


Vail Lake Groves, LLC

By: _____

William Johnson, Managing Member


Approved:

_____

Patricia Johnson

E3 Advisors  501 W Broadway, Suite 800  San Diego, CA 92101

843727 v1/SD



## EXHIBIT A

### FEES AND EXPENSES

1. Fees: E3's fees for services rendered under this Agreement will consist of the following:

    a. Fees based on the hours worked by E3 personnel for the period from the Effective Date through May 31, 2013, based on the hourly fee structure below, not to exceed $20,000.

    b. Monthly fees, based on the hourly fee structure below, not to exceed $25,000, for the following three (3) months.

    c. Monthly fees, based on the hourly fee structure below, not to exceed $20,000, for the remainder and duration of this Agreement

E3 Hourly Rate Schedule:
| | |
|---|---|
| Principal | $275 |
| Managing Director | $235 |
| Director | $200 |
| Associate Director | $150 |
| Accountant | $100 |
| Administrative | $ 75 |

[The above hourly rates are, however, subject to change based upon an annual review. Any annual adjustment of the above hourly rates will apply to hourly rate billings immediately following the date of the adjustment.]

In addition to the fees set forth above, the Company shall pay directly, or reimburse E3 upon receipt of periodic billings, for all actual, reasonable and documented out-of-pocket expense incurred in connection with the engagement, such as travel, lodging and meals.

### RETAINER

E3 shall be paid a retainer in the amount of $25,000 ("Retainer"), payable upon commencement of the engagement. The retainer is not an estimate of total anticipated fees and costs/expenses. E3 invoices shall be offset against the Retainer. Payments of invoices will be used to replenish the Retainer to the agreed-upon amount. Any unearned portion of the Retainer will be applied against your final invoice or returned to the Company at the end of the engagement.

E3

## BILLING AND PAYMENTS

E3 will submit monthly invoices for services rendered and expenses incurred. E3's fees are exclusive of taxes or similar charges, which shall be the responsibility of the Company (other than taxes imposed on E3's income generally).

All payments to be made to E3 shall be due and payable upon receipt of invoice, shall be made payable to "E3 Advisors" and shall be mailed to the following address:

E3 Advisors, Inc.
501 W. Broadway, Suite 800
San Diego, CA 92101
Attn: Thomas C. Hebrank

## SCOPE OF WORK

In addition to the ordinary course duties as CRO, the duties of Mr. Hebrank and other E3 staff will include the following:

- Provide overall leadership of the restructuring process, including working with a wide range of stakeholder groups, together with Mr. and Mrs. Johnson.

- Assist the Company in the design and implementation of a restructuring strategy, together with the Company's other professionals, which is designed to maximize enterprise value and take into account the interests of all constituencies.

- Interface with the Company's various stakeholders and coordinate efforts to achieve a global resolution that will take the form of a chapter 11 plan.

- Assist in the negotiation and resolution of intercompany claims.

- Assist in obtaining and presenting information required by parties in interest in the Company's bankruptcy process, including any official committee appointed by the Court.

- Assist the Company in developing and implementing employee, customer, and vendor communications.

- Assist the Company in other business and financial aspects of a Chapter 11 proceeding, including, but not limited to, development of and support for the approval and confirmation process for a disclosure statement and plan of reorganization.



- Assist in preparing for and filing bankruptcy petitions and related documents and filings required under the Bankruptcy Code.

- Assist with the preparation of the statement of financial affairs, schedules and other regular reports required by the Court, as well as providing assistance in such areas as testimony before the Court, as may be required.

- Assist the Company in developing and implementing accounting procedures and controls as required in any bankruptcy proceeding, including, without limitation, Monthly Operating Reports, vendor management, employee benefits claims, and claims reconciliation.

- Assist the Company in connection with its internal and external affairs, including without limitation, risk management, cash management, supplier management, event management, human resources management, workers' compensation, and similar issues.

- Assist the Company in other tasks as may be necessary, or as agreed in writing.