CSD 1160 [05/15/03]

Peter W. Lianides -- State Bar No. 160517
**WINTHROP COUCHOT P.C.**
660 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Telephone:  (949) 720-4100
Facsimile:   (949) 720-4111

Kelly Abreu
Law Office of Kelly Abreu
P.O. Box 644
Murrieta, CA 92564
Telephone:  (951) 600-0260

Counsel for Secured Creditors,
Kid Gloves, Inc. and 1690463 Alberta Ltd.

## UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California  92101-6991

| | |
|---|---|
| In Re<br>Vail Lake Rancho California, LLC,<br><div align="right">Alleged Debtor.</div> | BANKRUPTCY NO. 12-16684-LA11 |
| Kid Gloves, Inc. and 1690463 Alberta Ltd.<br><div align="right">Moving Party.</div> | RS No. PWL 2 |
| Vail Lake Rancho California, LLC,<br>Ecstatic Holdings Inc.,<br>Phillips, Haskett & Ingwalson, P.C.,<br>United Mercantile Bank & Trust Company, N.A.<br>Security Pacific Bank,<br>First Interstate Bank of California<br>Shamrock Minerals, Inc.<br>Clifford Douglas, Trustee of the Clifford Douglas Profit Sharing Plan Trust,<br>Clifford Douglas, Trustee of the Douglas 1997 Trust,<br>XD Conejo Notes, LLC,<br>Franchise Tax Board,<br>KB Homes Coastal Inc.,<br>Craig Johnson & Associates PC,<br>State of California, Department of Industrial Relations,<br>Lamar Central Outdoor LLC<br>County of Riverside,<br><div align="right">Respondent(s).</div> | |

## MOTION FOR RELIEF FROM AUTOMATIC STAY
☒  **REAL PROPERTY**        ☐    **PERSONAL PROPERTY**

Movant in the above-captioned matter moves this Court for an Order granting relief from the automatic stay on the grounds set forth below.

1.  Involuntary Petition under Chapter    ☐  7    ☒  11    ☐  12    ☐  13  was filed on 12/26/12

2.  Procedural Status:        Involuntary Petition, no order for relief entered.

    a.    ☐    Name of Trustee Appointed *(if any)*:
    b.    ☐    Name of Attorney of Record for Trustee *(if any)*:
    c.    ☐    *(Optional)* Prior Filing Information:
        Debtor has previously filed a Bankruptcy Petition on:_____
        If applicable, the prior case was dismissed on: _____.
    d.    ☐    *(If Chapter 13 case)*:  Chapter 13 Plan was confirmed on _____or a confirmation hearing is
        set for _____.

Movant alleges the following in support of its Motion:

1.    ☒    The following real property is the subject of this Motion:

    a.    Street address of the property including county and state:
        43425 Sage Road, Aguanga, Riverside County, California

41475 Sage Road, Aguanga, Riverside County, California

    b.    Type of real property (e.g., single family residence, apartment building, commercial, industrial, condominium, unimproved):
Approximately 496.63 acres of rural and mostly unimproved land located in Aguanga, California. Collateral for Note 1 includes 9 separate assessor parcel numbers; Collateral for Note 2 includes a tenth parcel.

    c.    Legal description of property is attached as Exhibit 1.

    d.    If a chapter 11 or 13 case and if non-payment of any post-petition payment is a ground for relief, attach the accounting required by Local Bankruptcy Rule 4001-2(a)(4) as Exhibit B. <u>N/A - Both Notes reduced to Judgment</u>

    e.    *Fair market value of property as set forth in the Debtor's schedules: $ <u>N/A – No Schedules Filed (involuntary)</u>.

    f.    *Nature of Debtor's interest in the property:  Fee Simple

2.    ☐    The following personal property is the subject of this Motion *(describe property)*:  <u>N/A</u>

    a.    Fair market value of property as set forth in the Debtor's schedules: $_____

    b.    Nature of Debtor's interest in the property:

3.    *Fair market value of Property according to Movant: <u>Total value of Property: $982,000 to $1,029,000. The Debtor owns an 82% interest in the Property and thus the value of the Debtor's interest is approx. $805,240 to $843,780.</u>

4.    *Nature of Movant's interest in the property:    First Deed of Trust:    $512,963 (1982 Note)
    Second Deed of Trust: $391,044 (1989 Note)

5.    *Status of Movant's loan (1982 Note):
    a.    Balance owing on date of Order for Relief:    <u>$512,963 (as of Involuntary petition date)</u>
    b.    Amount of monthly payment:    $ <u>N/A – Matured and Reduced to Judgment</u>
    c.    Date of last payment:    <u>Prior to May 2002</u>
    d.    If real property,
        i.    Date of default:    <u>June 2002</u>
        ii.    Notice of Default recorded on:    <u>8/2/2012</u>
        iii.    Notice of Sale published on:    <u>11/30/2012</u>
        iv.    Foreclosure sale currently scheduled for:    <u>May 24, 2013</u>
    e.    If personal property, N/A
        i.    Pre-petition default:    $_____    No. of months:_____
        ii.    Post-petition default:    $_____    No. of months:_____

5.    *Status of Movant's loan (1989 Note):
    a.    Balance owing on date of Order for Relief:    <u>$391,044  (as of Involuntary petition date)</u>
    b.    Amount of monthly payment:    $ <u>N/A – Matured and Reduced to Judgment</u>
    c.    Date of last payment:    <u>Prior to May 2002</u>
    d.    If real property,
        i.    Date of default:    <u>June 2002</u>
        ii.    Notice of Default recorded on:    <u>8/2/2012</u>
        iii.    Notice of Sale published on:    <u>n/a</u>
        iv.    Foreclosure sale currently scheduled for:    _____
    e.    If personal property,
        i.    Pre-petition default:    $_____    No. of months:_____
        ii.    Post-petition default:    $_____    No. of months:_____

6.    *(If Chapter 13 Case, state the following:)*
    a.    Date of post-petition default:    N/A    _____
    b.    Amount of post-petition default:    N/A    $_____

7.    Encumbrances:
    a.    Voluntary encumbrances on the property listed in the Schedules or otherwise known to Movant:

| Lender Name | Principal Balance | (IF KNOWN) Pre-Petition Arrearages Total Amount - # of Months | | Post-Petition Arrearages Total Amount - # of Months | |
|---|---|---|---|---|---|
| 1st: Kid Gloves Inc. | $512,963.00 | N/A. Both Notes reduced to Judgment entered on Feb 28, 2012, by San Diego Superior Court, Case no. 37-2009-00094633-CU-FR-CTL | | | |
| 2nd: Kid Gloves Inc. | $391,044.00 | | | | |
| 3rd: Security Pacific | $250,000.00 | Unknown | | Unknown | |
| 4th: KB Homes | $336,345.00 | Unknown | | Unknown | |
| 5th: Clifford Douglas, Trustee | unknown | Unknown | | Unknown | |
| Totals for all Voluntary Liens: | At least $1,490,352.00 | | | | |

b.      Involuntary encumbrances of record (e.g., tax, mechanic's, judgment and other liens, lis pendens) as listed in schedules or otherwise known to Movant:

☐   See attached page, if necessary.

| Creditor Name | Claim Balance | Claim Type |
|---|---|---|
| County of Riverside | $94,467.55 | Property Taxes |
| Craig Johnson & Associates, a professional corporation doing business as Tenner Johnson. | $183,932.19 | Judgment Creditor - Case no. RIC 10021027 - Recorded April 24, 2012 as instrument No. 2012-0185104 |
| State of California, Department of Industrial Relations | $18,500.00 | Certificate of Penalty Lien |
| Lamar Central Outdoor LLC | $33,543.86 | Judgment Creditor, Riverside Superior Court Case No. RIC 1210460 |
| Totals for all Known Involuntary Liens: | $330,443.60 | |

*Separately filed Declaration required by Local Bankruptcy Rule 4001-2(a)(5).

8.      Relief from the automatic stay should be granted because:

a.    ☒    Movant's interest in the property described above is not adequately protected.

b.    ☒    Debtor has no equity in the ☒ real property ☐ personal property described above and such property is not necessary to an effective reorganization.

c.    ☐    The property is "single asset real estate", as defined in 11 U.S.C. § 101(51B), and 90 days (or _____ days as ordered by this court) have passed since entry of the order for relief in this case, and

     i.      the Debtor/Trustee has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; and

     ii.      the Debtor/Trustee has

         (1)    ☐   not commenced monthly payments to each creditor whose claim is secured by the property (other than a claim secured by a judgment lien or by an unmatured statutory lien), or

         (2)    ☐   commenced payments, but such payments are less than an amount equal to interest at a current fair market rate on the value of each creditors' interest in the property.

d.    ☒    *Other cause exists as follows (specify): ☒ Bad Faith Filing, See attached page.

When required, Movant has filed separate Declarations pursuant to Local Bankruptcy Rule 4001-2(a)(5) and (6). Movant attaches the following:

1.    ☒    Other relevant evidence:

     Declaration of Kelly Abreu
     Declaration of Fred W. Reed

2.    ☒    (Optional) Memorandum of points and authorities upon which the moving party will rely.

WHEREFORE, Movant prays that this Court issue an Order granting the following:

☒   Relief as requested.
☐   Other:

Dated: June 17, 2013                  Winthrop Couchot, Professional Corporation

                                        Attorney for Movant, Peter W. Lianides, Esq.

*Separately filed Declaration required by Local Bankruptcy Rule 4001-2(a)(5).

1  MARC J. WINTHROP -- State Bar No. 63218
       mwinthrop@winthropcouchot.com
2  PETER W. LIANIDES -- State Bar No. 160517
       plianides@winthropcouchot.com
3  **WINTHROP COUCHOT P.C.**
   660 Newport Center Drive, Suite 400
4  Newport Beach, CA 92660
   Telephone: (949) 720-4100
5  Facsimile:  (949) 720-4111

6  Kelly Abreu -- State Bar No. 158610
   **Law Office of Kelly Abreu**
7  P.O. Box 644
   Murrieta, CA 92564
8  Telephone: (951) 600-0260

9  Counsel for Secured Creditors,
   Kid Gloves, Inc. and 1690463 Alberta Ltd.

10

11                **UNITED STATES BANKRUPTCY COURT**

12                **SOUTHERN DISTRICT OF CALIFORNIA**

13  In re:                                    Case No. 12-16684-LA11

14  Vail Lake Rancho California, LLC,          RS No. PWL2

15              Debtor in Possession.          Chapter 11 Proceedings

16  Kid Gloves, Inc. and 1690463 Alberta Ltd., **MEMORANDUM OF POINTS AND**
17              Moving Party                   **AUTHORITIES IN SUPPORT OF**
        vs.                                    **MOTION FOR RELIEF FROM**
18  Vail Lake Rancho California, LLC,          **AUTOMATIC STAY; DECLARATIONS**
    Ecstatic Holdings Inc.,                    **IN SUPPORT THEREOF**
19  Phillips, Haskett & Ingwalson, P.C.,
    United Mercantile Bank & Trust Company, N.A.
20  Security Pacific Bank,                     DATE:  [No hearing set]
    First Interstate Bank of California        TIME:
21  Shamrock Minerals, Inc.                    CTRM:
    Clifford Douglas, Trustee of the Clifford Douglas
22  Profit Sharing Plan Trust,                 [11 U.S.C. § 362(d)(1) & (2)]
    Clifford Douglas, Trustee of the Douglas 1997
23  Trust,
    XD Conejo Notes, LLC,
24  Franchise Tax Board,
    KB Homes Coastal Inc.,
25  Craig Johnson & Associates PC,
    State of California, Department of Industrial
26  Relations,
    Lamar Central Outdoor LLC,
27  County of Riverside,
                Respondents.
28

MAINDOCS-#187503-v6-KidGloves_P&A_Mtn_Relief_Stay_362.doc

1

## TABLE OF CONTENTS

2

**PAGE**

3

I.      RELIEF REQUESTED ............................................................................ 2

4

II.     FACTUAL BACKGROUND ................................................................... 2

5
        A.      2009 Scheduled Foreclosure Sale................................................ 2

6
        B.      Debtor's Unsuccessful State Court Suit to Enjoin
                Foreclosure ................................................................................. 3

7
        C.      2012 Re-Scheduled Foreclosure Sale ......................................... 3

        D.      State Court's Injunction Against the Debtor filing

8
                Bankruptcy; And the Debtor's Sham Transfer and New
                Debtor Syndrome Filing.............................................................. 4

9
        E.      The Collusive Involuntary Petition ............................................ 6

10

11
III.    MOVANT IS ENTITLED TO RELIEF FROM STAY FOR
        "CAUSE" UNDER SECTION 362(d)(1)................................................ 9

12
        A.      The Equity Cushion is Insufficient to Established Adequate
                Protection.................................................................................... 9

13
        B.      The Equity Cushion is Eroding Due to the Debtor's Failure to Pay
                Property Taxes, and the Continuing Accrual of Interest and Charges

14
                on the Secured Debt ..................................................................... 10

        C.      The Movant is Not Adequately Protected Due to the Debtor's

15
                failure to Pay Property Taxes ...................................................... 11

16

IV.     MOVANT IS ENTITLED TO RELIEF FROM STAY UNDER

17
        SECTION 362(d)(2) AS THE DEBTOR HAS NO EQUITY IN THE
        PROPERTY AND THERE IS NO PROSPECT OF REORGANIZATION ........... 12

18
        A.      The Debtor Has No Equity in the Collateral ............................... 13

19
        B.      There Is No Effective Reorganization in Progress....................... 13

20
V.      THE INVOLUNTARY PETITION WAS FILED IN "BAD FAITH" AND
        THEREFORE CONSTITUTES CAUSE FOR RELIEF FROM STAY .................. 15

21

22
VI.     CONCLUSION ....................................................................................... 19

23

24

25

26

27

28

**TO THE HONORABLE LOUISE DECARL ADLER, UNITED STATES BANKRUPTCY JUDGE, RESPONDENTS, AND OTHER PARTIES-IN-INTEREST:**

Kid Gloves Inc., a Nevada Corporation ("Kid Gloves") and 1690463 Alberta Ltd. ("Alberta") (collectively "Movant") hereby submit this memorandum of points and authorities in support of their Motion for Relief from the Automatic Stay pursuant to 11 U.S.C. § 362(d). The Motion is based upon the within Memorandum of Points and Authorities, the Declaration of Kelly Abreu ("Abreu Declaration") appended hereto, the Declaration of Fred W. Reed ("Reed Declaration") and the Request for Judicial Notice (RJN) filed concurrently herewith, all pleadings, papers and records on file with the Court and such other evidence, oral or documentary, as may be presented to the Court at the time of the hearing on the within Motion.

## I.

## <u>RELIEF REQUESTED</u>

The Movant seeks relief from stay to foreclose on approximately 539.73 acres of rural and mostly unimproved land located in Aguanga, California ("Property") currently owned (in part) by the Debtor, Vail Lake Rancho California, LLC.  Specifically, the Debtor owns 82% of the Property; the other 18% is owned by the Debtor's counsel, Phillips, Haskett & Ingwalson.  See RJN, Ex. 1.[1] Movant holds two promissory notes (referred to herein as "Note 1" and "Note 2" or, together "Promissory Notes") and the trust deeds which secured such notes ("TD1" and "TD2" or, together "Trust Deeds").  Both Promissory Notes have been validated by judgment of the San Diego Superior Court.  See Abreu Declaration, Ex. 16.

## II

## <u>FACTUAL BACKGROUND</u>

### A.    <u>2009 Scheduled Foreclosure Sale.</u>

Kid Gloves purchased the two Promissory Notes in April and May of 2002.  The chain of title with respect to Promissory Notes and Trust Deeds is set forth in the Abreu Declaration and exhibits 2 through 16 thereto.  In 2009, Kid Gloves initiated foreclosure proceedings on the Trust

---

[1] The *Certificate of interested Entities or Persons* filed with the California Court of Appeal, Fourth Appellate District, Division One, Case No. D061892, sets forth that Phillips, Haskett & Ingwalson holds an "18% ownership interest in the subject real property."

Deeds. A Notice of Default was initially recorded on March 23, 2009, and a foreclosure sale scheduled for July 30, 2009.

### B.    Debtor's Unsuccessful State Court Suit to Enjoin Foreclosure.

On July 24, 2009, the Debtor filed a lawsuit with the San Diego Superior Court against Kid Gloves, and obtained a preliminary injunction against Kid Gloves' then pending foreclosure. The Debtor's lawsuit was filed in San Diego Superior Court; Case No. 37-2009-00094633. In its Amended Complaint, the Debtor *inter alia* alleged causes of action to "cancel notes and Trust Deeds" and for wrongful foreclosure. On February 28, 2012, the San Diego Superior Court entered judgment in favor of Kid Gloves, and against the Debtor, based inter alia on the expiration of the statute of limitations ("Foreclosure Judgment"). See Abreu Declaration, Ex. 16. The Superior Court's Foreclosure Judgment also provides for a money judgment in favor of Kid Gloves based upon the two Promissory Notes in the collective amount of $758,000.28 as of January 20, 2012, with interest accruing at a rate of 14% per annum thereafter. The Superior Court's Judgment specifically held that Kid Gloves is "free to foreclose" on its respective Promissory Notes and Trust Deeds.

The Debtor appealed the Foreclosure Judgment which is presently pending before the California Court of Appeal, Fourth Appellate District. A Notice of Appeal was filed by the Debtor on April 25, 2012 in the 4th Appellate District Division 1 - Case No. D061892.[2]

### C.    2012 Re-Scheduled Foreclosure Sale.

There was no appeal bond filed by the Debtor. The Debtor did not seek, nor obtain a stay pending appeal. Accordingly, Kid Gloves rescheduled a foreclosure sale on the Property, which was initially set for December 27, 2012.

On Friday, December 21, 2012, Frederick Phillips, counsel for the Debtor left a voice message was left for Movants' counsel, Kelly Abreu. Frederick Phillips' law firm, *Phillips, Haskett & Ingwalson* ("PHI"), are beneficiaries of a trust deed given by the Debtor for an undisclosed amount on the Property. (See Exhibit 17 from a copy of the Trustee's Sale Guarantee issued by the subject property at page 18, item 15 attached hereto and incorporated by this reference.) PHI also

---

[2] On January 8, 2013, PHI, filed Appellant's Opening Brief on behalf of the Alleged Debtor.

has an undivided 18% interest in the Property.  (See Exhibit 17 at page 19, item 19, attached to the Abreu Declaration).[3]

In addition to the voice message from Mr. Phillips, Ms. Abreu also received an e-mail from Mr. Phillips wanting the payoff amount on the first trust deed.  Ms. Abreu e-mailed Mr. Phillips and gave him the approximate payoff amount.  (See Exhibit 18 to the Abreu Declaration, a printout of that e-mail attached hereto and incorporated by this reference.)

On Wednesday, December 26, 2012, one day prior to the scheduled foreclosure's sale on the subject property, Ms. Abreu received an e-mail from Mr. Phillips.  A printout of that e-mail is attached hereto as Exhibit "19" and made a part of this declaration.  Mr. Phillips stated that he needed a continuance of the foreclosure sale for a week to raise the cash needed to pay off the first trust deed.  If Movant did not agree to the continuance, he would be forced to file for bankruptcy protection, which would involve a lot of costs and delays.

Based upon Mr. Phillips' email on December 26, 2012, it is abundantly clear that the Debtor intended the filing of the involuntary petition in order to stop the foreclosure sale.  The fact that the Superior Court (see below) prohibited the filing of a voluntary petition without the consent of all of the Debtor's members, merely meant that Mr. Phillips orchestrated the filing of an involuntary petition without the consent of its remaining member, Ms. Chen.

Ms. Abreu received an e-mail from the trustee later that day (Wednesday, December 26, 2012) at 4:38 p.m. stating that the trustee's sale for the next morning would have to be postponed because they had received notice of the involuntary bankruptcy filing, Case No. 12-16684-LA11.

**D.**    **State Court's Injunction Against the Debtor filing Bankruptcy; And the Debtor's Sham Transfer and New Debtor Syndrome Filing**.

In an action unrelated to the Movant, one of the Debtor's members filed an action against the Debtor, with the Riverside Superior Court, Case No. RIC 1210424, which the Movants are informed relates to a control dispute over the Debtor ("Riverside Chen Action").  The operating agreement of

---

[3] At trial in San Diego Superior Court, Case No. 37-2009-00094633, Frederick Phillips, attorney for the Alleged Debtor, stated that "My firm has a lien, KB Home has a lien, and Douglas has a lien for over a million and a half dollars."  (See Exhibit "20," the Reporter's Transcript from January 19, 2012, page 235, lines 15-18 attached hereto and incorporated by this reference.)

MAINDOCS-#187503-v6-KidGloves_P&A_Mtn_Relief_Stay_362

1    the Debtor requires the written consent of Chen in order to file a voluntary bankruptcy filing. See

2    Declaration of Gregson M. Perry ("Perry Declaration") attached to the RJN, as Ex. 2.  Plaintiff

3    Chen sought an injunction prohibiting the Alleged from transferring the property or filing

4    bankruptcy without Chen's written consent.  In order to avoid a foreclosure sale, the Debtor had

5    previously transferred certain real property to a new entity, Vail Lake Groves LLC, without the

6    consent of Plaintiff Chen.   Vail Lake Groves LLC filed a new debtor syndrome Chapter 11 case,

7    Case no. 11-14665-PB11 before Judge Bowie, which was subsequently dismissed on March 12,

8    2012, pursuant to the Court's order to show cause.  As set forth in the Perry Declaration:

9            Defendants have a history of ignoring the restrictions on Shining City's
        authority contained in VLRC's operating agreement and engaging in bad
10       faith transfers of VLRC's property and sham bankruptcy filings. For example,
        after Cambridge recorded a notice of default with respect to certain parcels
11       of VLRC's real property in August 2011, defendant Johnson, falsely
        representing himself as the manager of VLRC, signed and recorded a
12       quitclaim deed for no consideration, quitclaiming the parcels in question to
        an entity named Vail Lake Groves, LLC ("VL Groves").  Attached hereto as
13       Exhibit E is a true and correct copy of that quitclaim deed.  Defendant
        Johnson, as manager of VL Groves, then filed a bankruptcy petition on behalf
14       of Vail Lake Groves in the United States Bankruptcy Court for the Southern
        District of California.  Attached hereto as Exhibit F is a true and correct copy
15       of that petition.  Ms. Chen did not consent to either the transfer of the parcels
        in question to VL Groves or the subsequent bad faith bankruptcy filing.  I
16       was contacted by defendants' counsel shortly before the transfer and filing.
        He asked me if I could obtain Ms. Chen's consent (Ms. Chen lives in Hong
17       Kong and all communications with her go through me). I informed
        defendants' counsel that I could not.
18
        The Bankruptcy Court eventually dismissed the bankruptcy filing after VL
19       Groves failed to file the required schedules or retain counsel to represent it.
        Attached hereto as Exhibit G is a true and correct copy of the dismissal.
20
21   See Perry Declaration, ¶¶ 13-14, RJN, Ex. 2.

22           Counsel for the Debtor, Frederick C. Phillips, did not materially dispute the sham transfer

23   and bankruptcy filing.  Counsel for the Debtor admitted in his declaration as follows:

24       Two parcels of property owned by Defendant VLRC were scheduled to be lost
        by tax sale on August 30, 2011. Prior to that sale I had discussions with Mr.
25       Perry about obtaining the funds necessary to pay those taxes and was told they
        would not be paid.  I indicated to Mr. Perry that in order to stop the sale,
26       JOHNSON was considering putting those two parcels into another entity and
        filing a Chapter 11 bankruptcy on behalf of that entity simply to stop the tax
27       sales of the property and allow some breathing room to figure out how to save
28

1

the properties.  Mr. Perry indicated that CHEN would not consent to any transfer or any bankruptcy filings whatsoever.  Faced with the prospect that the properties would be lost at 5:00 p.m. on that date by virtue of tax sale to the County, Mr. JOHNSON caused the properties to be transferred to a new entity and a bankruptcy to be filed.  That act stopped the tax sale and in fact the properties were saved.  The bankruptcy filing was subsequently dismissed.  My office prepared deeds transferring the properties back to VLRC and it is my belief that those reconveyances have been recorded, although I have not received file stamped recordings back from the Recorder's Office.

2

3

4

5

6    See Declaration of Frederick C. Phillips in Opposition to Motion to Preliminary Injunction

7    ("Phillips Declaration"). ¶ 13, attached to the RJN as Ex. 3.

8        Accordingly, the Debtor has admitted to participating in the sham transfer and new debtor

9    syndrome filing.

10        In light of the foregoing, on November 28, 2012, the Superior Court issued a preliminary

11   injunction enjoining the Debtor and its constituent members from filing a bankruptcy proceeding for

12   or on behalf of the Debtor "without plaintiff's prior written consent" (the "Riverside Preliminary

13   Injunction").  See Notice of Ruling, RJN, Ex. 4.

14        **E.    The Collusive Involuntary Petition.**

15        On December 26, 2012, an involuntary petition was filed against the Debtor by three

16   individual petitioning creditors, Richard Crowell, Wayne Gregory and Thomas Tahara (the

17   "Petitioning Creditors").

18        Neither the Debtor nor the Petitioning Creditors have prosecuted the involuntary petition

19   over the court of the last five (5) months.  The Petitioning Creditors are not represented by counsel.

20   Accordingly, the Petition Creditors have executed four (4) stipulations to extend the Debtor's

21   deadline to respond to the involuntary petition.

22        •    On January 16, 2013, the Alleged Debtor filed a *Stipulation and Order for Extension*

23   *of Time to Respond*, docket no. 5.   One of the Debtor's creditor's, Cambridge Financial of

24   California LLC ("Cambridge") filed an objection asserting the involuntary petition was filed in

25   bad faith, as follows:

26

27        [Cambridge] hereby objects to the collusive involuntary filing by Petitioning Creditors Richard Crowell, Thomas Tahara, and Wayne Gregory, filed on December 26, 2012, and gives notice of its intent to file a Motion to Dismiss the bankruptcy case or seek other appropriate relief. ***

28

1

[T]he grounds for this Objection… are that the involuntary petition is a collusive and bad faith filing orchestrated by the Debtor and Debtor's counsel to attempt to avoid the effect of an injunction issued by the State Court in the litigation entitled, *Cambridge Financial of California, LLC v. William P. Johnson, et al.,* Case No. RIC 1115973 in the Superior Court for the State of California, Riverside County, a copy of which is attached hereto as Exhibit 1. The state court injunction specifically prohibited the Debtor and its constituent members from filing a bankruptcy proceeding for or on behalf of the Debtor, based upon provisions in the Debtor's operating agreement requiring unanimous consent. The Debtor has violated these provisions in soliciting putative creditors to file the instant involuntary proceeding to avoid the effect of the state court preliminary injunction.

See Notice of Objection to Involuntary Petition and Intent to File Motion to Dismiss [FRBP 9014], docket no. 8 ("Notice of Objection").  A copy of the Notice of Objection is attached to the Abreu Declaration as exhibit 21.

• On February 8, 2013, the Alleged Debtor filed a *Stipulation for Second Extension of Time to Respond*, docket no. 9.

• On February 22, 2013, the Alleged Debtor filed a *Stipulation for Third Extension of Time to Respond*, docket no. 15.

• On March 22, 2013, the Alleged Debtor filed a *Stipulation for Further Extension of Time to Respond*, docket no. 25.   The Bankruptcy Court's order approving the stipulation expressly provided that "this is the last extension of time to respond to the Involuntary Petition; no further extensions will be considered or granted."  See Docket no. 27.

• On April 23, 2013, the Alleged Debtor filed a "Response" to the Involuntary Petition stating:

The alleged Debtor is in the process of retaining reorganization counsel.  The alleged Debtor believes the retention will be finalized this week and that a further pleading will be filed formally consisting [sic] to an adjudication in this matter no later than close of business on Monday, April 29, 2013.

See Response of Vail Lake Rancho California LLC to Involuntary Petition, docket no. 32.

Contrary to the Alleged Debtor's representations, the Alleged Debtor has not filed any pleading consenting to an order for relief until June 2013.  On May 6, 2013, the Court sua sponte set a status conference on the involuntary petition for June 6, 2013 at 2:30 p.m. See Docket no. 33. The Debtor only consented to the order for relief on the eve of the status conference.

-7-

1    The Movants believe that the involuntary petition is the product of improper collusion

2    between the Debtor and the Petitioning Creditors, as follows:

3         1.    As identified by Cambridge, in its Notice of Objection, the involuntary petition is a

4    collusive and bad faith filing orchestrated by the Debtor and Debtor's counsel to attempt to avoid

5    the effect of an injunction issued by the Riverside Superior Court   The Debtor has violated these

6    provisions in soliciting putative creditors to file the instant involuntary proceeding to avoid the

7    effect of the state court preliminary injunction.  See Notice of Objection; In re Mi La Sul, 380 B.R.

8    546, 555 (Bankr. C.D. Cal. 2007).

9         2.    The Involuntary Petition improperly attempts to stay the Foreclosure Judgment

10    without the posting of a supersedeas bond.  See In re Marsch, 36 F.3d 825 (9th Cir. 1994) (Chapter

11    11 case was properly dismissed as "bad faith" filing, where petition was filed to avoid posting

12    appeal bond); In re Chu, 253 B.R. 92 (S.D. Cal. 2000) ("Cause" existed to convert Chapter 11 case

13    to one under Chapter 7, based on debtor's "bad faith" in filing petition largely to avoid having to

14    post supersedeas bond following entry of state court judgment against him)

15         3.    The post-petition actions of the Debtor and the Petitioning Creditors further evidence

16    the collusive filing.  Neither party had taken any action to prosecute the involuntary petition for five

17    and half months.  Rather, they entered into four (4) stipulations to extend the response deadline.

18    There is little doubt that the Debtor would have continued to seek extensions, but for the Court's

19    refusal to consider any further extensions.

20         4.    The Debtor and its counsel have admitted to participating in prior sham transfers and

21    bad faith (New Debtor Syndrome) bankruptcy filing in 2011-12, In re Vail Lake Groves, LLC, Case

22    no. 11-14665-PB11.

23         5.    The Subject Property has no equity and there is no reorganization in prospect.

24    <div align="center">**III.**</div>

25    <div align="center">**MOVANT IS ENTITLED TO RELIEF FROM STAY**</div>

26    <div align="center">**FOR "CAUSE" UNDER SECTION 362(d)(1)**</div>

27    Section 362(d)(1) provides that the Bankruptcy Court may grant relief from stay "for cause

28    including a lack of adequate protection…"

<div align="center">-8-</div>

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C.A. § 362(d)(1).

## A.    The Equity Cushion is Insufficient to Established Adequate Protection.

The lack of a sufficient equity cushion establishes a lack of adequate protection, and thus "cause" for relief from stay. "[C]ase law almost uniformly concludes that: (1) an equity cushion of twenty percent (20%) or more constitutes adequate protection; (2) an equity cushion of less than eleven percent (11%) is insufficient; and (3) a range of twelve percent (12%) to twenty percent (20%) has divided the Courts."   In re Utah 7000, L.L.C., 2008 WL 2654919, 6 (Bankr.D.Utah 2008) (same); In re C.B.G. Ltd., 150 B.R. 570, 573 (Bankr.M.D.Pa. 1992); In re McKillips, 81 B.R. 454, 458 (Bankr.N.D.Ill. 1987).[4]

Accordingly, numerous cases establish that an equity cushion of eleven percent (11%) or less is not adequate protection.[5] Here, the fair market value of the Property is between $982,000 to $1,029,000. See Reed Declaration. In contrast, Movant's first and second deeds of trust, plus senior property taxes total approximately $998,474.55.[6] Accordingly, depending upon the value used,

---

[4] Ninth Circuit case law is consistent with these figures. See In re Mellor, 734 F.2d 1396 (9th Cir. 1984) (20% equity cushion constitutes adequate protection); In re Gibson, 355 B.R. 807, 811 (Bankr.E.D.Cal. 2006) ("the court concludes that this 10% equity cushion does not adequately protect the Herzog Company's interest in the property"); In re Castle Ranch of Ramona, Inc., 3 B.R. 45 (Bankr.S.D.Cal.1980) (8.6% is insufficient).
[5] See e.g., In re Martin, 19 B.R. 496, 498 (Bankr.E.D.Pa. 1982) (equity cushion of "approximately 10 percent" not adequate); In re Gibson, 355 B.R. 807, 811 (Bankr.E.D.Cal. 2006) ("the court concludes that this 10% equity cushion does not adequately protect the Herzog Company's interest in the property"); Suntrust Bank v. Den-Mark Const., Inc., 406 B.R. 683, 701 (E.D.N.C. 2009) (11% not adequate); Bank Rhode Island v. Pawtuxet Valley Prescription & Surgical Center, Inc., 386 B.R. 1, 5 (D.R.I. 2008) ("the Court is unable to identify any line of authority holding less than a 10% equity cushion to be sufficient as a general matter."); In re Kost, 102 B.R. 829 (Bankr.D.Wyo. 1989) (11.5% is inadequate); In re Fortune Smooth (U.S.) Ltd., 1993 WL 261478, 6 (Bankr.S.D.N.Y. 1993) (inadequate equity cushion where equity cushion slightly in excess of 12.19%, which will decrease to less than ten percent (10%) if the taxes are not paid); Ukrainian Savings & Loan Ass'n v. Trident Corp., 22 B.R. 491 (Bankr.E.D.Pa.1982) (10% is inadequate); In re Liona Corp., N.V., 68 B.R. 761 (Bankr.E.D.Pa.1987) (8.9% is inadequate); In re Jug End in the Berkshires, Inc., 46 B.R. 892 (Bankr.D.Mass.1985) (8.3% inadequate); In re Castle Ranch of Ramona, Inc., 3 B.R. 45 (Bankr.S.D.Cal.1980) (8.6% is insufficient); In re LeMay, 18 B.R. 659 (Bankr.D.Mass.1982) (7% is inadequate).
[6] This figure does not include the junior liens against the Property.

-9-

MAINDOCS-#187503-v6-KidGloves_P&A_Mtn_Relief_Stay_362

1    Movant's interest is subject to an equity cushion of between 0% and 3%.  As a matter of law, an

2    equity cushion of 0% and 3% does not constitute adequate protection.

3        **B.      The Equity Cushion is Eroding Due to the Debtor's Failure to Pay Property**

4    **Taxes, and the Continuing Accrual of Interest and Charges on the Secured Debt.**

5        Even where there is a modest equity cushion here of up to 3%, a secured creditor is not

6    adequately protected where its equity cushion is being eroded post-petition by unpaid property

7    taxes, and the accrual of interest and charges on the secured debt.  See e.g., In re Hamilton, 100 B.R.

8    385, 388 (N.D.Ill. 1989) ("where, as in this case, the debtors' equity cushion has steadily eroded and

9    the debtors have consistently failed to make their payments for an extended period, the secured

10   creditor does not have sufficient assurance that the value of his secured interest will continue to be

11   protected."); In re Carson, 34 B.R. 502, 507 (D.Kan. 1983) ("an erosion of the equity cushion may

12   negate the inherent protection of such cushion"); Ukrainian Sav. and Loan Ass'n v. Trident Corp.

13   22 B.R. 491, 495 (E.D.Pa. 1982) (no adequate protection where creditor's equity cushion was being

14   eroded due to debtor's failure to pay periodic mortgage payments, taxes, and insurance premiums);

15   In re Liona Corp., N.V., 68 B.R. 761, 768 (Bankr.E.D.Pa. 1987) (lack of adequate protection

16   whether equity cushion eroded by real estate taxes and accrual of interest and charges on

17   mortgages); In re Schaller, 27 B.R. 959 (D.W.D.Wis.1983) (the court held that a cushion of 17 to 18

18   percent did not offer adequate protection in and of itself where the cushion was being rapidly eroded

19   by the daily accrual of interest on the debt); In re Development, Inc., 36 B.R. 998, 1007

20   (Bankr.D.Haw. 1984) ("Courts have held that, even where there is some equity in the property,

21   when the equity cushion is being eroded by the continuous increase in the daily interest costs of the

22   mortgage, there is no adequate protection to the mortgagee."); In re H & F Inv. Co., Ltd., 9 B.R.

23   548, 549 (Bankr. N.D.Ohio 1981)("whatever 'cushion' exists to protect the secured creditors is

24   being quickly eroded by the continuing increase in daily interest costs of the mortgages and unpaid

25   taxes, thereby giving inadequate protection to the secured creditors").[7]

26

27   _____

     [7] Other factors taken into consideration under Section 362(d)(1) include "the rate at which the cushion will be

28   eroded by interest, depreciation, and other costs, whether periodic payments are to be made to prevent or
     mitigate the erosion of the cushion, and, if the collateral is to be liquidated, the likelihood of a reasonably
     prompt sale."  In re Cole Bros., Inc., 1992 WL 71391, *2 (W.D.Mich. 1992); In re Liona Corp., N.V., 68

1    Accordingly, the di minimis equity cushion of 0% to 3% in addition to the eroding of any

2  equity cushion by the Debtor's failure and inability to pay property taxes or adequate protection

3  payments, establish a lack of adequate protection.

4    **C.    The Movant is Not Adequately Protected Due to the Debtor's failure to Pay**

5  **Property Taxes.**

6    A failure to pay post-petition property taxes is an independent basis for a finding of lack of

7  adequate protection. "A basis for finding lack of adequate protection may arise from the threat of

8  ... failure to provide for real property taxes ...." In re Rosen, 208 B.R. 345, 356 (D.N.J. 1997). See

9  also In re James River Associates, 148 B.R. 790, 796 (E.D.Va. 1992) ("The failure to pay real

10 property taxes may constitute a basis for finding lack of adequate protection."); In re Sterling

11 Development, Inc. , 2009 WL 196250, *4 (Bankr.D.N.M. 2009) ("The continuing accrual of

12 property taxes against the Property is a decrease in value for which [lender] is entitled to receive

13 adequate protection."); In re Anthem Communities/RBG, LLC, 267 B.R. 867, 871

14 (Bankr.D.Colo.2001)(stating that a lack of adequate protection may be demonstrated by "non-

15 payment of taxes" which jeopardizes the creditor's present security position).

16    "When the equity cushion disappears, the value of the creditor's interest in the property 'will

17 begin to decline if taxes on the real and personal property (including interest on taxes now due)

18 continue to go unpaid because these taxes have priority over the [creditor's] mortgage.'" In re James

19 River Associates, 148 B.R. 790, 796 (E.D.Va. 1992) quoting In re Lane, 108 B.R. 6, 11

20 (Bankr.D.Mass. 1989).

21    Here, there is no dispute that there is little or no equity cushion. Thus, any unpaid property

22 taxes will erode Movant's security position. Movant has reviewed the Riverside County's Office of

23 the Treasurer-Tax Collector website, performing a property tax payment search. The Debtor has

24 failed to pay the last 2 installments of property taxes as well as significant defaults for prior year

25 assessments. See Exhibit 22. Thus, the first post-petition installment of property taxes have already

26 come due (April 10th), and are unpaid. Failure to pay property taxes will result in 10 percent

27

28 B.R. 761, 767 (Bankr.E.D.Pa.1987). Here, in addition to the erosion of the equity cushion, the Debtor has
failed to make any periodic payments, and has no income or funds to make such payment.

MAINDOCS-#187503-v6-KidGloves_P&A_Mtn_Relief_Stay_362

penalties.  See Cal. Rev. & Tax Code § 2617.  The property tax delinquent penalties are subject to statutory liens. Id. § 2187.  See also In re County of Orange, 262 F.3d 1014, 1018 (9th Cir. 2001).

Here, the Debtor clearly has no ability to pay the property taxes, and thus avoid the penalty. Accordingly, the Debtor has no money, and no income, to pay property taxes, thus resulting in a lack of adequate protection.

<p align="center">IV.</p>

## MOVANT IS ENTITLED TO RELIEF FROM STAY UNDER SECTION 362(d)(2) AS THE DEBTOR HAS NO EQUITY IN THE PROPERTY AND THERE IS NO PROSPECT OF REORGANIZATION

This Court should vacate, terminate and annul the automatic stay under subsection (d)(2) of 11 U.S.C. Section 362.  Section 362(d) provides, in relevant part:

> [T]he court shall grant relief from the stay . . . such as by terminating, annulling, modifying or conditioning such stay -- ...
>    (2) with respect to a stay of an act against property under subsection (a) of this section, if --
>    **(A) the debtor does not have an equity in such property; and**
>    **(B) such property is not necessary to an effective reorganization.**

11 U.S.C. § 362(d) (emphasis added).  Here, relief from stay is appropriate under section 362(d)(2) because, when the junior liens are considered, the Property is so significantly under-water that there can be no question that the Debtor has no equity.  Moreover, the evidence reflects there is no effective reorganization in progress.

### A.    The Debtor Has No Equity In The Collateral

"Equity" in the context of 11 U.S.C. § 362(d)(2) is defined as the difference between the value of Debtor's interest in the Property and the total of all encumbrances against it.  See Stewart v. Gurley, 745 F.2d 1194, 1195 (9th Cir. 1984); In re Digby, 47 B.R. 614, 623 (Bankr. N.D. Ala. 1985); La Jolla Mortgage Fund v. Rancho El Cajon Assocs., 18 B.R. 283 (Bankr. S.D. Cal. 1982).

As set forth above, the fair market value of the Property is between $982,000 to $1,029,000. See Reed Declaration.   In contrast, the total voluntary and involuntary liens against are at least $1,820,795.60.  Accordingly, the Property has negative equity of approximately $800,000.  Thus, there can be no dispute that the Debtor lacks any equity in the Property.

<p align="center">-12-</p>

**B.      There is No Effective Reorganization in Progress**

With respect to Section 362(d)(2)(B), Movant has already met the first prong of 11 U.S.C. §362(d)(2) in showing that there is no equity in the Property.  Bankruptcy Code Section 362(g)(2) requires the Debtor to prove by competent evidence <u>all</u> issues other than the issue of Debtor's equity in the Property.  Thus, the burden is upon the Debtor to prove that the Property is necessary to effect reorganization that is in progress. U.S.C. §362(g); <u>In re Gauvin</u>, <u>supra</u>, 24 B.R. at 580.  As shown below, the Debtor cannot satisfy this burden.

The Supreme Court has held that Section 362(d)(2)(B) requires the Debtor to prove that there is an effective reorganization in progress and that there is a reasonable possibility of a successful reorganization within a reasonable time.

> [I]t is the burden of the *debtor* to establish that the collateral at issue is "necessary to an effective reorganization." See § 362(g). What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but  that the property is essential for an effective reorganization *that is in prospect*. This means … that there must be "a reasonable possibility of a successful reorganization within a reasonable time."

<u>United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.</u>, 484 U.S. 365, 375-376, 108 S.Ct. 626, 633 (1988).

Accordingly, the Debtor must prove two things, (1) there is an effective reorganization in prospect, and (2) that this particular Property is necessary for such reorganization.  See e.g., <u>In re Kurth Ranch</u>, 97 B.R. 33, 35 (Bankr. D. Mont. 1989) ("the property must not only be necessary for reorganization, but that reorganization is feasible under the Code")

As to the first issue (whether there is an effective reorganization in prospect), as set forth herein, the involuntary petition was filed in collusion and in bad faith to avoid the Preliminary Injunction and to evade posting an appeal bond.  The Debtor has stalled and delayed prosecution of the involuntary petition.  Accordingly, the involuntary petition was a sham to obtain the benefits of the automatic stay without submitting to a formal Chapter 11 proceeding.  Based upon the foregoing, it is clear there is no reorganization in prospect.

1      As to the second issue (whether this particular Property is necessary for such

2  reorganization), the Movant submits that the Debtor owns substantial additional real properties

3  which are not part of nor adjacent to Movant's collateral.  Specifically, the Alleged Debtor owns

4  very valuable and unique real property adjoining Vail Lake in Temecula, CA.  The Alleged Debtor's

5  other parcels are hundreds of acres of real property, in addition to a marina building, access roads,

6  dock, boat ramp and recreational use of Vail Lake.  Vail Lake is an approximately 700 acre private

7  lake located 10 miles east of Temecula.  The Property which is Movant's collateral is not part of

8  these other Vail Lake properties.  Accordingly, the Property which is Movant's collateral is not

9  necessary to the Debtor's reorganization even assuming there is a reorganization in prospect.

10      Accordingly, the Debtor cannot meet its burden to establish that (1) there is an effective

11  reorganization in prospect, and (2) that this particular Property is necessary for such reorganization.

12

<div align="center">

**V.**

**THE INVOLUNTARY PETITION WAS FILED IN "BAD FAITH" AND THEREFORE**

**CONSTITUTES CAUSE FOR RELIEF FROM STAY**

</div>

15      Section 362(d) provides that the Bankruptcy Court may grant relief from stay "for cause":

> (d) On request of a party in interest and after notice and a hearing, the court shall
> grant relief from the stay provided under subsection (a) of this section, such as
> by terminating, annulling, modifying, or conditioning such stay--
>     (1) for cause ...

19  11 U.S.C. § 362(d)(1) (emphasis added).

20      In the Ninth Circuit, it is well established that the filing of a petition in "bad faith" constitutes

21  "cause" for relief from stay.  As stated by the BAP in In re Duvar Apt., Inc., 205 B.R. 196 (9th Cir.

22  BAP 1996):

> The existence of bad faith in commencing a bankruptcy case constitutes
> cause for granting relief from the stay pursuant to § 362(d).

24  Duvar Apt., 205 B.R. at 200 to 201. See also In re Powers, 135 B.R. 980, 998 (Bankr.C.D.Cal.

25  1991) ("It is well settled throughout the circuits, including the Ninth, that 'cause' for relief from

26  stay under § 362(d)(1) may include a finding by the Court that debtor's petition was filed in bad

27  faith."); In re Walter, 108 B.R. 244, 247 (Bankr.C.D.Cal.1989) ("It is well established law in the

28  Ninth Circuit, as well as in various other circuits, that lack of 'good faith,' or existence of 'bad

<div align="center">

-14-

</div>

1   faith' in commencing and/or prosecuting a bankruptcy case, constitutes 'cause' for …granting relief

2   from stay pursuant to 11 U.S.C. § 362(d).")"; In re Arnold, 806 F.2d 937, 939 (9th Cir.1986) ("The

3   debtor's lack of good faith in filing a bankruptcy petition has often been used as cause for removing

4   the automatic stay.")

5          The Debtor has the burden to establish that it filed the petition in good faith.  "Once the

6   question of good faith/bad faith is put in issue, the party bringing the bankruptcy Petition has the

7   burden of proving that the Petition was brought in good faith."   In re Hammonds, 139 B.R. 535. 541

8   (Bankr.D.Colo. 1992); In re Leavitt, 209 B.R. 935, 940  (9th Cir. BAP 1997) ("Debtor bears the

9   burden of proving that the petition was filed in good faith."); In re ACI Sunbow, LLC, 206 B.R.

10  213, 217 (Bankr. S.D. Cal. 1997) ("The Court notes that the decision in *Furness v. Lilienfield,* 35

11  B.R. 1006, 1013 (D.Md.1983) found that the debtor had the burden of proving the petition was filed

12  in good faith. That conclusion is consistent with 11 U.S.C. § 362(g)"); In re Powers, 135 B.R. 980,

13  997 (Bankr.C.D.Cal. 1991) ("While the Bankruptcy Code is silent regarding the burden of proof as

14  to dismissals, courts have consistently held that once a debtor's good faith is in issue, the debtor

15  bears the burden of proving the petition was filed in good faith"); In re Couch-Russell, 2004 WL

16  4960379, 3 (Bankr.D.Idaho 2004) (same).

17         In determining whether a bankruptcy petition is filed in bad faith, "courts may consider any

18  factors which evidence 'an intent to abuse the judicial process and the purposes of the

19  reorganization provisions' or, in particular, factors which evidence that the petition was filed 'to

20  delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'" In re Phoenix

21  Piccadilly, Ltd., 849 F.2d 1393, 1394 (11th Cir. 1988); In re Detienne Associates Ltd. Partnership,

22  342 B.R. 318, 323 (Bankr.D.Mont. 2006) (same). *See also* In re Albany Partners, Ltd., 749 F.2d

23  670, 674 (11th Cir. 1984); In re Thirtieth Place, Inc., 30 B.R. 503 (9th Cir. BAP 1983).

24         Accordingly, it is clear that the evidence herein, that the petition was filed in bad faith,

25  constitutes "cause" for relief from stay.

26         The Movants believe that the involuntary petition is the product of improper collusion

27  between the Debtor and the Petitioning Creditors, as follows:

28

-15-

1.  As identified by Cambridge, in its Notice of Objection, the involuntary petition is a collusive and bad faith filing orchestrated by the Debtor and Debtor's counsel to attempt to avoid the effect of an injunction issued by the Riverside Superior Court   *See* Riverside Preliminary Injunction.  The Debtor has violated these provisions in soliciting putative creditors to file the instant involuntary proceeding to avoid the effect of the state court preliminary injunction. See Notice of Objection.

2.  The post-petition actions of the Alleged Debtor and the Petitioning Creditors further evidence the collusive filing.  Neither party has taken any action to prosecute the involuntary petition.  Rather, they have entered into four (4) stipulations to extend the response deadline.  There is little doubt that the Debtor would have continued to seek extensions, but for the Court's refusal to consider any further extensions.  Even the Alleged Debtor's "Response" to the Involuntary Petition, filed on April 23, 2013, stated it would retain insolvency counsel and consent to the order for relief by "no later than close of business on Monday, April 29, 2013."  This representation was obviously false, as the Alleged Debtor had taken no further action until June 2013.

The Bankruptcy Court may sua sponte inquire whether there is collusion in the filing of an involuntary petition, and dismiss the case.   As stated by the Court in In re Mi La Sul, 380 B.R. 546, 555 (Bankr. C.D. Cal. 2007):

> The court need not defer to the alleged debtor or another creditor, but can act on its own:
> It is proper for the Court to inquire to what extent the Debtor is involved in the institution of an involuntary case and if it appears there was collusion between the Debtor and the petitioning creditors, and they fraudulently invoked the jurisdiction of the Court, the Court will not tolerate the maintenance of an involuntary petition.

In re Mi La Sul, 380 B.R. 546, 555 (Bankr. C.D. Cal. 2007) citing In re Winn, 49 B.R. 237, 239 (Bankr.M.D.Fla.1985), quoted with approval in F.D.I.C. v. Cortez (In re Cortez), 96 F.3d 50, 51 (2d Cir.1996).  See also In re Stern, 268 B.R. 390, 391 (Bankr. S.D.N.Y. 2001) ("An involuntary petition which is not duly served upon the alleged debtor raises twin specters of collusion and oppression. When a Bankruptcy Court suspects an involuntary filing is a sham or is collusive, the Court may make proper inquiry into the circumstances of the filing."); In re Valdez, 250 B.R. 386,

394 (D. Or. 1999) ("the court also properly dismissed the involuntary petition under 11 U.S.C. § 707 because of the bad faith collusion between the debtors and the petitioning creditor to avoid the previous order of the Chapter 13 court")).

3.    The Involuntary Petition improperly attempts to stay the Foreclosure Judgment without the posting of a supersedeas bond.  See In re Marsch, 36 F.3d 825 (9th Cir. 1994) (Chapter 11 case was properly dismissed as "bad faith" filing, where petition was filed to avoid posting appeal bond); In re Chu, 253 B.R. 92 (S.D. Cal. 2000) ("Cause" existed to convert Chapter 11 case to one under Chapter 7, based on debtor's "bad faith" in filing petition largely to avoid having to post supersedeas bond following entry of state court judgment against him); In re Erkins, 253 B.R. 470, 477 (Bankr. D. Idaho 2000) ("Debtors appear to be utilizing Chapter 11 as an inappropriate alternative to obtaining a supersedeas bond.").

4.    The Debtor and its counsel have admitted to participating in prior sham transfers and bad faith (New Debtor Syndrome) bankruptcy filing in 2011, In re Vail Lake Groves, LLC, Case no. 11-14665-PB11.  As set forth in the Perry Declaration and the Phillips Declaration (see RJN), in order to avoid a foreclosure sale, the Alleged Debtor had previously transferred certain real property to a new entity, Vail Lake Groves LLC, without the consent of Plaintiff Chen.   Vail Lake Groves LLC filed a new debtor syndrome Chapter 11 case, Case no. 11-14665-PB11 before Judge Bowie, which was subsequently dismissed on March 12, 2012, pursuant to the Court's order to show cause for failure to comply with Local Bankruptcy Rule 9014-4.

Courts in virtually every Circuit, including the Ninth Circuit, have held that a "new debtor syndrome" case exemplifies a "bad faith" filing.

> The "new debtor syndrome," in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies, although it does not uniquely categorize, bad faith cases.

Matter of Little Creek Development Co., 779 F.2d 1068, 1073 (5th Cir. 1986); In re S & S/Moab Enterprises, 83 F.3d 428, 1996 WL 209012, *2 (9th Cir. 1996) (unpublished); In re Trident Associates Ltd. Partnership, 52 F.3d 127, 131 (6th Cir. 1995); Carolin Corp. v. Miller, 886 F.2d 693, 696 (4th Cir. 1989).   See also In re Laughlin Development Corp., 1990 WL 39072, *2 (9th Cir. 1990) (citing Little Creek for proposition "The 'new debtor syndrome' ... exemplifies ... bad faith

1  cases"); In re Duvar Apt., Inc., 205 B.R. 196, 200 (9th Cir. BAP 1996) ("The term 'new debtor

2  syndrome' identifies a pattern of conduct which exemplifies bad faith cases."); In re McCarthy, 312

3  B.R. 413, 418 (Bankr.D.Nev. 2004) ("the category of bad faith filings commonly known as the 'new

4  debtor syndrome.'"); In re Meyers Way Development Ltd. Partnership, 116 B.R. 239, 241

5  (Bankr.W.D.Wash. 1990) ("the 'new debtor syndrome,' which has long been identified as a pattern

6  of conduct evidencing bad faith.").  Accordingly, the Debtor and its counsel's participation is prior

7  bad faith "new debtor syndrome" cases is further evidence of pattern of bad faith and abuse of

8  process.

9         Here, collectively, the facts and evidence strongly suggest that the involuntary petition was

10  filed in bad faith to evade the Riverside Preliminary Injunction, was filed in collusion between the

11  Debtor and the Petitioning Creditors, and was filed to evade a supersedes bond pending the Debtor's

12  appeal. Accordingly, the Movant respectfully submits that the involuntary petition was filed in bad

13  faith, and thus constitutes additional grounds for relief from stay.

14                                              **VI.**

15                                         **CONCLUSION**

16         Based upon the foregoing, Movant hereby requests that this Court grant the Motion, and

17  enter an order lifting the automatic stay as to the Property, and granting such other and further relief

18  as the Court deems just and appropriate.

19  DATED:  June 14, 2013                     **WINTHROP COUCHOT**
                                              **PROFESSIONAL CORPORATION**
20

21                                           By:___/s/ Peter W. Lianides_____
                                                  Marc J. Winthrop, Esq.
22                                                Peter W. Lianides, Esq.
                                             Counsel for Secured Creditors, Kid Gloves, Inc.
23                                           and 1690463 Alberta Ltd.

24

25

26

27

28

**DECLARATION OF KELLY ABREU**

I, Kelly Abreu, hereby declare as follows:

1.     I am an attorney licensed to practice in the state of California. I am counsel for Kid Gloves, Inc., a Nevada corporation ("Kid Gloves"), and 1690463 Alberta Ltd. ("Alberta") (collectively "Movant"). I am also the President of the Movant, Kid Gloves. This declaration is made based upon my own knowledge and information, and/or my personal review of the relevant public records with respect to the Property, and if called upon in open court, could and would testify thereto.

2.     The Movant seeks relief from stay to foreclose on approximately 539.73 acres of rural and mostly unimproved land located at 41475 and 43425 Sage Road, Aguanga, California ("Property") currently owned by the Debtor Vail Lake Rancho California, LLC. Specifically, Alberta owns Note 1, and Kid Gloves owns Note 2. The Property consists of 10 separate assessor parcel numbers, 581-070-013, 581-070-015, 581-070-016, 581-120-005, 581-150-013, 581-150-015, 581-150-016, 581-150-017, 917-050-003, 917-050-007.  A true and correct copy of the Legal Description of the Property is attached hereto as exhibit "1" and incorporated herein by this reference.

3.     Movant currently holds two promissory notes (referred to herein as "Note 1" and "Note 2" or, together "Promissory Notes") and the trust deeds which secured such notes ("TD1" and "TD2" or, together "Trust Deeds"). Both TD1 and TD2 cover substantially the same Property. Specifically, TD2 includes all 10 parcel numbers referenced above, while TD1 includes 9 of the parcels above (excluding 581-070-013 consisting of approximately 43 acres).

4.     **Chain of Title for Note 1 and TD 1.** Note 1 is a Promissory Note dated 12/8/82, between the then-borrowers, Gary Clawson & Jean Clawson, and the then-lender: Federal Land Bank of Sacramento. A true and correct copy of Note 1 is attached hereto as exhibit "2" and incorporated herein by this reference.

5.     Note 1 is secured by a Deed of Trust recorded on December 15, 1982 ("TD1"), between Gary Clawson & Jean Clawson and the beneficiary & trustee, Federal Land Bank of

MAINDOCS-#187503-v6-KidGloves_P&A_Mtn_Relief_Stay_362

Sacramento.  A true and correct copy of the TD1 is attached hereto as exhibit "3" and incorporated herein by this reference.

6.       Note 1 and TD1 were assigned Shamrock Minerals, Inc. ("Shamrock") pursuant to the Assignment of Deed of Trust recorded on August 18, 1992, executed by "Farm Credit Services of Southern California, successor by assignment to Federal Land Bank of Sacramento" ("Shamrock. Assignment").  A true and correct copy of the Shamrock Assignment is attached hereto as exhibit "4" and incorporated herein by this reference.

7.       Shamrock recorded a *Notice of Rescission of Declaration of Default and Demand for Sale*, recorded on June 24, 1993, which also states that the prior beneficiary was "Federal Land Bank of Sacramento, a corporation and subsequently assigned to Farm Credit Services of Southern California," executed by "Shamrock Minerals, Inc."  A true and correct copy of the Notice of Rescission is attached hereto as exhibit "5" and incorporated herein by this reference.

8.       Shamrock subsequently assigned Note 1 and TD1 to *Albert A. Pinamonti, et.al., Trustees for the Trebla Inc., Profit Sharing Plan and Trust dated 12/1/81 as amended as to an undivided 50% interest and Otis R. Heald, Trustee of the Cirtidora Corporation Profit* (collectively "Trebla/ Cirtidora") pursuant to the Assignment of Deed of Trust recorded on June 23, 1993 ("Trebla/ Cirtidora Assignment"), which was executed by "Shamrock Minerals, Inc."  A true and correct copy of the Trebla/ Cirtidora Assignment is attached hereto as exhibit "6" and incorporated herein by this reference.

9.       Trebla/Cirtidora subsequently assigned TDI to Golden Star Mining, LLC ("Golden Star") pursuant to the Assignment of Deed of Trust recorded on December 20, 1993 ("Golden Star Assignment"), executed by "Trebla Inc., Profit Sharing Plan and Trust" and "*Cirtidora Corporation Profit Sharing Trust*".  A true and correct copy of the Golden Star Assignment is attached hereto as exhibit "7" and incorporated herein by this reference.

10.      Golden Star subsequently assigned Note 1 and TD 1 to Adobe Oil Development Corporation  ("Adobe") pursuant to the Assignment of Deed of Trust recorded August 19, 1994 ("Adobe Assignment"), executed by Golden Star Mining, LLC.  A true and correct copy of the Adobe Assignment is attached hereto as exhibit "8" and incorporated herein by this reference.

11.    Adobe subsequently assigned Note 1 and TD 1 to Kid Gloves pursuant to the Assignment of Deed of Trust recorded June 7, 2002 ("Kid Glove Assignment"), executed by Adobe. A true and correct copy of the Kid Glove Assignment is attached hereto as exhibit "9" and incorporated herein by this reference.

12.    Kid Gloves  subsequently assigned Note 1 and TD 1 to Alberta pursuant to the Assignment of Deed of Trust recorded December 19, 2012 ("Alberta Assignment"), executed by Kid Gloves.  A true and correct copy of the Alberta Assignment is attached hereto as exhibit "10" and incorporated herein by this reference.

13.    **Chain of Title for Note2 and TD 2.**  Note 2 is a Promissory Note dated May 19, 1989, between the then-borrower, Gary Clawson, and the then-lender: United Mercantile Bank & Trust Company N.A. ("United Mercantile").  A true and correct copy of Note 2 is attached hereto as exhibit "11" and incorporated herein by this reference.

14.    Note 2 is secured by a Deed of Trust recorded on June 2, 1989 ("TD2"), between Gary Clawson and the lender/beneficiary, United Mercantile.  A true and correct copy of the TD2 is attached hereto as exhibit "12" and incorporated herein by this reference.

15.    United Mercantile subsequently assigned Note 2 and TD 2 to Group IV International, Inc. pursuant to the Transfer and Assignment of Note and Deed of Trust, recorded December 29. 1995 ("Group IV Assignment"), executed by Federal Deposit Insurance Corporation, as Receiver for United Mercantile.  A true and correct copy of the Group IV Assignment is attached hereto as exhibit "13" and incorporated herein by this reference.

16.    Group IV subsequently assigned Note 2 and TD 2 to Glenn E. Farmer pursuant to the Assignment of Deed of Trust, recorded September 22, 2000 ("Farmer Assignment"), executed by Group IV.  A true and correct copy of the Farmer Assignment is attached hereto as exhibit "14" and incorporated herein by this reference.

17.    Glenn E. Farmer subsequently assigned Note 2 and TD 2 to Movant pursuant to the Assignment of Deed of Trust, recorded June 7, 2002 ("Kid Gloves Assignment 2"), executed by Glenn E. Farmer.  A true and correct copy of the Kid Gloves Assignment 2 is attached hereto as exhibit "15" and incorporated herein by this reference.

-21-

18.    **2009 Scheduled Foreclosure Sale**.  Kid Gloves purchased the Promissory Notes in April and May of 2002.  In 2009, Kid Gloves initiated foreclosure proceedings on the Trust Deeds because the Promissory Notes were in default.  A Notice of Default was initially recorded on March 23, 2009, and had scheduled a foreclosure sale set for on or about July 30, 2009.

19.    **Debtor's Unsuccessful State Court Suit to Enjoin Foreclosure**.  On July 24, 2009, the Debtor filed a lawsuit with the San Diego Superior Court, and obtained a preliminary injunction against Kid Gloves' then pending foreclosure.  The Debtor's lawsuit was filed in San Diego Superior Court; Case No. 37-2009-00094633.  In its Amended Complaint, the Debtor inter alia alleged causes of action to "cancel notes and Trust Deeds" and for wrongful foreclosure.  On February 28, 2012, the San Diego Superior Court entered judgment in favor of Kid Gloves, and against the Debtor, based inter alia on the expiration of the statute of limitations ("Foreclosure Judgment").  The Superior Court's Foreclosure Judgment also provides for a money judgment in favor of Kid Gloves based upon the two Promissory Notes in the collective amount of $758,000.28 as of January 20, 2012, with interest accruing at a rate of 14% per annum thereafter.  The Superior Court's Judgment specifically held that Kid Gloves is "free to foreclose" on its respective Promissory Notes and Trust Deeds.  A true and correct copy of the Foreclosure Judgment is attached hereto as exhibit "16" and incorporated herein by this reference.

20.    The Debtor appealed the Foreclosure Judgment which is presently pending before the California Court of Appeal, Fourth Appellate District.  A Notice of Appeal was filed by the Debtor on April 25, 2012 in the 4th Appellate District Division 1 - Case No. D061892.[8]

21.    **2012 Re-Scheduled Foreclosure Sale**.  There was no appeal bond filed by the Debtor.  The Debtor did not seek, nor obtain a stay pending appeal.  Accordingly, Kid Gloves rescheduled a foreclosure sale on the Property, which was set for December 27, 2012.

22.    On Friday, December 21, 2012, Frederick Phillips, counsel for the Debtor left me voice message.  Frederick Phillips' law firm, *Phillips, Haskett & Ingwalson* ("PHI"), is beneficiaries of a trust deed given by the Debtor for an undisclosed amount on the Property.  Attached as

---

[8] On January 8, 2013, PHI, filed Appellant's Opening Brief on behalf of the Alleged Debtor.

Exhibit "17" is a true and correct copy of the Trustee's Sale Guarantee (in relevant part) issued with respect to Property, at page 18, item 15 attached hereto and incorporated by this reference. PHI also has an undivided 18% interest in the Property. See Exhibit "17" at page 19, item 19, attached hereto and incorporated by this reference.[9]

23.    In addition to the voice message from Mr. Phillips, I also received an e-mail from Mr. Phillips wanting the payoff amount on the first trust deed. I e-mailed Mr. Phillips and gave him the approximate payoff amount. Attached as Exhibit "18" is a printout of that e-mail attached hereto and incorporated by this reference.

24.    On Wednesday, December 26, 2012, one day prior to the scheduled foreclosure's sale on the subject property, I received an e-mail from Mr. Phillips. A printout of that e-mail is attached hereto as Exhibit "19" and incorporated herein by this reference. Mr. Phillips stated that he needed a continuance of the foreclosure sale for a week to raise the cash needed to pay off the first trust deed. If Movant did not agree to the continuance, he would be forced to file for bankruptcy protection, which would involve a lot of costs and delays.

25.    I received an e-mail from the Trustee later that day (Wednesday, December 26, 2012) at 4:38 p.m. stating that the trustee's sale for the next morning would have to be postponed because they had received notice of the involuntary bankruptcy filing, Case No. 12-16684-LA11.

26.    In the month prior to the scheduled trustee's sale of December 27, 2012, I received four calls from parties who expressed an interest in buying the first trust deed from my client.

27.    The telephone calls were from a real estate broker, a real estate attorney, a large law firm, and a title company. In each case, the potential purchaser would not pay the full amount of the first trust deed, which at that time was approximately $489,000.00. In one case, my client was offered $300,000.00 for their first trust deed. The Trustee's Sale Guarantee on the property on pages 14-20 list numerous trust deeds and liens on the property. (Attached as Exhibit "17," a copy

---

[9] At trial in San Diego Superior Court, Case No. 37-2009-00094633, Frederick Phillips, attorney for the Alleged Debtor, stated that "My firm has a lien, KB Home has a lien, and Douglas has a lien for over a million and a half dollars." (See Exhibit "17," the Reporter's Transcript from January 19, 2012, page 235, lines 15-18 attached hereto and incorporated by this reference.)

MAINDOCS-#187503-v6-KidGloves_P&A_Mtn_Relief_Stay_362

of the Trustee's Sale Guarantee incorporated by this reference.)  KGI has a second trust deed on portions of the property.  The second trust deed is owed approximately $390,000.00.

28.    At trial in San Diego Superior Court, Case No. 37-2009-00094633, Frederick Phillips, attorney for the Debtor, stated that "My firm has a lien, KB Home has a lien, and Douglas has a lien for over a million and a half dollars."  (See Exhibit "20," the Reporter's Transcript from January 19, 2012, page 235, lines 15-18 attached hereto and incorporated by this reference.)

29.    State Court's Injunction Against the Debtor filing Bankruptcy.  In an action unrelated to Movants, one of the Debtor's members filed an action against the Debtor, with the Riverside Superior Court, Case No. RIC 1210424, which the Movants are informed relates to a control dispute over the Debtor.  On November 28, 2012, the Superior Court issued a preliminary injunction enjoining the Debtor and its constituent members from filing a bankruptcy proceeding for or on behalf of the Debtor "without plaintiff's prior written consent" (the "Riverside Preliminary Injunction").  See Notice of Ruling, attached to the RJN as exhibit 4.  The Preliminary Injunction is based upon provisions in the Debtor's operating agreement requiring unanimous consent.

30.    Collusive Involuntary Petition.  On December 26, 2012, an involuntary petition was filed against the Debtor by three individual petitioning creditors, Richard Crowell, Wayne Gregory and Thomas Tahara (the "Petitioning Creditors").

31.    Neither the Debtor nor the Petitioning Creditors had prosecuted the involuntary petition during the first five and half (5 1/2) months.  The Petitioning Creditors were not represented by counsel.  Accordingly, the Petition Creditors have executed four (4) stipulations to extend the Debtor's deadline to respond to the involuntary petition.

32.    On January 16, 2013, the then-Alleged Debtor filed a *Stipulation and Order for Extension of Time to Respond*, docket no. 5.  One of the Debtor's creditor's, Cambridge Financial of California LLC ("Cambridge") filed an objection asserting the involuntary petition was filed in bad faith:  A true and correct copy of the *Notice of Objection to Involuntary Petition and Intent to File Motion to Dismiss [FRBP 9014]*, docket no. 8 ("Notice of Objection") is attached hereto as exhibit "21" and incorporated herein by this reference.

-24-

33. On February 8, 2013, the Alleged Debtor filed a *Stipulation for Second Extension of Time to Respond*, docket no. 9.

34. On February 22, 2013, the Alleged Debtor filed a *Stipulation for Third Extension of Time to Respond*, docket no. 15.

35. On March 22, 2013, the Alleged Debtor filed a *Stipulation for Further Extension of Time to Respond*, docket no. 25.  The Bankruptcy Court's order approving the stipulation expressly provided that "this is the last extension of time to respond to the Involuntary Petition; no further extensions will be considered or granted."  See Docket no. 27.

36. On April 23, 2013, the Alleged Debtor filed a "Response" to the Involuntary Petition stating:

> The alleged Debtor is in the process of retaining reorganization counsel.  The alleged Debtor believes the retention will be finalized this week and that a further pleading will be filed formally consisting [sic] to an adjudication in this matter no later than close of business on Monday, April 29, 2013.

See Response of Vail Lake Rancho California LLC to Involuntary Petition, docket no. 32.

37. Contrary to the Alleged Debtor's representations, the Alleged Debtor did not consent to an order for relief until June on the eve of the status conference.  On May 6, 2013, the Court sua sponte set a status conference on the involuntary petition for June 6, 2013 at 2:30 p.m.

38. Property Taxes.  I have reviewed the Riverside County's Office of the Treasurer-Tax Collector website, performing a property tax payment search.  The Debtor has failed to pay the last 2 installments of property taxes as well as significant defaults for prior year assessments.  The total property taxes due and owing against the Property are approximately $94,467.55.  Copies of several of the relevant Property Tax Payment –Search Results are attached hereto as exhibit "22" and incorporated herein by this reference.  Thus, the first post-petition installment of property taxes has already come due (April 10th), and is unpaid.

39. Other Liens Against the Property.  In connection with the foreclosure sale, Chicago Title Insurance Company, as trustee under the Deed of Trust, issued a Trustee's Sale Guarantee which identified in Schedule B thereto the encumbrances against the Property.  See Exhibit 17. Based thereon, there are other liens secured against the Property including a third deed of trust in

favor of Security Pacific Bank in the amount of approximately $250,000.00, a fourth deed of trust in favor of KB Homes in the amount of approximately $336,345.00. I am also aware of a Judgment Lien recorded in favor of *Craig Johnson & Associates, a professional corporation doing business as Tennie Johnson* in the amount of approximately $183,932.19. In addition, the State of California, Department of Industrial Relations has recorded a *Certificate of Penalty Lien* with the County of Riverside, a true and correct of which is attached to the RJN as Exhibit 5. An *Abstract of Judgment* recorded in the County of Riverside by Lamar Central Outdoors LLC, et al., a true and correct copy is attached to the RJN as Exhibit 6.

40.    Debtor's Other Real Property.  The Debtor owns substantial additional real properties which are not part nor adjacent to the Property which is Movant's collateral.  Specifically, the Debtor owns very valuable and unique real property adjoining Vail Lake in Temecula, CA.  The Debtor not only owns hundreds of acres of real property, it owns a marina building, access roads, dock, boat ramp and recreational use of Vail Lake.  Vail Lake is an approximately 700 acre private lake located 10 miles east of Temecula.  Accordingly, I believe the Property which is Movant's collateral is not necessary to the Debtor's reorganization, even assuming there is a reorganization in prospect.

I declare under penalty of perjury under the laws of the state of California that the above is true and correct.  Executed this 12th day of June, 2013, in Murrieta, California.

Kelly Abreu

# PAGE INTENTIONALLY LEFT BLANK

# EXHIBIT "1"

Order No.: TS3358-013-GC1

A portion of said land was the subject of a condemnation, so the land currently covered by the subject Deed of Trust is described below.

PARCEL 1:

PARCEL 3 OF PARCEL MAP NO. 14860, AS SHOWN BY MAP ON FILE IN BOOK 109 PAGES 54 THROUGH 58 OF PARCEL MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA;

EXCEPTING THEREFROM THAT PORTION DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHEASTERLY CORNER OF SAID PARCEL 3;
THENCE ALONG THE SOUTHERLY LINE OF PARCEL 3, NORTH 89° 35' 37" WEST, 319.90 FEET TO THE EASTERLY SIDE LINE OF SAGE ROAD SHOWN ALSO AS LOT "A" ON SAID MAP;
THENCE ALONG SAID EASTERLY LINE NORTH 13° 38' 09" WEST, 185.45 FEET TO THE BEGINNING OF A CURVE, CONCAVE EASTERLY AND HAVING A RADIUS OF 2,145.00 FEET;
THENCE NORTHERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 1° 53' 51" AND AN ARC LENGTH OF 71.04 FEET, A RADIAL TO SAID POINT BEARS SOUTH 78° 15' 42" WEST;
THENCE LEAVING SAID SIDE LINE, SOUTH 89° 35' 37" EAST, 378.61 FEET TO A POINT ON THE EASTERLY LINE OF SAID PARCEL 3, SAID POINT LIES NORTH 00° 08' 32" WEST, 249.11 FEET FROM THE POINT OF BEGINNING;
THENCE SOUTH 00° 08' 32" EAST, 249.11 FEET TO THE POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM THAT PORTION OF SAID LAND, AS SHOWN IN FINAL ORDER OF CONDEMNATION RECORDED APRIL 14, 1992 AS INSTRUMENT NO. 131556, OFFICIAL RECORDS, AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEING A PORTION OF SECTION 7, TOWNSHIP 8 SOUTH, RANGE 1 EAST, S.B.B.& M., AS SHOWN ON PARCEL MAP BOOK 109, PAGES 54 TO 58, INCLUSIVE, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTHEAST CORNER OF SAID SECTION;

THENCE NORTH 01° 42' 29" WEST, 913.64 FEET ALONG THE EASTERLY LINE OF SAID SECTION TO THE INTERSECTION WITH THE NORTHWESTERLY RIGHT OF WAY OF SAGE ROAD, SAID POINT BEING THE POINT OF BEGINNING;

THENCE SOUTH 28° 42' 43" WEST, 310.00 FEET ALONG THE NORTHWESTERLY RIGHT OF WAY OF SAGE ROAD;
THENCE NORTH 61° 18' 17" WEST, 100.00 FEET;
THENCE NORTH 28° 41' 43" EAST, 145.00 FEET;
THENCE NORTH 61° 18' 17" WEST, 140.00 FEET;
THENCE NORTH 28° 41' 43" EAST, 80.00 FEET;
THENCE SOUTH 80° 48' 26" EAST, 254.61 FEET TO THE POINT OF BEGINNING.

PARCEL 2:

THE WEST HALF OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 8, IN TOWNSHIP 8 SOUTH, RANGE 1 EAST, SAN BERNARDINO BASE AND MERIDIAN.

END OF LEGAL DESCRIPTION

CLTA Guarantee Form No. 22 (Revised 03-03-

EXHIBIT A

PARCEL 8:

THAT CERTAIN REAL PROPERTY SITUATED, LYING AND BEING IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

GOVERNMENT LOT 3 IN SECTION 13, TOWNSHIP 8 SOUTH, RANGE 1 WEST, SAN BERNARDINO BASE AND MERIDIAN AS SHOWN BY UNITED STATES GOVERNMENT SURVEY IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, CONTAINING 11.41 ACRES MORE OR LESS.

SUBJECT TO CONDITIONS, RESTRICTIONS, RESERVATIONS, EASEMENTS, RIGHTS AND RIGHTS-OF-WAY OF RECORD.

PARCEL 9:

THAT CERTAIN REAL PROPERTY SITUATED, LYING AND BEING IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, MORE PARTICULARLY DESCRIBED AS FOLLOWS, TO WIT:

LOT 3 OF SECTION 12, TOWNSHIP 8 SOUTH, RANGE 1 WEST, SAN BERNARDINO BASE AND MERIDIAN ACCORDING TO THE OFFICIAL PLAT OF THE SURVEY OF THE SAID LAND ON FILE IN THE BUREAU OF LAND MANAGEMENT.

SUBJECT TO ANY VESTED AND ACCRUED WATER RIGHTS FOR MINING, AGRICULTURAL, MANUFACTURING OR OTHER PURPOSES AND RIGHTS TO DITCHES AND RESERVOIRS USED IN CONNECTION WITH SUCH WATER RIGHTS AS MAY BE RECOGNIZED AND ACKNOWLEDGED BY THE LOCAL CUSTOMS LAWS AND DECISIONS OF THE COURTS.

RESERVING NEVERTHELESS UNTO THE UNITED STATES OF AMERICA A RIGHT-OF-WAY THEREON FOR DITCHES OR CANALS CONSTRUCTED BY THE AUTHORITY OF THE UNITED STATES.

PARCEL 10:

THAT CERTAIN REAL PROPERTY SITUATED, LYING AND BEING IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AND MORE PARTICULARLY DESCRIBED AS FOLLOWS, TO WIT:

GOVERNMENT LOT 4, SECTION 13, TOWNSHIP 8 SOUTH, RANGE 1 WEST, ACCORDING TO THE OFFICIAL PLAT OF THE SURVEY OF THE SAID LAND ON FILE IN THE BUREAU OF LAND MANAGEMENT.

SUBJECT TO ANY VESTED AND ACCRUED WATER RIGHTS FOR MINING, AGRICULTURAL, MANUFACTURING OR OTHER PURPOSES AND RIGHTS TO DITCHES AND RESERVOIRS USED IN CONNECTION WITH SUCH WATER RIGHTS AS MAY BE RECOGNIZED AND ACKNOWLEDGED BY THE LOCAL CUSTOMS LAWS AND DECISIONS OF THE COURTS.

RESERVING NEVERTHELESS UNTO THE UNITED STATES OF AMERICA A RIGHT-OF-WAY THEREON FOR DITCHES OR CANALS CONSTRUCTED BY THE AUTHORITY OF THE UNITED STATES.

Exhibit 1, Page 29

181898

PARCEL 11:

THAT CERTAIN REAL PROPERTY SITUATED, LYING AND BEING IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, MORE PARTICULARLY DESCRIBED AS FOLLOWS, TO WIT:

GOVERNMENT LOT 5, SECTION 13, TOWNSHIP 8 SOUTH, RANGE 1 WEST, SAN BERNARDINO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT OF THE SURVEY OF THE SAID LAND ON FILE IN THE BUREAU OF LAND MANAGEMENT.

SUBJECT TO ANY VESTED AND ACCRUED WATER RIGHTS FOR MINING, AGRICULTURAL, MANUFACTURING OR OTHER PURPOSES AND RIGHTS TO DITCHES AND RESERVOIRS USED IN CONNECTION WITH SUCH WATER RIGHTS AS MAY BE RECOGNIZED AND ACKNOWLEDGED BY THE LOCAL CUSTOMS LAWS AND DECISIONS OF THE COURTS.

RESERVING NEVERTHELESS UNTO THE UNITED STATES OF AMERICA A RIGHT-OF-WAY THEREON FOR DITCHES OR CANALS CONSTRUCTED BY THE AUTHORITY OF THE UNITED STATES.

PARCEL 12:

THAT CERTAIN REAL PROPERTY SITUATED, LYING AND BEING IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, MORE PARTICULARLY DESCRIBED AS FOLLOWS, TO WIT:

GOVERNMENT LOT 6, SECTION 13, TOWNSHIP 8 SOUTH, RANGE 1 WEST, SAN BERNARDINO BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT OF THE SURVEY OF THE SAID LAND ON FILE IN THE BUREAU OF LAND MANAGEMENT.

SUBJECT TO ANY VESTED AND ACCRUED WATER RIGHTS FOR MINING, AGRICULTURAL, MANUFACTURING OR OTHER PURPOSES AND RIGHTS TO DITCHES AND RESERVOIRS USED IN CONNECTION WITH SUCH WATER RIGHTS AS MAY BE RECOGNIZED AND ACKNOWLEDGED BY THE LOCAL CUSTOMS LAWS AND DECISIONS OF THE COURTS.

RESERVING NEVERTHELESS UNTO THE UNITED STATES OF AMERICA A RIGHT-OF-WAY THEREON FOR DITCHES OR CANALS CONSTRUCTED BY THE AUTHORITY OF THE UNITED STATES.

Exhibit 1, Page 30

EXHIBIT "A"                              181898

SAID LAND IS SITUATED IN THE UNINCORPORATED AREA OF THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS.

 PARCEL 1:

THAT CERTAIN REAL PROPERTY SITUATED, LYING AND BEING IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

THE NORTH HALF AND THE SOUTH HALF OF THE SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER AND GOVERNMENT LOT 3 IN SECTION 7, TOWNSHIP 8 SOUTH, RANGE 1 EAST, SAN BERNARDINO BASE AND MERIDIAN AS SHOWN BY UNITED STATES GOVERNMENT SURVEY.

PARCEL 2:

THAT CERTAIN REAL PROPERTY SITUATED, LYING AND BEING IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

THE WEST HALF OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 8, TOWNSHIP 8 SOUTH, RANGE 1 EAST, SAN BERNARDINO BASE AND MERIDIAN AS SHOWN BY UNITED STATES GOVERNMENT SURVEY.

PARCEL 3:

THAT CERTAIN REAL PROPERTY SITUATED, LYING AND BEING IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, MORE PARTICULARLY DESCRIBED AS FOLLOWS, TO WIT:

THE NORTHWEST QUARTER OF THE NORTHEAST QUARTER AND THE NORTHWEST QUARTER OF SECTION 18, TOWNSHIP 8 SOUTH, RANGE 1 EAST, SAN BERNARDINO BASE AND MERIDIAN AS SHOWN BY UNITED STATES GOVERNMENT SURVEY.

PARCEL 4:

THAT CERTAIN REAL PROPERTY SITUATED, LYING AND BEING IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, MORE PARTICULARLY DESCRIBED AS FOLLOWS, TO WIT:

GOVERNMENT LOTS 5 AND 6 AND EAST HALF OF THE FRACTIONAL SOUTHEAST QUARTER GOVERNMENT LOTS 1 AND 4 BEING THE SOUTH HALF OF THE NORTHEAST QUARTER OF SECTION 12 AND GOVERNMENT LOTS 1 AND 2 BEING THE NORTH HALF OF THE NORTHEAST QUARTER OF SECTION 13, TOWNSHIP 8 SOUTH, RANGE 1 WEST, SAN BERNARDINO BASE AND MERIDIAN AS SHOWN BY UNITED STATES GOVERNMENT SURVEY.

181898

PARCEL 5:

THAT CERTAIN REAL PROPERTY SITUATED, LYING AND BEING IN THE COUNTY OF RIVERSIDE,
STATE OF CALIFORNIA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

THE NORTHEAST QUARTER OF THE NORTHEAST QUARTER OF SECTION 18, TOWNSHIP 8 SOUTH,
RANGE 1 EAST, EXCEPTING THEREFROM A STRIP OF LAND 50 FEET IN WIDTH AND PARALLEL TO
AND ADJOINING THE SOUTH LINE OF THE ABOVE DESCRIBED 40 ACRES AND EXTENDING FROM
THE PUBLIC HIGHWAY PASSING THROUGH SAID 40 ACRES AND EASTERLY LINE OF THE WITHIN
DESCRIBED PROPERTY.

SUBJECT TO ALL OF THE WATER RIGHTS IN CONNECTION WITH THE ABOVE DESCRIBED PROPERTY
AS RESERVED BY WILLIAM J. WALSH IN HIS DEED TO FRED BASS AND INAS BASS, HIS WIFE,
AS RECORDED AUGUST 7, 1940 IN BOOK 475 AT PAGE 69 ET SEQ., OFFICIAL RECORDS OF
RIVERSIDE COUNTY, CALIFORNIA.

PARCEL 6:

THAT CERTAIN REAL PROPERTY SITUATED, LYING AND BEING IN THE COUNTY OF RIVERSIDE,
STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 7, TOWNSHIP 8 SOUTH,
RANGE 1 EAST.  ACCORDING TO THE OFFICIAL PLAT OF THE SURVEY OF THE SAID LAND ON
FILE IN THE BUREAU OF LAND MANAGEMENT.

SUBJECT TO ANY VESTED AND ACCRUED WATER RIGHTS FOR MINING, AGRICULTURAL,
MANUFACTURING OR OTHER PURPOSES AND RIGHTS TO DITCHES AND RESERVOIRS USED IN
CONNECTION WITH SUCH WATER RIGHTS AS MAY BE RECOGNIZED AND ACKNOWLEDGED BY THE
LOCAL CUSTOMS LAWS AND DECISIONS OF THE COURTS.

RESERVING NEVERTHELESS UNTO THE UNITED STATES OF AMERICA A RIGHT-OF-WAY THEREON
FOR DITCHES OR CANALS CONSTRUCTED BY THE AUTHORITY OF THE UNITED STATES.

PARCEL 7:

GOVERNMENT LOT 2 OF SECTION 12, TOWNSHIP 8 SOUTH, RANGE 1 WEST, SAN BERNARDINO
BASE AND MERIDIAN, ACCORDING TO THE OFFICIAL PLAT OF THE SURVEY OF SAID LAND ON
FILE IN THE BUREAU OF LAND MANAGEMENT.

SUBJECT TO ANY VESTED AND ACCRUED WATER RIGHTS FOR MINING, AGRICULTURAL,
MANUFACTURING OR OTHER PURPOSES AND RIGHTS TO DITCHES AND RESERVOIRS USED IN
CONNECTION WITH SUCH WATER RIGHTS AS MAY BE RECOGNIZED AND ACKNOWLEDGED BY THE
LOCAL CUSTOMS LAWS AND DECISIONS OF THE COURTS.

RESERVING NEVERTHELESS UNTO THE UNITED STATES OF AMERICA A RIGHT-OF-WAY THEREON
FOR DITCHES OR CANALS CONSTRUCTED BY THE AUTHORITY OF THE UNITED STATES.

Exhibit 1, Page 32

# EXHIBIT "2"

# PROMISSORY NOTE

Loan   237427-7                                                                                    $  540,000.00

Hemet, California                                                                   Date   December 8, 1982

FOR VALUE RECEIVED, the undersigned promise to pay to the order of the FEDERAL LAND BANK OF SACRAMENTO, a corporation, at its office in Sacramento, California, the principal sum of

## —FIVE HUNDRED FORTY THOUSAND AND NO/100—

Dollars, lawful money of the United States of America, with interest on said principal sum or the unpaid balance thereof at the rate of   11.75 percent per annum, payable as follows:

On January 1, 1983 and

on   April 1, 1983                                              all interest then accrued on said principal sum, and every   three

months thereafter, until all principal and interest shall have been paid in full, principal in consecutive installments of $   13,500.00 each, plus accrued interest; provided, however, that when the unpaid balance of principal has been reduced so that the next installment of principal will be less than the amount of one full installment, the undersigned will pay such balance, plus interest thereon, as the final installment.

THE RATE OF INTEREST RECITED ABOVE IS SUBJECT TO CHANGE. Under provisions of the variable interest rate plan of the Federal Land Bank of Sacramento, as authorized by and conforming with the Farm Credit Act of 1971 as amended (12 USC 2001 et seq.), at such time as the bank's farm and ranch loan interest rate is either increased or decreased, the interest rate on the indebtedness evidenced hereby will be adjusted to the then effective new loan rate.

Any maker of this note shall have the privilege of paying in advance the entire principal or any portion thereof. Prepayments of principal shall be applied on the unmatured balance of the indebtedness. Such payments shall not operate to reduce thereafter the amount of the installments contracted to be paid but shall operate only to discharge the loan at an earlier date.

If any installment of principal or interest herein provided is not paid when due, the undersigned shall be obligated to pay a late charge of Twenty-five Dollars ($25.00) for each such default. Further, any installment of principal or interest not paid when due shall bear interest at the rate of    15.75           percent per annum from the date of the default thereon until paid. At such time as the interest rate on the unmatured balance of the indebtedness evidenced hereby is either increased or decreased, the amount of the late charge herein provided and the rate of interest accrual on items in default may, likewise, be adjusted to conform with the late charge and the default interest rate then in effect for new farm and ranch loans.

In the event of default on any payments herein provided for or in case of failure to comply with any of the covenants, conditions or agreements contained in the mortgage or deed of trust given to secure the payment of this note, then, without notice, presentment or demand, the principal sum thereof together with any and all advances or outlays made under the terms of said mortgage or deed of trust and all accrued interest shall, at the option of the holder of this note, become due and payable immediately. Failure or delay in exercising this option shall not constitute a waiver of any such breach or default nor waiver of the holder's right to exercise said option upon any subsequent breach or default.

This note shall be the joint and several obligation of the makers hereof. Each of the undersigned hereby expressly waives all statutes of limitation affecting the enforceability of this note, and agrees to pay reasonable attorneys' fees and costs incurred in collection of payments due, or in the enforcement of any right or remedy hereunder. The separate property of any married person executing this note shall be liable for the indebtedness evidenced hereby. The makers, assumers, endorsers, sureties, and guarantors of this note consent to all renewals, indulgences, extensions, and all releases of security granted or permitted by the owner or holder hereof without notice.

Gary Clawson                                                       Jean Clawson

_____                                    _____
                                                                    Jean Clawson

_____                                    _____

_____                                    _____

_____                                    _____

_____                                    _____

Form 1235 (Rev. 5-81) FLB Sacramento— Promissory Note · New Loan or Refinance (Decreasing Installments)

# EXHIBIT "3"

FEDERAL LAND BANK OF SACRAMENTO
P.O. Box 13106-C
Sacramento, California 95813

RECEIVED FOR RECORD
AT 9:00 O'CLOCK A.M.
DEC 15 1982
FIRST AMERICAN TITLE COMPANY
OF RIVERSIDE
Book 1982, Page 216
Recorded in Official Records
of Riverside County, California
Recorder

# STATE OF CALIFORNIA

### Federal Land Bank of Sacramento Deed of Trust

Loan No. 237427-7

THIS DEED OF TRUST, made ..... December 8, 1982 ..... between

GARY CLAWSON and JEAN CLAWSON, his wife,

herein called Grantor, the FEDERAL LAND BANK OF SACRAMENTO, a corporation, as Trustee, and the FEDERAL LAND BANK OF SACRAMENTO, a corporation, as Beneficiary:

WITNESSETH: That Grantor hereby grants unto said Trustee, with power of sale, the following-described real property in ..... Riverside ..... County, California:

FOR DESCRIPTION OF REAL PROPERTY SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Together with all of Grantor's existing and future rights, however evidenced, to the use of water for irrigating said lands and for domestic stock watering uses, including ditches, laterals, conduits, and rights of way used to convey such water or to drain said land; all of which rights are hereby made appurtenant to said land; and all pumping plants now or hereafter used in connection therewith, and all wind machines used on said land, which pumping plants and wind machines are hereby declared to be fixtures; all grazing leases, permits, and licenses used with said land; all tenements, hereditaments, easements, rights of way, and appurtenances to said land, and the rents, issues, and profits thereof.

Form 1245 Front (Rev. 5-77) FLB Sacramento — California Deed of Trust

Exhibit 3, Page 34

216558

As security for the payment of: (a) $ 540,000.00  with interest as prescribed in Grantor's promissory note of even date herewith, payable to Beneficiary at its office in Sacramento, California; (b) all other obligations under said note; (c) any additional money Beneficiary may hereafter loan to Grantor, his successors or any of them, as advance(s) hereunder, with interest as prescribed in the note(s) evidencing such advance(s); (d) all renewals, reamortizations and extensions of the indebtedness evidenced by said note(s) secured hereby; (e) all money advanced to any receiver of the premises described herein; (f) all other money that may be advanced under provisions hereinafter recited in this deed of trust.

The promissory note(s) evidencing the indebtedness secured by this deed of trust contains a provision whereby the rates of interest on the unmatured principal portion of the indebtedness and on items in default are subject to change whenever the minimum interest rate of the Beneficiary is either increased or decreased.

As additional security, Grantor assigns, without obligation on Beneficiary to effect collection, all damages, royalties, rentals, and other revenue from all present and future oil, gas, and mineral leases, and rights affecting said premises, and all money payable to Grantor in the event of cancellation of any grazing leases, permits, or licenses, used with said land; and pledges

Upon Grantor's default or breach, all stock and contracts then pledged may be sold with the land, at public or private sale, without demand for performance and without notice of such sale to Grantor or any person;

Grantor requests that a copy of any notice of default and of any notice of sale hereunder be mailed to Grantor at the address herein designated, and covenants and agrees that:
   (1) Grantor will pay, when due and payable, all obligations secured by judgment or other liens, all state, county, and other taxes, assessments, and charges now or hereafter levied or assessed, against said premises or pledged stock, contracts, or rights;
   (2) Grantor will comply with the Farm Credit Act of 1971 and Federal Reclamation Act. Grantor will, at Grantor's expense: (a) forever warrant and defend title to said security; (b) protect the security and lien in any litigation; (c) care for the security in a farmerlike manner; and (d) maintain fire insurance on the improvements as required by Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Grantor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice. Grantor will not remove or destroy, or suffer the removal or destruction of, and will keep in good repair each building, fence, canal, well, and other improvement or fixture situated on the premises; that unless the written consent of the Beneficiary is first obtained, Grantor will not remove, replace, graft, bud, or otherwise alter any horticultural or viticultural tree, vine, or shrub planted upon the premises for a commercial purpose.
   (3) Beneficiary may: (a) change Trustees by certificate referring in general terms to all deeds of trust held by Beneficiary, which shall include this deed of trust, and which upon recordation shall be conclusive proof of proper change; (b) appear in and litigate any matters, including condemnation and bankruptcy proceedings, affecting the security of lien, and may incur necessary costs, expenses, and attorney fees therefor; (c) advance money for payment of such costs, expenses, and attorney fees, and for payment of all other obligations herein incurred by Grantor, which advances, together with interest accrued thereon shall be immediately due and payable; (d) demand all condemnation awards and damages be paid to Beneficiary to be applied on the indebtedness secured hereby.
   (4) Upon Grantor's default or breach, Beneficiary may: (a) take possession of said premises with all rights of mortgagee in possession or have a receiver appointed; (b) at its option accelerate the maturity of the indebtedness, have the power of sale exercised in accordance with law then in force; (c) have the security sold in one parcel; (d) purchase at any Trustee's sale;
   (5) Acceptance by Beneficiary of any payment shall not operate as a waiver of any prior default; and the release of any portion of said security or any release from personal liability shall not affect the personal liability of any person not specifically released, nor the lien hereof upon the remainder of said premises for the full amount of said indebtedness then remaining;
   (6) The Trustee, or Trustees jointly and severally, may: (a) at any time recover any portion of the security and consent to easements; (b) upon full payment, reconvey to the person or persons legally entitled thereto; (c) exercise their powers; (d) postpone sales by proclamation at time and place of sale; (e) apply sale proceeds to expenses thereof, Trustee's fee, attorney fees actually incurred, title expenses, indebtedness secured hereby and any surplus to parties entitled thereto. The recitals in full and in partial reconveyances and in any Trustee's Deed shall be conclusive.
   (7) Each Grantor is jointly and severally liable for all obligations secured hereby, which obligations shall extend to and bind the heirs, executors, administrators, successors, and assigns of each Grantor.
   (8) This instrument is given and accepted upon the express provision that in the event the herein-described property, or any part thereof, or any interest therein, is sold, conveyed, or alienated by the Grantor, or by operation of law or otherwise, except by inheritance, all obligations secured by this instrument, irrespective of the maturity dates expressed herein, at the option of the holder hereof, and without demand or notice, shall immediately become due and payable. Failure to exercise such option shall not constitute a waiver of the right to exercise this option in the event of subsequent sale, agreement to sell, conveyance, or alienation. Subsequent acceptance of any payment hereunder by Beneficiary shall not be deemed a waiver of any default by Grantor, or any sale, agreement to sell, conveyance, or alienation, regardless of Beneficiary's knowledge of such default, sale, agreement to sell, conveyance, or alienation at the time of acceptance of such payment.

Address   43425 Sage Road

_____        Gary Clawson

          Hemet, California  92343

On the basis of the Bank's files, I certify that the loan is secured by a first lien, or its equivalent from a security        Jean Clawson
standpoint as determined by the Farm Credit Adminis-
tration, in compliance with the Farm Credit Act of
1971 and the regulations of the Administration.

JAN  3  1983                                             442-7
_____
    Date


STATE OF CALIFORNIA
County of Riverside _____ On December 14, 1982 before me, the undersigned a notary public in

and for said County and State, personally appeared   Jean Clawson

_____

known to me to be the person_ whose name _I_ _____ subscribed to the within instrument, and acknowledged to me
that _She_ ___ executed the same.

(Seal)                                              Sheri Marie Brown
                                         Notary Public in and for _Riverside_ ____ County,
       OFFICIAL SEAL                     State of California.
    SHERI MARIE BROWN
   NOTARY PUBLIC-CALIFORNIA
     PRINCIPAL OFFICE IN
      RIVERSIDE COUNTY
  My Commission Expires Se    1986

                                                        Exhibit 3, Page 35

# EXHIBIT "4"

05/01/2013  04:38PM  951-600-9648     ATTORNEY ABREU                    PAGE  03/11

RECORDING REQUESTED BY

CHICAGO TITLE COMPANY

AND WHEN RECORDED MAIL TO

Name  Shamrock Minerals, Inc.
Address c/o John P. Mulder
City/   52-160 Avenida Rubio
State   La Quinta, CA  92253

Title Order No. S36   Escrow No.

RECEIVED FOR RECORD
AT 2:00 O'CLOCK

AUG 18 1992

___ SPACE ABOVE THIS LINE FOR RECORDER'S USE ___

## Assignment of Deed of Trust

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to Shamrock Minerals, Inc., a California corporation,

all beneficial interest under that certain Deed of Trust dated December 8, 1992

executed by      Gary Clawson and Jean Clawson                              Trustor,
                                                                            Trustee,
to     /      Federal Land Bank of Sacramento                in book
and recorded as Instrument No.  216558 on  December 15, 1982  County, California, describing land therein as:
Official Records in the County Recorder's office of   Riverside

See Exhibit A attached hereto and incorporated herein by this reference.

Chicago Title Insurance Company has recorded this instrument by
request as an accommodation only.

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with
interest, and all rights accrued or to accrue under said Deed of Trust.

                                                              FARM CREDIT SERVICES OF SOUTHERN
STATE OF CALIFORNIA San Bernardino }  ss.                     CALIFORNIA, successor-by-assignment
COUNTY OF                          }                          to Federal Land Bank of Sacramento
On  14th    Day of   August    , in the year
1992                                                          By:  Robert Russell
___, before me, the undersigned, a Notary Public in
and for said County and State, personally appeared  Robert   Its: Asst. Vice President
Russell                                       personally known
to me XXXXXXXXXXXXXXXXXXXXXXXXX to be the
             Asst. Vice     President, and
    XXXXXXXXXXXXX
personally known to me (or proved to me on the basis of satisfactory
evidence) to be the  XXXXXXX
Secretary of the corporation that executed the within instrument, and
acknowledged to me that such corporation executed the within instru-
ment pursuant to its by-laws or a resolution of its board of directors.

Signature  Julie S Thompson
           Julie S. Thompson
           Name (Typed or Printed)
           Notary Public in and for said County and State



OFFICIAL SEAL
JULIE S. THOMPSON
NOTARY PUBLIC - CALIFORNIA
SAN BERNARDINO COUNTY
My Comm. Expires Nov. 20, 1992

EXHIBIT



EXHIBIT "A"

DESCRIPTION:

In the unincorporated area of the County of Riverside, State of California, described as follows:

PARCEL 1:

Parcel 3 of Parcel Map No. 14860, as shown by Map on file in Book 109 pages 54 through 58 of Parcel Maps, Records of Riverside County, California;

EXCEPTING therefrom that portion described as follows:

BEGINNING at the Southeasterly corner of said Parcel 3;
THENCE along the Southerly line of Parcel 3, North 89° 35' 37" West, 319.90 feet to the Easterly sideline of Sage Road shown also as Lot "A" on said Map;
THENCE along said Easterly line North 13° 38' 09" West, 185.45 feet to the beginning of a curve, concave Easterly and having a radius of 2143.00 feet;
THENCE Northerly along said curve through a central angle of 1° 53' 51" and an arc length of 71.04 feet, a radial to said point bears South 78° 15' 42" West;
THENCE leaving said sideline, South 89° 35' 37" East, 378.61 feet to a point on the Easterly line of said Parcel 3, said point lies North 00° 08' 32" West, 249.11 feet from the Point of Beginning;
THENCE South 00° 08' 32" East, 249.11 feet to the Point of Beginning.

PARCEL 2:

The West half of the Southwest quarter of the Southwest quarter of Section 8, in Township 8 South, Range 1 East, San Bernardino Base and Meridian.

EXHIBIT 15 PAGE 2        Exhibit 4, Page 37

# EXHIBIT "5"

RECORDING REQUESTED BY

CHICAGO TITLE COMPANY

AND WHEN RECORDED MAIL TO

FORECLOSURE SERVICE CENTER
CHICAGO TITLE COMPANY
825 E. CARNEGIE DRIVE
SAN BERNARDINO, CA 92408

RECEIVED FOR RECORD
AT 2:00 O'CLOCK

JUN 24 1993

536990-44        3997-60
TITLE ORDER NO.       TRUSTEE SALE NO.

COMPUTER NO. 40-9203-0154

## NOTICE OF RESCISSION
of Declaration of Default and Demand for Sale and of
Notice of Default and Election to Sell under Deed of Trust

NOTICE IS HEREBY GIVEN: That CHICAGO TITLE COMPANY a California corporation, is the duly appointed Trustee under the following described Deed of Trust:

TRUSTOR: GARY CLAWSON and JEAN CLAWSON, his wife

BENEFICIARY: FEDERAL LAND BANK OF SACRAMENTO, a corporation and subsequently
          assigned to FARM CREDIT SERVICES OF SOUTHERN CALIFORNIA

Recorded on 2/15/82      as Document no. 216558
On Official Records in the office of the Recorder of Riverside                Book                Page
California, describing the land therein:                                                              County,
As more fully described on said Deed of Trust.

Chicago Title Insurance Company has recorded this instrument by
request as an accommodation only.

That the written Notice of Default and Election to Sell under Deed of Trust, under the terms of the Deed of Trust hereinabove referred to,
Recorded  04/14/92      as Document no. 131682        Book                Page
On Official Records in the office of the Recorder of  Riverside                                        County,
California, together with the Declaration of Default and Demand for Sale heretofore delivered to CHICAGO TITLE COMPANY, a California corporation, as Trustee under said Deed of Trust, is hereby rescinded.

The beneficial interest under said Deed of Trust is owned by the undersigned.

Dated:  06/15/93                   SHAMROCK MINERALS, INC.

                                   BY: _____ Pres.

                                   BY: _____ Sec.

The foregoing rescission was delivered to CHICAGO TITLE COMPANY, a California corporation, as Trustee under said Deed of Trust on
6-22-93

                                   CHICAGO TITLE COMPANY
                                   a California corporation

                                   By _____
                                        Assistant Secretary

Stock No. CATS-625/CT-119F (12-86)

                                   Notice of Rescission

# EXHIBIT "6"

**Recording Requested By**
First American Title Insurance Company

AND WHEN RECORDED MAIL TO

NAME    OTIS P. HEALD
ADDRESS  P.O. BOX  1707
CITY &   FALLBROOK, CA. 92088
STATE

RECEIVED FOR RECORD
AT 8:00 O'CLOCK

JUN 23 1993

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## Assignment of Deed of Trust

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to ALBERT A. PIRAMONTI, as Trustee for the Treble Inc. Profit Sharing Plan and Trust, dated 12/1/81, as amended an undivided 50% interest and OTIS P. HEALD, Trustee of the Cleveland Corporation Profit* all beneficial interest under that certain Deed of Trust dated December 8, 1982

executed by

GARY CLAWSON and JEAN CLAWSON, husband and wife                                    , Trustor

to    Chicago Title Company                                                          , Trustee,

and recorded as Instrument No. 216558        on    December 15, 1982        in Book
page xxxxxxxxxxxx of Official Records in the County Recorder's office of    Riverside    County,
California, describing land therein as:

Parcel 3 of Parcel Map No. 14860, in the Unincorporated area of Riverside County, as shown by Map of File in Book 109 Pages 54 through 58 Inclusive of Parcel Maps, records of Riverside County, California.

MORE FULLY DESCRIBED ON THE LEGAL DESCRIPTION, MARKED EXHIBIT "A", ATTACHED HERETO AND MADE A PART HEREOF.

  Plan and     /as amended
*Sharing Trust effective 1/1/81, as to an undivided 50% interest.

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated  June 4, 1993                                    SHAMROCK MINERALS, INC., a Ca. Corp.

                                                       By: John V. Mulder

STATE OF CALIFORNIA      }
COUNTY OF _____      } ss.
On this the _____ day of _____, 19____ before me,
the undersigned, a Notary Public in and for said County and State,
personally appeared _____
_____ personally known to me or
proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) subscribed to the within instrument and acknow-
ledged that _____ executed the same.

                                                       FOR NOTARY SEAL OR STAMP

Title Order No. _____    Escrow No. _____

CAL-62/CT (Rev. 2-88)

EXHIBIT

Exhibit 6, Page 39

# EXHIBIT "7"



RECORDING REQUESTED BY

Recording Requested By
First American Title Insurance Company

AND WHEN RECORDED MAIL TO

GOLDEN STAR MINING
C/O JOHN MULDAR
52-160 AVENIDA RUBIO
LA QUINTA, CA. 92253

RECEIVED FOR RECORD
AT 8:00 O'CLOCK

DEC 20 1993

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## Assignment of Deed of Trust

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to
GOLDEN STAR MINING, a Limited Liability Company
all beneficial interest under that certain Deed of Trust dated    December 8, 1982
executed by  Gary Clawson and Jean Clawson                                    . Trustor,

to Federal Land Bank of Sacramento, a Corporation
and recorded as Instrument No. 216558            on December 15, 1982            in book
page          , of Official Records in the County Recorder's office of    Riverside          County,
California, describing land therein as:
PARCEL A:
Parcel 3 of Parcel Map No. 14860, as shown by Parcel Map on File in Book 109
pages 54 through 56 inclusive of parcel maps, recors of Riverside County,
California.

MORE FULLY DESCRIBED ON THE LEGAL DESCRIPTION, MARKED EXHIBIT "A", ATTACHED HERETO
AND MADE A PART HEREOF.

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with
interest, and all rights accrued or to accrue under said Deed of Trust.

TRISLA INC., Profit Sharing Plan & Trust
BY:                                            , Trustee
ALBERT A. PIERUCCI, Trustee

PIERUCCIS PROFIT SHARING TRUST
Dated December 3, 1993                          WEIT C. Hood, Trustee

STATE OF CALIFORNIA
COUNTY OF                        } SS.
On the this the          day of          , 19        before me,
the undersigned, a Notary Public in and for said County and State,
personally appeared

personally known to me or
proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) subscribed to the within instrument and acknow-
ledged that          executed the same.

FOR NOTARY SEAL OR STAMP

Title Order No.          Escrow No.

...CT (Rev. 2-84)

Title

EXHIBIT "A"

1982344

TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS VESTED IN:

SUNDANCE INTERNATIONAL, L.P.,
A CALIFORNIA LIMITED PARTNERSHIP

THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR
REFERRED TO COVERED BY THIS REPORT IS:

IN FEE

THE LAND REFERRED TO IN THIS REPORT IS SITUATED IN THE
UNINCORPORATED AREA OF THE COUNTY OF RIVERSIDE, STATE OF
CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL A:

PARCEL 3 OF PARCEL MAP NO. 14860, AS SHOWN BY PARCEL MAP ON FILE
IN BOOK 109 PAGES 54 THROUGH 58 INCLUSIVE OF PARCEL MAPS, RECORDS
OF RIVERSIDE COUNTY, CALIFORNIA;

EXCEPTING THEREFROM THAT PORTION DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST EASTERLY SOUTHEAST CORNER OF SAID PARCEL 3,
SAID POINT BEING ON THE EASTERLY LINE OF SECTION 18, TOWNSHIP 8
SOUTH, RANGE 1 EAST, SAN BERNARDINO BASE AND MERIDIAN, ACCORDING
TO UNITED STATES GOVERNMENT SURVEY THEREOF;
THENCE ALONG THE SOUTHERLY LINE OF SAID PARCEL 3, NORTH 89
DEGREES 35' 37" WEST 319.90 FEET TO THE EASTERLY LINE OF LETTERED
LOT "A" OF SAID PARCEL MAP NO. 14860, (ALSO KNOWN AS SAGE ROAD);
THENCE ALONG SAID EASTERLY LINE, NORTH 13 DEGREES 38' 09" WEST
185.45 FEET TO THE BEGINNING OF A TANGENT 2145.00 FOOT RADIUS
CURVE CONCAVE EASTERLY;
THENCE NORTHERLY ALONG THE ARC OF SAID CURVE, THROUGH A CENTRAL
ANGLE OF 01 DEGREES 53' 51" A DISTANCE OF 71.04 FEET;
THENCE NONTANGENT TO SAID CURVE, SOUTH 89 DEGREES 35' 37" EAST
378.61 FEET TO THE MOST EASTERLY EASTERLY LINE OF SAID PARCEL 3;
THENCE ALONG SAID EASTERLY LINE, SOUTH 0 DEGREES 08' 32" EAST
249.11 FEET TO THE POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM THAT PORTION AS DESCRIBED IN THAT
CERTAIN FINAL ORDER OF CONDEMNATION RECORDED APRIL 14, 1992 AS
INSTRUMENT NO. 131556 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY,
CALIFORNIA.

PARCEL B:

THE WEST HALF OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER
OF SECTION 8, TOWNSHIP 8 SOUTH, RANGE 1 EAST, SAN BERNARDINO BASE
AND MERIDIAN, ACCORDING TO UNITED STATES GOVERNMENT SURVEY
THEREOF.

PAGE   2

EXHIBIT _17_ PAGE _2_

# EXHIBIT "8"



RECORDING REQUESTED BY
Recording Requested By
First American Title Insurance Company

WHEN RECORDED MAIL TO:

Russell J. Singer
31783 Fifth Ave.
Laguna Beach, CA 92677

325300

RECEIVED FOR RECORD
AT 2:30 O'CLOCK

AUG 19 1994

NOTE: The Assignment must be kept and an form and book of Trustee being assigned

## Assignment of Deed of Trust

FOR VALUABLE CONSIDERATION, the undersigned grants, assigns, and transfers to

ADOBE OIL, DEVELOPMENT CORPORATION, A CALIFORNIA CORPORATION

all beneficial interest under that certain Deed of Trust dated    December 8, 1982    , 1982

by        Gary Clawson and Jean Clawson

to        Federal LandBank of Sacramento,

as Trustee, and recorded on December 15, 1982    as Instrument No. 216558    in book
at Page        of Official Records, in the office of the County Recorder of Riverside        County, California; together
with the Promissory Note secured by said Deed of Trust and other all rights accrued or to accrue under said Deed of Trust. The property covered by
said Deed of Trust is briefly described as follows:

See Exhibit "A" attached hereto and made apart hereof.

GOLDEN STAR MINING, A Limited
Liability Company

Dated    Aug 3-94

Gary Stanhiser, President

John & Mulder

Manager

STATE OF CALIFORNIA
County of Riverside

KARINA ANN GERHAM
COMM. #1002008
NOTARY PUBLIC - CALIFORNIA
RIVERSIDE COUNTY
My Commission Expires September 20, 1997

NOTARY SEAL OR SEAL

GET 140

EXHIBIT

## ACKNOWLEDGEMENT

STATE OF CALIFORNIA
COUNTY OF _____ _Orange_

On _August 3, 1994_ _____, before me,

_Ann Mendez_ _____

personally appeared _Gary Stanhiser, Pres., Manager_ _____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Ann Mendez_ _____     (Seal)

```
┌─────────────────────────────┐
│          OFFICIAL SEAL      │
│          ANN MENDEZ         │
│   NOTARY PUBLIC-CALIFORNIA  │
│       PRINCIPAL OFFICE IN   │
│         ORANGE COUNTY       │
│  My Commission Expires September 2, 1995 │
└─────────────────────────────┘
```

GB 18a (4-87)

EXHIBIT _18_ PAGE _2_

PARCEL A:

PARCEL 3 OF PARCEL MAP NO. 14860, AS SHOWN BY PARCEL MAP ON FILE IN BOOK 103 PAGES 54 THROUGH 58 INCLUSIVE OF PARCEL MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA;

EXCEPTING THEREFROM THAT PORTION DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST EASTERLY SOUTHEAST CORNER OF SAID PARCEL 3, SAID POINT BEING ON THE EASTERLY LINE OF SECTION 18, TOWNSHIP 8 SOUTH, RANGE 1 EAST, SAN BERNARDINO BASE AND MERIDIAN, ACCORDING TO UNITED STATES GOVERNMENT SURVEY THEREOF;
THENCE ALONG THE SOUTHERLY LINE OF SAID PARCEL 3, NORTH 89 DEGREES 35' 37" WEST 319.90 FEET TO THE EASTERLY LINE OF LETTERED LOT "A" OF SAID PARCEL MAP NO. 14860, (ALSO KNOWN AS SAGE ROAD);
THENCE ALONG SAID EASTERLY LINE, NORTH 13 DEGREES 38' 09" WEST 185.45 FEET TO THE BEGINNING OF A TANGENT 2145.00 FOOT RADIUS CURVE CONCAVE EASTERLY;
THENCE NORTHERLY ALONG THE ARC OF SAID CURVE, THROUGH A CENTRAL ANGLE OF 01 DEGREES 53' 51" A DISTANCE OF 72.64 FEET;
THENCE NONTANGENT TO SAID CURVE, SOUTH 89 DEGREES 35' 37" EAST 378.61 FEET TO THE MOST EASTERLY EASTERLY LINE OF SAID PARCEL 3;
THENCE ALONG SAID EASTERLY LINE, SOUTH 0 DEGREES 08' 32" EAST 249.11 FEET TO THE POINT OF BEGINNING;

ALSO EXCEPTING THEREFROM THAT PORTION AS DESCRIBED IN THAT CERTAIN FINAL ORDER OF CONDEMNATION RECORDED APRIL 14, 1992 AS INSTRUMENT NO. 131556 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

PARCEL B:

THE WEST HALF OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 8, TOWNSHIP 8 SOUTH, RANGE 1 EAST, SAN BERNARDINO BASE AND MERIDIAN, ACCORDING TO UNITED STATES GOVERNMENT SURVEY THEREOF.

PAGE  2

EXHIBIT 18 PAGE 3

# EXHIBIT "9"

04/27/2013  11:35PM  951-600-9648                    ATTORNEY ABREU                    PAGE  08/12

**Recording Requested By**
Order No. 0625-936319
Escrow No. 1049-LT
Loan No. First American Title Company



**DOC # 2002-312601**
06/07/2002 08:00A Fee:12.00
Page 1 of 2
Recorded In Official Records
County of Riverside
Gary L. Orso
Assessor, County Clerk & Recorder

WHEN RECORDED MAIL TO:

KID GLOVES, INC.
C/O 29840 Mira Loma Dr.
Temecula, CA 92592
Attn: Kelly Abreau

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 1 |   |   |   |   |
| A | R | L |   | COPY | LONG | REFUND | NCHG | EXAM |   |

12

T
AG

# ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned grants, assigns and transfers to:

KID GLOVES, INC., a Nevada Corporation

all beneficial interest under that certain Deed of Trust dated December 8, 1982
executed by   Gary Clawson and Jean Clawson                                    , Trustor,
to   Federal Land Bank of Sacramento                                    , Trustee,
and recorded December 15, 1982 as Instrument No. 216558   in Book //////////// Page
of Official Records in the office of the County Recorder of     Riverside     County, California,
describing land therein as:

Parcel 3 of Parcel Map No. 14860, in the unincorporated area of Riverside County, as shown
by Map on file in Book 109, pages 54 through 58 inclusive of Parcel Maps, records of
Riverside County, California, per legal description which is attached hereto and made a
a part hereof.

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated _____ April 26, 2002 _____

Adobe Oil, Development Corp.

STATE OF CALIFORNIA           }
COUNTY OF *Orange*            }ss.
On *May 23, 2002*                  before me,
*Laura R. Eustace*
personally appeared *Russell J. Singer*

personally known to me (or ~~proved to me on the basis of satisfactory~~
~~evidence)~~ to be the person(X) whose name(X) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their
signature(X) on the instrument the person(X) or the entity upon behalf of
which the person(X) acted, executed the instrument.

WITNESS my hand and official seal.

Signature *Laura R Eustace*

BY: *Russell J. Singer*
    Russell J. Singer, President



LAURA R. EUSTACE
COMM...1343978
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Term Exp. Feb. 22, 2006

(This area for official notarial seal)

1064 (1/94)
Exhibit 9, Page 45

# EXHIBIT 'A'

Date: **May 09, 2002**

File No.: **0625--536319 ( )**

**PARCEL A:**

PARCEL 3 OF PARCEL MAP NO. 14860, AS SHOWN BY PARCEL MAP ON FILE IN BOOK 109 PAGES 54 THROUGH 58 INCLUSIVE OF PARCEL MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA;

EXCEPTING THEREFROM THAT PORTION DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST EASTERLY SOUTHEAST CORNER OF SAID PARCEL 3, SAID POINT BEING ON THE EASTERLY LINE OF SECTION 18, TOWNSHIP 8 SOUTH, RANGE 1 EAST, SAN BERNARDINO BASE AND MERIDIAN, ACCORDING TO UNITED STATES GOVERNMENT SURVEY THEREOF; THENCE ALONG THE SOUTHERLY LINE OF SAID PARCEL 3, NORTH 89 DEGREES 35' 37" WEST 319.90 FEET TO THE EASTERLY LINE OF LETTERED LOT "A" OF SAID PARCEL MAP NO. 14860, (ALSO KNOWN AS SAGE ROAD); THENCE ALONG SAID EASTERLY LINE, NORTH 13 DEGREES 38' 09" WEST 185.45 FEET TO THE BEGINNING OF A TANGENT 2145.00 FOOT RADIUS CURVE CONCAVE EASTERLY; THENCE NORTHERLY ALONG THE ARC OF SAID CURVE, THROUGH A CENTRAL ANGLE OF 01 DEGREES 53' 51" A DISTANCE OF 71.04 FEET; THENCE NONTANGENT TO SAID CURVE, SOUTH 89 DEGREES 35' 37" EAST 378.61 FEET TO THE MOST EASTERLY LINE OF SAID PARCEL 3; THENCE ALONG SAID EASTERLY LINE, SOUTH 0 DEGREES 08' 32" EAST 249.11 FEET TO THE POINT OF BEGINNING;

ALSO EXCEPTING THEREFROM THAT PORTION AS DESCRIBED IN THAT CERTAIN FINAL ORDER OF CONDEMNATION RECORDED APRIL 14, 1992 AS INSTRUMENT NO. 131556 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

**PARCEL B:**

THE WEST HALF OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 8, TOWNSHIP 8 SOUTH, RANGE 1 EAST, SAN BERNARDINO BASE AND MERIDIAN, ACCORDING TO UNITED STATES GOVERNMENT SURVEY THEREOF. A.P.N. 581-070-015-7

Initials: _____

2002-312681
06/07/2002 09:00A
2 of 2

# EXHIBIT "10"

RECORDING REQUESTED BY:
1690463 ALBERTA LTD.

AND WHEN RECORDED MAIL TO:
KID GLOVES INC.
123 W NYE LANE
CARSON CITY NV 89706

DOC # 2012-0618759
12/19/2012 12:39P Fee:21.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|---|---|---|---|---|---|---|
| | | | Z | | | | | | 17 00 |
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM |
| | | | | | | | CTY | UNI | 603 |

T:

## ASSIGNMENT OF DEED OF TRUST

35-

C
603

FOR VALUE RECEIVED, the undersigned grants, assigns and transfers to:

1690463 ALBERTA LTD., a Canadian Corporation, all beneficial interest under that certain Deed of Trust dated December 8, 1982 executed by Gary Clawson and Jean Clawson to Federal Land Bank Corporation and recorded December 15, 1982 as Instrument No. 216558 of the Official Records in the office of the County Recorder of Riverside County, California, describing land therein as;

Parcel 3 of Parcel Map No. 14860, in the unincorporated area of Riverside County, as shown by Map on file in Book 109, pages 54 through 58 inclusive of Parcel Maps, records of Riverside County, California, per legal description which is attached hereto as Exhibit 'A',

SEE EXHIBIT 'A'. ATTACHED HERETO AND INCORPORATED HEREIN

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated: 12/19/2012

Kid Gloves, Inc., a Nevada Corporation

By:
Kelly Abreu, President

STATE OF CALIFORNIA    )
COUNTY OF Riverside    )

On Dec. 19, 2012 before me, Erin N. Weaver, Notary Public, personally appeared Kelly Abreu, who proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature Erin N. Weaver



ERIN N. WEAVER
COMM. #1912707
NOTARY PUBLIC - CALIFORNIA
RIVERSIDE COUNTY
My Comm. Expires Nov. 6, 2014

FOR NOTARY STAMP

# EXHIBIT 'A'

**PARCEL A:**

PARCEL 3 OF PARCEL MAP NO. 14860, AS SHOWN BY PARCEL MAP ON FILE IN BOOK 109 PAGES 54 THROUGH 58 INCLUSIVE OF PARCEL MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA;

EXCEPTING THEREFROM THAT PORTION DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST EASTERLY SOUTHEAST CORNER OF SAID PARCEL 3, SAID POINT BEING ON THE EASTERLY LINE OF SECTION 18, TOWNSHIP 8 SOUTH, RANGE 1 EAST, SAN BERNARDINO BASE AND MERIDIAN, ACCORDING TO UNITED STATES GOVERNMENT SURVEY THEREOF; THENCE ALONG THE SOUTHERLY LINE OF SAID PARCEL 3, NORTH 89 DEGREES 35' 37" WEST 319.90 FEET TO THE EASTERLY LINE OF LETTERED LOT "A" OF SAID PARCEL MAP NO. 14860, (ALSO KNOWN AS SAGE ROAD); THENCE ALONG SAID EASTERLY LINE, NORTH 13 DEGREES 38' 09" WEST 185.45 FEET TO THE BEGINNING OF A TANGENT 2145.00 FOOT RADIUS CURVE CONCAVE EASTERLY; THENCE NORTHERLY ALONG THE ARC OF SAID CURVE, THROUGH A CENTRAL ANGLE OF 01 DEGREES 53' 51" A DISTANCE OF 71.04 FEET; THENCE NONTANGENT TO SAID CURVE, SOUTH 89 DEGREES 35' 37" EAST 378.61 FEET TO THE MOST EASTERLY LINE OF SAID PARCEL 3; THENCE ALONG SAID EASTERLY LINE, SOUTH 0 DEGREES 08' 32" EAST 249.11 FEET TO THE POINT OF BEGINNING;

ALSO EXCEPTING THEREFROM THAT PORTION AS DESCRIBED IN THAT CERTAIN FINAL ORDER OF CONDEMNATION RECORDED APRIL 14, 1992 AS INSTRUMENT NO. 131556 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

**PARCEL B:**

THE WEST HALF OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 8, TOWNSHIP 8 SOUTH, RANGE 1 EAST, SAN BERNARDINO BASE AND MERIDIAN, ACCORDING TO UNITED STATES GOVERNMENT SURVEY THEREOF.
A.P.N. 581-070-015-7

2012-0618759
12/19/2012 12:39P
2 of 2

# EXHIBIT "11"

04/28/2013  12:10AM  951-600-9648                ATTORNEY ABREU                         PAGE  05/13

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No. | Call | Collateral | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|---|
| $243,296.91 | 05-19-1989 | 05-18-1990 | | 01B | 275 | 001-003050 | C3 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

**Borrower:**  GARY CLAWSON
43425 SAGE ROAD
HEMET, CA  92343

**Lender:**  United Mercantile Bank & Trust Company, N.A.
1300 East Green Street
Pasadena, CA  91106

---

**Principal Amount: $243,296.91**          **Initial Rate:  14.000%**          **Date of Note: May 19, 1989**

**PROMISE TO PAY.** GARY CLAWSON ("Borrower") promises to pay to United Mercantile Bank & Trust Company, N.A. ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Forty Three Thousand Two Hundred Ninety Six & 91/100 Dollars ($243,296.91), together with interest on the unpaid principal balance from May 19, 1989, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule:

　　　　11 consecutive monthly interest payments, beginning June 18, 1989, with interest calculated on the unpaid principal balances at an interest rate of 2.000 percentage points over the index described below; 1 principal payment of $15,000.00 on November 18, 1989, with interest calculated on the unpaid principal balances at an interest rate of 2.000 percentage points over the index described below; and 1 principal and interest payment of $230,960.37 on May 18, 1990, with interest calculated on the unpaid principal balances at an interest rate of 2.000 percentage points over the index described below. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note.

Interest on this Note is computed on a 365/360 simple interest basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, times the outstanding principal balance, times the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. Unless otherwise agreed or required by applicable law, payments will be applied first to accrued unpaid interest, then to principal, and any remaining amount to any unpaid collection costs and late charges.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an index which is Lender's Prime Rate (the "Index"). This is the rate Lender charges, or would charge, on 90-day unsecured loans to the most creditworthy corporate customers. This rate may or may not be the lowest rate available from Lender at any given time. Lender will tell Borrower the current index rate upon Borrower's request. Borrower understands that Lender may make loans based on other rates as well. The interest rate change will not occur more often than each time the prime rate changes. The index currently is 12.000% per annum. The interest rate or rates to be applied to the unpaid principal balance of this Note will be the rate or rates set forth above in the "Payment" section. Subject to any specific Note provisions to the contrary, any variable interest rate tied to the index will be calculated as of, and will begin on, the commencement date indicated for the applicable payment stream. **NOTICE:** Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (a) increase Borrower's payments to insure Borrower's loan will pay off by its original final maturity date, (b) increase Borrower's payments to cover accruing interest, (c) increase the number of Borrower's payments, and (d) increase the final payment.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $200.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, they will reduce the principal balance due and may result in Borrower's making fewer payments.

**DEFAULT.** Borrower will be in default if any of the following happens: (a) Borrower fails to make any payment when due. (b) Borrower breaks any promise Borrower has made to Lender, or Borrower fails to perform promptly at the time and strictly in the manner provided in this Note or in any other agreement or loan Borrower has with Lender. (c) Any representation or statement made or furnished to Lender by Borrower or on Borrower's behalf is false or misleading in any material respect. (d) Borrower dies or becomes insolvent, a receiver is appointed for any part of Borrower's property, Borrower makes an assignment for the benefit of creditors, or any proceeding is commenced either by Borrower or against Borrower under any bankruptcy or insolvency laws. (e) Any creditor tries to take any of Borrower's property on or in which Lender has a lien or security interest. This includes a garnishment of any of Borrower's accounts with Lender. (f) Any of the events described in this default section occurs with respect to any guarantor of this Note.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount. Upon Borrower's failure to pay all amounts declared due pursuant to this section, including failure to pay upon final maturity, Lender, at its option, may also, if permitted under applicable law, increase the variable interest rate on this Note to 7.000 percentage points over the index. The interest rate will not exceed the maximum rate permitted by applicable law. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower also will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also will pay any court costs, in addition to all other sums provided by law. This Note has been delivered to Lender and accepted by Lender in the State of California. If there is a lawsuit, Borrower agrees to submit to the jurisdiction of the courts of Los Angeles County, the State of California. (Initial Here _____) Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other. This Note shall be governed by and construed in accordance with the laws of the State of California.

**COLLATERAL.** Borrower acknowledges this Note is secured by a Deed of Trust dated May 19, 1989, to Lender on real property located in RIVERSIDE County, State of California. That agreement contains the following due on sale provision: Lender may at its option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without the Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of real property or any right, title or interest therein; whether legal or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of real property interest. If any Trustor is a corporation or partnership, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock or partnership interests, as the case may be, of Trustor. However, this option shall not be exercised by Lender if exercise is prohibited by federal law or by California law.

Exhibit 11, Page 49

05-19-1989                          **PROMISSORY NOTE**                          **Page 2**
Loan No.                                (Continued)

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, protest and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew, extend (repeatedly and for any length of time) or modify this loan, from time to time, or release any party or guarantor; impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THE NOTE.

BORROWER:

X COPY

GARY CLAWSON

Variable Rate. Irregular.                                    LASER PRO (tm) Ver. 3.09 (c) 1989 CFI Bankers Service Group, Inc.  All rights reserved.

# EXHIBIT "12"

LINCOLN TITLE

RECORDATION REQUESTED BY:

United Mercantile Bank & Trust Company, N.A.
1300 East Green Street
Pasadena, CA 91106

WHEN RECORDED MAIL TO:

United Mercantile Bank & Trust Company, N.A.
1300 East Green Street
Pasadena, CA 91106

181898

RECEIVED FOR RECORD
AT 2:00 O'CLOCK P.M.

JUN 2 1989

Recorded in Official Records
of Riverside County, California

Recorder

Fees $

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

# DEED OF TRUST

THIS DEED OF TRUST IS DATED MAY 19, 1989, among **GARY CLAWSON, whose address is 43425 SAGE ROAD, HEMET, CA  92343** (referred to below as "Trustor"); United Mercantile Bank & Trust Company, N.A., whose address is 1300 East Green Street, Pasadena, CA  91106 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Lincoln Title Company, whose address is 6820 INDIANA AVENUE, SUITE 140, RIVERSIDE, CALIFORNIA  92506, (referred to below as "Trustee").

**CONVEYANCE AND GRANT.** For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **located in RIVERSIDE County, State of California, (the "Real Property"):**

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART THEREOF CONSISTING OF FOUR (4) PAGES FOR A COMPLETE LEGAL DESCRIPTION.

The Real Property or its address is commonly known as 43425 SAGE ROAD, HEMET, CA  92343. The Real Property tax identification number is 581-070-004-7, 81-070-012-4, 581-070-013-5, 581-070-011-3, 581-150-014-3, 917-050-009-5, 581-070-014-6, 581-150-013-2, 581-070-015-7, 581-150-016-5, 581-070-017-6, 917-050-003-9, 581-120-005-2, 581-150-015-4.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all leases of the Property and all Rents from the Property. In addition, Trustor grants Lender a Uniform Commercial Code security interest in the Rents and the Personal Property defined below.

**DEFINITIONS.** The following words shall have the following meanings when used in this Deed of Trust.

**Beneficiary.** The word "Beneficiary" means United Mercantile Bank & Trust Company, N.A., its successors or assigns. United Mercantile Bank & Trust Company, N.A. also is referred to as "Lender" in this Deed of Trust.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Improvements.** The word "Improvements" means and includes without limitation all existing and future improvements, fixtures, buildings, structures, mobile homes affixed on the Real Property, facilities, additions and similar construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal and interest payable under the Note and any amounts expended or advanced by Lender to discharge obligations of Trustor or expenses incurred by Trustee or Lender to enforce obligations of Trustor under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means United Mercantile Bank & Trust Company, N.A., its successors or assigns.

**Note.** The word "Note" means the Note dated May 19, 1989, **in the principal amount of $243,296.91** from Trustor to Lender, together with all renewals, extensions, modifications, refinancings, and substitutions for the Note. NOTICE TO TRUSTOR:  THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property owned by Trustor, now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the property, interests and rights described above in the "Conveyance and Grant" section.

**Related Documents.** The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, guaranties, security agreements, mortgages, deeds of trust, and all other documents, whether now or hereafter existing, executed in connection with Trustor's indebtedness to Lender.

**Rents.** The word "Rents" means all rents, revenues, income, issues, and profits from the Property.

**Trustee.** The word "Trustee" means Lincoln Title Company and any substitute or successor trustees.

Exhibit 12, Page 51

04/28/2013  12:10AM  951-600-9648                    ATTORNEY ABREU                                    PAGE  08/13

05-19-1989                          **DEED OF TRUST**                        181898
Loan No                             (Continued)                                                    **Page 2**

Trustor. The word "Trustor" means any and all persons and entities executing this Deed of Trust, including without limitation all Trustors named above.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (1) PAYMENT OF THE INDEBTEDNESS AND  (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF TRUSTOR UNDER THE NOTE AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note and this Deed of Trust.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Trustor may  (a) remain in possession and control of the Property,  (b) use, operate or manage the Property, and  (c) collect any Rents from the Property.

**Duty to Maintain.** Trustor shall maintain the Property in tenantable condition and promptly perform all repairs and maintenance necessary to preserve its value.

**Hazardous Substances.** The terms "hazardous waste," "hazardous substance," "disposal," "release," and "threatened release," as used in this Deed of Trust, shall have the same meanings as set forth in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 49 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or Federal laws, rules, or regulations adopted pursuant to any of the foregoing. Trustor represents and warrants to Lender that: (a) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any hazardous waste or substance by any person on, under, or about the Property. (b) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender, in writing, (i) any use, generation, manufacture, storage, treatment, disposal, release, or threatened release of any hazardous waste or substance by any prior owners or occupants of the Property or  (ii) any actual or threatened litigation or claims of any kind by any person relating to such matters. (c) Except as previously disclosed to and acknowledged by Lender in writing, (i) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of, or release any hazardous waste or substance on, under, or about the Property and (ii) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation those laws, regulations, and ordinances described above. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for hazardous waste. Trustor hereby  (a) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Specifically without limitation, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), soil, gravel or rock products without the prior written consent of Lender.

**Removal of Improvements.** Trustor shall not demolish or remove any improvements from the Real Property without the prior written consent of Lender. As a condition to the removal of any improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such improvements with improvements of at least equal value.

**Lender's Right to Enter.** Lender and its agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations of all governmental authorities applicable to the use or occupancy of the Property. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon nor leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may at its option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without the Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of real property or any right, title or interest therein; whether legal or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of real property interest. If any Trustor is a corporation or partnership, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock or partnership interests, as the case may be, of Trustor. However, this option shall not be exercised by Lender if exercise is prohibited by federal law or by California law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are a part of this Deed of Trust.

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due, except for the prior Indebtedness referred to below, and except as otherwise provided in this Deed of Trust.

**Right To Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to

04/28/2013  12:10AM  951-600-9648                    ATTORNEY ABREU                           PAGE  09/13

05-19-1989                                        DEED OF TRUST                         181898          Page 3
Loan No                                             (Continued)

pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $1,000.00. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Notwithstanding, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $500.00. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at its election, apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to prepay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Unexpired Insurance at Sale.** Any unexpired insurance shall inure to the benefit of, and pass to, the purchaser of the Property covered by this Deed of Trust at any trustee's sale or other sale held under the provisions of this Deed of Trust, or at any foreclosure sale of such Property.

**Compliance with Prior Indebtedness.** During the period in which any prior Indebtedness described below is in effect, compliance with the insurance provisions contained in the Instrument evidencing such prior Indebtedness shall constitute compliance with the insurance provisions under this Deed of Trust, to the extent compliance with the terms of this Deed of Trust would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Deed of Trust for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the prior Indebtedness.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (a) the name of the insurer; (b) the risks insured; (c) the amount of the policy; (d) the property insured, the then current replacement value of such property, and the manner of determining that value; and (e) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**EXPENDITURES BY LENDER.** If Trustor fails to comply with any provision of this Deed of Trust, including any obligation to maintain existing Indebtedness in good standing as required below, or if any action or proceeding is commenced that would materially affect Lender's interests in the Property, Lender on Trustor's behalf may, but shall not be required to, take any action that Lender deems appropriate. Any amount that Lender expends in so doing will bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses, at Lender's option, will (a) be payable on demand, (b) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (i) the term of any applicable insurance policy or (ii) the remaining term of the Note, or (c) be treated as a balloon payment which will be due and payable at the Note's maturity. This Deed of Trust also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of the default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust.

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as may be requested by it from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**EXISTING INDEBTEDNESS.** The following provisions concerning existing indebtedness are a part of this Deed of Trust:

**Existing Lien.** The lien of this Deed of Trust securing the Indebtedness may be secondary and inferior to the lien securing payment of an existing obligation to FEDERAL LAND BANK OF SACRAMENTO, A CORPORATION. The existing obligation has a current principal balance of approximately $209,000.00 and is in the original principal amount of $540,000.00. Trustor expressly covenants and agrees to pay, or see to the payment of, the existing Indebtedness and to prevent any default on the indebtedness, any default under the instruments evidencing such

04/28/2013  12:10AM  951-600-9648                    ATTORNEY ABREU                           PAGE  10/13

05-19-1989                    ～             DEED OF TRUST                ～     181898           Page 4
Loan No.                                      (Continued)

indebtedness, or any default under any security documents for the indebtedness.

**Default.** If the payment of any installment of principal or any interest on the existing Indebtedness is not made within the time required by the note evidencing such Indebtedness, or should a default occur under the instrument securing such Indebtedness and not be cured during any applicable grace period therein, then, at the option of Lender, the Indebtedness secured by this Deed of Trust shall become immediately due and payable, and this Deed of Trust shall be in default.

**No Modification.** Trustor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Deed of Trust by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Trustor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to proceedings in condemnation are a part of this Deed of Trust.

**Application of Net Proceeds.** If all or any part of the Property is condemned, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees necessarily paid or incurred by Trustor, Trustee, or Lender in connection with the condemnation.

**Proceedings.** If any proceeding in condemnation is filed, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to defend the action and obtain the award. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered, to Lender such instruments as may be requested by it from time to time to permit such participation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust.

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (a) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (b) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (c) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (d) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (a) pays the tax before it becomes delinquent, or (b) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust.

**Security Agreement.** This instrument shall constitute a security agreement to the extent any of the Property constitutes fixtures or other personal property, and Lender shall have all of the rights of a secured party under the California Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall assemble the Personal Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party), from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the California Uniform Commercial Code), are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances are a part of this Deed of Trust.

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (a) the obligations of Trustor under the Note, this Deed of Trust, and the Related Documents, and (b) the liens and security interests created by this Deed of Trust on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or agreed to the contrary by Lender in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Any reconveyance fee required by law shall be paid by Trustor, if permitted by applicable law.

**DEFAULT.** Each of the following, at the option of Lender shall constitute an Event of Default under this Deed of Trust:

**Default on Indebtedness.** Failure of Trustor to make any payment when due on the Indebtedness.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents. If such a failure is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured (and no Event of Default will have occurred) if Trustor, after receiving written notice

Exhibit 12, Page 54

05-19-1989                                   **DEED OF TRUST**                                          Page 5
Loan No.                                        (Continued)
                                               181898

from Lender demanding cure of such failure:  (a) cures the failure within fifteen (15) days; or  (b) if the cure requires more than fifteen (15) days,
immediately initiates steps sufficient to cure the failure and thereafter continues and completes all reasonable and necessary steps sufficient to
produce compliance as soon as reasonably practical.

**Breaches.** Any warranty, representation or statement made or furnished to Lender by or on behalf of Trustor under this Deed of Trust, the Note or
the Related Documents is, or at the time made or furnished was, false in any material respect.

**Insolvency.** The insolvency of Trustor, appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, the
commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor, or the dissolution or termination of Trustor's
existence as a going business (if Trustor is a business).  Except to the extent prohibited by federal law or California law, the death of Trustor (if
Trustor is an individual) also shall constitute an Event of Default under this Deed of Trust.

**Foreclosure, etc.** Commencement of foreclosure, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of
Trustor against any of the Property.  However, this subsection shall not apply in the event of a good faith dispute by Trustor as to the validity or
reasonableness of the claim which is the basis of the foreclosure, provided that Trustor gives Lender written notice of such claim and furnishes
reserves or a surety bond for the claim satisfactory to Lender.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied
within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to
Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or such Guarantor
dies or becomes incompetent.  Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the
obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure the Event of Default.

**Existing Indebtedness.** Default of Trustor under any prior obligation or under any instrument on the Property securing any prior obligation, or
commencement of any suit or other action to foreclose any existing lien on the Property.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Trustee or Lender, at its option, may
exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed
of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default
and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record.  Beneficiary also shall deposit with Trustee
this Deed of Trust, the Note, and all documents evidencing expenditures secured hereby.  After the lapse of such time as may then be required by
law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on
Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it
may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale.  Trustee may
postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may
postpone such sale by public announcement at the time fixed by the preceding postponement.  Trustee shall deliver to such purchaser its deed
conveying the Property so sold, but without any covenant or warranty, express or implied.  The recitals in such deed of any matters or facts shall
be conclusive proof of the truthfulness thereof.  Any person, including Trustor, Trustee or Beneficiary may purchase at such sale.  After deducting
all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the
proceeds of sale to payment of:  all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in
effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to
foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under
the California Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent
provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Trustor, to take possession of and manage the Property and collect the Rents,
including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness.  In furtherance of
this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender.  If the Rents are
collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof
in the name of Trustor and to negotiate the same and collect the proceeds.  Payments by tenants or other users to Lender in response to Lender's
demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed.  Lender may
exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to
protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the
proceeds, over and above the cost of the receivership, against the Indebtedness.  The receiver may serve without bond if permitted by law.
Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a
substantial amount.  Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise
becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of
the Property and shall, at Lender's option, either  (a) pay a reasonable rental for the use of the Property, or  (b) vacate the Property immediately
upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or by law.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after
which any private sale or other intended disposition of the Personal Property is to be made.  Reasonable notice shall mean notice given at least
five (5) days before the time of the sale or disposition.  Any sale of Personal Property may be made in conjunction with any sale of the Real
Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled.  In
exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by
separate sales.  Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Waiver; Election of Remedies.** A waiver by any party of a breach of a provision of this Deed of Trust shall not constitute a waiver of or prejudice
the party's rights otherwise to demand strict compliance with that provision or any other provision.  Election by Lender to pursue any remedy

05-19-1989                          DEED OF TRUST                    181898
Loan No                             (Continued)                                         Page 6

provided in this Deed of Trust, the Note, in any Related Document, or provided by law shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust after failure of Trustor to perform shall not affect Lender's right to declare a default and to exercise any of its remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and on any appeal. Whether or not any court action is involved, all reasonable expenses incurred by Lender which in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWER AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust.

**Power of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable state law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of RIVERSIDE County, California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**NOTICES TO TRUSTOR AND OTHER PARTIES.** Any notice under this Deed of Trust, including without limitation any notice of default and any notice of sale to Trustor, shall be in writing and shall be effective when actually delivered or, if mailed, shall be deemed effective when deposited in the United States mail first class, registered mail, postage prepaid, directed to the addresses shown at the top of page one (1). Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the top of the first page of this Deed of Trust. For notice purposes, Trustor agrees to keep Lender and Trustee informed at all times of Trustor's current address. Notwithstanding any other provisions of this Deed of Trust, the notice shall be as provided by section 2924b of the Civil Code of California.

**STATEMENT OF OBLIGATION.** Lender may collect a fee not to exceed $50 for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a statement of net cash profit received from the Property during Trustor's previous fiscal year in such detail as Lender shall require. "Net cash profit" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**Applicable Law.** This Deed of Trust has been delivered to Lender and accepted by Lender in the State of California. This Deed of Trust shall be governed by and construed in accordance with the laws of the State of California.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Deed of Trust in all other respects shall remain valid and enforceable.

**Successors and Assigns.** Subject to the limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

05-19-1989                                   **DEED OF TRUST**                    181898       Page 7
Loan No                                         (Continued)

EACH TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND EACH TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE NOTE SECURED BY THIS DEED OF TRUST.

TRUSTOR:

X _____
GARY CLAWSON

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _California_ )
                                    ) SS
COUNTY OF _Los Angeles_ )

```
OFFICIAL SEAL
CHARLENE W. VAYOS
NOTARY PUBLIC CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY
My Commission Expires Jan. 23, 1990
```

On this day before me, the undersigned Notary Public, personally appeared GARY CLAWSON, personally known to me or proved to me on the basis of satisfactory evidence to be the individual described in and who executed the Deed of Trust, and acknowledged that he or she signed the Deed of Trust as his or her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this _30th_ day of _May_ , 19_89_ .

By _Charlene H. Vayos_                    Residing at _Pasadena, Ca._

Notary Public in and for the State of _California_     My commission expires _1/23/90_

---

### (DO NOT RECORD)
## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____ , Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

Date: _____

Beneficiary: _____

By: _____

Its: _____

LASER PRO (tm) Ver. 3.09 (c) 1989 CFI Bankers Service Group, Inc. All rights reserved.

Exhibit 12, Page 57

# EXHIBIT "13"

**Recording Requested By**
First American Title Insurance Company

434414

RECORDING REQUESTED BY )
AND )
WHEN RECORDED MAIL TO: )
Group IV International, Inc. )
23421 S. Pointe Drive # 200 )
Laguna Hills, CA 92653 )
)
)
)

RECEIVED FOR RECORD
AT 8:00 O'CLOCK

DEC 2 9 1995

Recorded in Official Records
of Riverside County, California
Recorder
Fees $ ___

me
9
1

SPACE ABOVE THIS LINE
FOR RECORDER'S USE

## TRANSFER AND ASSIGNMENT OF NOTE AND DEED OF TRUST

For value received, the undersigned hereby grants, assigns, transfers and conveys, without warranty or recourse, to Group IV International, Inc., a California corporation, all beneficial interest held or owned by the undersigned in and to that certain deed of trust (the "Deed of Trust") dated May 19, 1989, executed by Gary Clawson, as Trustor, in which United Mercantile Bank & Trust Company, N.A. is named as Beneficiary and Lincoln Title Company as Trustee, and recorded June 2, 1989 as Instrument No. 181898, Official Records of Riverside County, California, together with that certain promissory note (the "Note") dated May 19, 1989 described or referred to in the Deed of Trust, the money due and to become due under the Note with interest, and all rights accrued or to accrue under the Note and/or the Deed of Trust.

Dated: _December 14_ , 1995.

ASSIGNOR:

Federal Deposit Insurance Corporation, as Receiver for United Mercantile Bank & Trust Company, N.A.

By: 
Name:
Title: FDIC Attorney-in-Fact

CA-F0229.0800/020100841/ORG/150763

EXH:

NOTARY ACKNOWLEDGMENT

STATE OF $\underline{\text{TEXAS}}$                )

COUNTY OF $\underline{\text{Dallas}}$            )

On $\underline{\text{December 14, 1995}}$ before me, the undersigned, a Notary Public in and for said State, personally appeared $\underline{\text{C. W. Willoughly}}$            , 1995, known to me (or proved on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS MY HAND AND OFFICIAL SEAL.

_____
Notary Public in and for said State

SHERRY DUNN
NOTARY PUBLIC
THE STATE OF TEXAS
COMMISSION EXPIRED
06-09-96

EXHIBIT $\underline{24}$ PAGE $\underline{2}$

# EXHIBIT "14"

RECORDING REQUESTED BY

```
DOC № 2000-374456
08/22/2000 04:00A Fee:8.00
        Page 1 of 1
Recorded in Official Records
    County of Riverside
      Gary L. Orso
Assessor, County Clerk & Recorder
```

AND WHEN RECORDED MAIL TO

Glenn E. Farmer
Group IV, International
23421 S. Pointe Dr., Suite 200
Laguna Hills, CA  92653

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned hereby grants, assigns and transfers to

***** GLENN E. FARMER dba GROUP IV, INTERNATIONAL *****

all beneficial interest under that certain Deed of Trust dated  May 19, 1989
executed by GARY CLAWSON, as Trustor

to  LINCOLN TITLE COMPANY, as Trustee

and recorded as Instrument No. 181898  on  June 2, 1989 , of Official Records in the County
Recorders office of  Riverside County, describing land therein as:


Together with the note or notes therein described or referred to, the money due and to become due
therein with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated:  September 12, 1990         GROUP IV, INTERNATIONAL INC., a California corporation

                                   BY: Glenn E. Farmer, President

STATE OF CALIFORNIA
COUNTY OF ORANGE

On  9/13/00              , before me, the undersigned, a Notary Public in and for said County and
State, personally appeared  GLENN E. FARMER
personally known to me or proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument, the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

                                   (NOTARY STAMP BELOW)

```
T. HUGHES
Comm. # 1173483
NOTARY PUBLIC-CALIFORNIA
Orange County
My Comm. Expires Feb. 14, 2007
```

# EXHIBIT "15"

**Recording Requested By**
**First American Title Company**

RECORDING REQUESTED BY



DOC # 2002-312602
06/07/2002 08:00A Fee:15.00
Page 1 of 3
Recorded in Official Records
County of Riverside
Gary L. Orso
Assessor, County Clerk & Recorder

AND WHEN RECORDED MAIL TO

KID GLOVES, INC.
c/o 29840 Mira Loma Dr.
Temecula, CA 92592
Attn: Kelly Abreau

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|------|------|-----|------|-------|-----|-------|
|   |   |   |      |      |     |      |       |     |       |
| A | R | L |      |      |     | COPY | LONG  | REFUND | NCHG | EXAM |

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned hereby grants, assigns and transfers to
KID GLOVES, INC., a Nevada Corporation

all beneficial interest under that certain Deed of Trust dated  May 19, 1989
executed by  Gary Clawson

to  Lincoln Title Company

and recorded as Instrument No. 181898  on  June 2, 1989  , of Official Records in the County
Recorders office of  Riverside County, describing land therein as:

> Parcel 3 of Parcel Map No. 14860, in the unincorporated area of Riverside County, as
> shown by Map on file in Book 109, pages 54 through 58 inclusive of Parcel Maps,
> records of Riverside County, California. per legal description which is attached hereto
> and made a part hereof.

Together with the note or notes therein described or referred to, the money due and to become due
thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated: May 22, 2002

BY:  GLENN E. FARMER

STATE OF CALIFORNIA
COUNTY OF ORANGE

On  5/22/02  , before me, the undersigned, a Notary Public in and for said County and
State, personally appeared  Glenn E. Farmer
personally known to me or ~~proved to me on the basis of satisfactory evidence~~ to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument, the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

(NOTARY STAMP BELOW)



PATRICIA MARTINDALE
Commission # 1214716
Notary Public - California
Orange County
My Comm. Expires Apr 16, 2003

Exhibit 15, Page 60

Under the provisions of Government Code 27361.7, I certify under penalty of
perjury that the notary seal on the document to which this statement is attached
reads as follows:

Name of notary: Patricia Martindale

Commission #: 1211011(0

Place of execution: Orange

Date commission expires: April 1(0, 2003

Date: JUN 0 7 2002     Signature: Lori O'Keefe

2002-312682
06/07/2002 08:00A
2 of 3

# EXHIBIT 'A'

Date: **May 09, 2002**                                    File No.:  **0625--536319 ( )**

## PARCEL A:

PARCEL 3 OF PARCEL MAP NO. 14860, AS SHOWN BY PARCEL MAP ON FILE IN BOOK 109 PAGES 54 THROUGH 58 INCLUSIVE OF PARCEL MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA;

EXCEPTING THEREFROM THAT PORTION DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST EASTERLY SOUTHEAST CORNER OF SAID PARCEL 3, SAID POINT BEING ON THE EASTERLY LINE OF SECTION 18, TOWNSHIP 8 SOUTH, RANGE 1 EAST, SAN BERNARDINO BASE AND MERIDIAN, ACCORDING TO UNITED STATES GOVERNMENT SURVEY THEREOF;
THENCE ALONG THE SOUTHERLY LINE OF SAID PARCEL 3, NORTH 89 DEGREES 35' 37" WEST 319.90 FEET TO THE EASTERLY LINE OF LETTERED LOT "A" OF SAID PARCEL MAP NO. 14860, (ALSO KNOWN AS SAGE ROAD);
THENCE ALONG SAID EASTERLY LINE, NORTH 13 DEGREES 38' 09" WEST 185.45 FEET TO THE BEGINNING OF A TANGENT 2145.00 FOOT RADIUS CURVE CONCAVE EASTERLY;
THENCE NORTHERLY ALONG THE ARC OF SAID CURVE, THROUGH A CENTRAL ANGLE OF 01 DEGREES 53' 51" A DISTANCE OF 71.04 FEET;
THENCE NONTANGENT TO SAID CURVE, SOUTH 89 DEGREES 35' 37" EAST 378.61 FEET TO THE MOST EASTERLY LINE OF SAID PARCEL 3;
THENCE ALONG SAID EASTERLY LINE, SOUTH 0 DEGREES 08' 32" EAST 249.11 FEET TO THE POINT OF BEGINNING;

ALSO EXCEPTING THEREFROM THAT PORTION AS DESCRIBED IN THAT CERTAIN FINAL ORDER OF CONDEMNATION RECORDED APRIL 14, 1992 AS INSTRUMENT NO. 131556 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

## PARCEL B:

THE WEST HALF OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 8, TOWNSHIP 8 SOUTH, RANGE 1 EAST, SAN BERNARDINO BASE AND MERIDIAN, ACCORDING TO UNITED STATES GOVERNMENT SURVEY THEREOF.
A.P.N. 581-070-015-7

Initials: _____

Page  1 of 1



2002-312602
06/07/2002 08:00A
3 of 3

Exhibit 15, Page 62

**EXHIBIT "16"**

F I L E D
Clerk of the Superior Court

FEB 2 8 2012

By A. ANZALONE  Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| VAIL LAKE RANCHO CALIFORNIA, LLC., a California Limited Liability Company, | Case No.    37-2009-00094633-CU-FR-CTL |
| Plaintiff, | Assigned for all purposes to Hon. Lorna Alksne, Dept. 64 |
| vs. | Assigned for trial to Hon. Frederic L. Link, Dept. 26 |
| GARY CLAWSON; KELLY ABREU; JOHN MULDER; SUNDANCE INTERNATIONAL, LP, a Limited Partnership; KID GLOVES, INC., a Nevada Corporation; ECSTATIC HOLDINGS, INC., a Nevada Corporation, VAIL CUSTODIAL SERVICES, L.P., a Limited Partnership and ATTORNEYS TRUSTEE SERVICES, a California Corporation, and DOES 1 through 50, Inclusive, | **JUDGMENT** |
| Defendants. | |

This matter came regularly for trial on January 9, 2011 at 1:30 p.m. in Department 26 of the above-entitled court with the Hon. Frederic L. Link presiding.  Having considered the evidence submitted and arguments of counsel,

- 1 -
JUDGMENT

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1.    Judgment is entered in favor of Defendant Kid Gloves, Inc. on Plaintiff's First Cause of Action "to Cancel notes and Trust Deeds," as that cause of action is barred by California Civil Code Section 3439.09(c). Kid Gloves was the only Defendant named in Plaintiff's First Cause of Action that remained in the case at trial. The first cause of action is barred because it is based on the factual allegations that the 2002 conveyances of the notes and trust deeds at issue in this case were fraudulent (including that the conveyances were done without consideration, and/or by defendants that are alter egos of each other), and the alleged fraudulent conveyance occurred more than seven years before this lawsuit was filed.

2.    Judgment is entered in favor of Defendants Kelly Abreu and Kid Gloves, Inc. on Plaintiff's Second Cause of Action for "Wrongful Foreclosure." Such Cause of Action sought two remedies: (1) cancellation of the trust deeds; and (2) actual damages and exemplary damages. To the extent this Cause of Action sought to cancel the trust deeds at issue, it is also barred by Section 3439.09(c), for the same reasons that Plaintiff's First Cause of Action is barred. As to actual and exemplary damages, Plaintiff waived its right to seek such damages on the first day of trial.

3.    As to Plaintiff's Third Cause of Action, Judgment is entered as follows:

    a.    The amount due on the December 8, 1982 promissory note ("Note 1") as of January 19, 2012, including principal, interest, and property taxes paid, is $426,772.50▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄. Interest shall accrue on this amount at the rate of fourteen percent per annum from and after January 20, 2012.

    b.    The amount due on the May 19, 1989 note ("Note 2") as of January 19, 2012, including principal and interest, is $331,227.78, ▄▄▄▄▄▄▄▄▄▄▄▄▄▄ ▄▄▄▄▄▄▄▄▄. Interest shall accrue on this amount at the rate of fourteen percent per annum from and after January 20, 2012.

    c.    Defendant Kid Gloves, Inc. is free to foreclose on Note 1, which is secured by a trust deed encumbering property owned solely by Plaintiff Vail Lake Rancho

California and its counsel (the law office of Phillips, Haskett & Ingwalson), at any time, without restriction.

d. Defendant Kid Gloves, Inc. is free to foreclose on Note 2, which is secured by a trust deed encumbering property owned by Vail Custodial, L.P., as well as by property owned by Plaintiff Vail Lake Rancho California and its counsel (the law office of Phillips, Haskett & Ingwalson), at any time.   In any such foreclosure, Defendant Kid Gloves, Inc. must first foreclose on the property identified by Assessor's Parcel No. 917-050-009, which is owned by Vail Custodial, L.P., prior to foreclosing on any of the remaining parcels securing Note 2.



The Court makes a finding that there is no prevailing party.

The Clerk is directed and ordered to enter this Judgment.

Dated: _____        FREDERIC L. LINK

JUDGE OF THE SUPERIOR COURT

- 3 -
JUDGMENT

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**<br>Central<br>330 West Broadway<br>San Diego, CA 92101 | **RECEIVED**<br><br>MAR 0 1 2012 |

| | |
|---|---|
| **SHORT TITLE:** Vail Lake Rancho California LLC vs. Clawson | CALL & JENSEN |

| | |
|---|---|
| **CLERK'S CERTIFICATE OF SERVICE BY MAIL** | **CASE NUMBER:**<br>37-2009-00094633-CU-FR-CTL |

I certify that I am not a party to this cause. I certify that a true copy of the Judgment dated 02/28/12 was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The mailing and this certification occurred at San Diego, California, on 02/29/2012

Clerk of the Court, by: _____, Deputy

KELLY ABREU
P.O. BOX 644
MURRIETA, CA 92552

MARK L EISENHUT
610 NEWPORT CENTER DR STE 700
NEWPORT BEACH, CA 92660

FREDERICK C PHILLIPS
PHILLIPS HASKETT & INGEWALSON, APC
701 B STREET STE 1190
SAN DIEGO, CA 92101

☐ Additional names and address attached.

---

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**        Page 1

# EXHIBIT "17"



# Chicago Title Company

560 East Hospitality Lane
San Bernardino, CA 92408
(800) 319-9410

### TRUSTEE'S SALE GUARANTEE

SUBJECT TO THE EXCLUSIONS FROM COVERAGE AND THE CONDITIONS ATTACHED HERETO AND
MADE A PART OF THIS GUARANTEE,

**Chicago Title Insurance Company**
a corporation, herein called the Company

### GUARANTEES
the Assured named in Schedule A of this Guarantee

against loss or damage not exceeding the liability amount stated in Schedule A sustained by the Assured by reason
of any incorrectness in the assurances set forth in Paragraph 3 of Schedule A.

Countersigned:

By: _____
Authorized Signature

EXHIBIT A

CLTA Guarantee Form No. 22 (Revised 03-03-2011)

Page 1

Order No.: TS3358-013-GC1

## SCHEDULE B
(continued)

4.     An easement for the purpose shown below and rights incidental thereto as set forth in a document. (No representation is made as to the present ownership of said easement)

| | |
|---|---|
| In Favor of: | State of California |
| Purpose: | Highway purposes |
| Recorded: | November 29, 1955 in Book 1826, Page 343, of Official Records |
| Affects: | a portion of Parcel 1 |

5.     An easement for the purpose shown below and rights incidental thereto as set forth in a document. (No representation is made as to the present ownership of said easement)

| | |
|---|---|
| In Favor of: | State of California |
| Purpose: | Highway purposes |
| Recorded: | September 15, 1961 as Instrument No. 79363, of Official Records |
| Affects: | a portion of Parcels 1 and 2 |

6.     An easement for the purpose shown below and rights incidental thereto as set forth in a document. (No representation is made as to the present ownership of said easement)

| | |
|---|---|
| In Favor of: | Southern California Edison Company |
| Purpose: | Public utilities |
| Recorded: | August 7, 1964 as Instrument No. 97284, of Official Records |
| Affects: | a portion of Parcel 1 |

7.     A Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby

| | |
|---|---|
| Amount: | $540,000.00 |
| Dated: | December 8, 1982 |
| Trustor: | Gary Clawson and Jean Clawson, his wife |
| Trustee: | Federal Land Bank of Sacramento, a corporation |
| Beneficiary: | Federal Land Bank of Sacramento, a corporation |
| Recorded: | December 15, 1982 as Instrument No. 216558, of Official Records. |
| | |
| Affects: | Parcels 1 and 2 |

An agreement entitled "Subordination" recorded January 19, 1995 as Instrument No. 016751, of Official Records which states that this instrument was subordinated to the documents or interests shown in Item Nos. 11 and 12 of this guarantee.

The beneficial interest thereunder has been assigned, by mesne assignments, to:

| | |
|---|---|
| Assignee: | Kid Gloves, Inc., a Nevada corporation |
| Recorded: | June 7, 2002 as Instrument No. 2002-312601, of Official Records |

Order No.: TS3358-013-GC1

## SCHEDULE B
### (continued)

20. An abstract of judgment for the amount shown below and any other amounts due:

| | |
|---|---|
| Amount: | $183,932.19 |
| Debtor: | Vail Lake-Rancho California, LLC, a California limited liability company; William P. Johnson, et al. |
| Creditor: | Craig Johnson & Associates, a professional corporation doing business as Tenner Johnson |
| Case No.: | RIC 10021027 |
| Recorded: | April 24, 2012 as Instrument No. 2012-0185104, of Official Records |

Reference is hereby made to said document for full particulars.

21. Any bankruptcy proceeding that is not disclosed by the Acts that would afford notice as to said land, pursuant to Title 11 U.S.C. 549 (c) of the Bankruptcy Reform Act of 1978, as amended.

Exhibit 17, Page 69

Order No.: TS3358-013-GC1

A portion of said land was the subject of a condemnation, so the land currently covered by the subject Deed of Trust is described below.

PARCEL 1:

PARCEL 3 OF PARCEL MAP NO. 14860, AS SHOWN BY MAP ON FILE IN BOOK 109 PAGES 54 THROUGH 58 OF PARCEL MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA;

EXCEPTING THEREFROM THAT PORTION DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHEASTERLY CORNER OF SAID PARCEL 3;
THENCE ALONG THE SOUTHERLY LINE OF PARCEL 3, NORTH 89° 35' 37" WEST, 319.90 FEET TO THE EASTERLY SIDE LINE OF SAGE ROAD SHOWN ALSO AS LOT "A" ON SAID MAP;
THENCE ALONG SAID EASTERLY LINE NORTH 13° 38' 09" WEST, 185.45 FEET TO THE BEGINNING OF A CURVE, CONCAVE EASTERLY AND HAVING A RADIUS OF 2,145.00 FEET;
THENCE NORTHERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 1° 53' 51" AND AN ARC LENGTH OF 71.04 FEET, A RADIAL TO SAID POINT BEARS SOUTH 78° 15' 42" WEST;
THENCE LEAVING SAID SIDE LINE, SOUTH 89° 35' 37" EAST, 378.61 FEET TO A POINT ON THE EASTERLY LINE OF SAID PARCEL 3, SAID POINT LIES NORTH 00° 08' 32" WEST, 249.11 FEET FROM THE POINT OF BEGINNING;
THENCE SOUTH 00° 08' 32" EAST, 249.11 FEET TO THE POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM THAT PORTION OF SAID LAND, AS SHOWN IN FINAL ORDER OF CONDEMNATION RECORDED APRIL 14, 1992 AS INSTRUMENT NO. 131556, OFFICIAL RECORDS, AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEING A PORTION OF SECTION 7, TOWNSHIP 8 SOUTH, RANGE 1 EAST, S.B.B.& M., AS SHOWN ON PARCEL MAP BOOK 109, PAGES 54 TO 58, INCLUSIVE, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTHEAST CORNER OF SAID SECTION;

THENCE NORTH 01° 42' 29" WEST, 913.64 FEET ALONG THE EASTERLY LINE OF SAID SECTION TO THE INTERSECTION WITH THE NORTHWESTERLY RIGHT OF WAY OF SAGE ROAD, SAID POINT BEING THE POINT OF BEGINNING;

THENCE SOUTH 28° 42' 43" WEST, 310.00 FEET ALONG THE NORTHWESTERLY RIGHT OF WAY OF SAGE ROAD;
THENCE NORTH 61° 18' 17" WEST, 100.00 FEET;
THENCE NORTH 28° 41' 43" EAST, 145.00 FEET;
THENCE NORTH 61° 18' 17" WEST, 140.00 FEET;
THENCE NORTH 28° 41' 43" EAST, 80.00 FEET;
THENCE SOUTH 80° 48' 26" EAST, 254.61 FEET TO THE POINT OF BEGINNING.

PARCEL 2:

THE WEST HALF OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 8, IN TOWNSHIP 8 SOUTH, RANGE 1 EAST, SAN BERNARDINO BASE AND MERIDIAN.

END OF LEGAL DESCRIPTION

CLTA Guarantee Form No. 22 (Revised 03-03)

EXHIBIT A

# EXHIBIT "18"

**From:** Kelly Abreu [mailto:kcabreu@aol.com]
**Sent:** Friday, December 21, 2012 7:07 PM
**To:** Fred Phillips
**Subject:** Re: Sundance

The amount I have is approximately $493,474.71. This includes the trustee fees.

Sent from my iPhone

On Dec 21, 2012, at 4:55 PM, Fred Phillips <fcp@philaw.com> wrote:

> Kelly,
> I need the pay off number asap regarding the 1982 note and trust deed on the properties on which the trustees sale is scheduled for December 27, 2012 at 9 am, Chicago Tile trustee Sale No. 3358-38. I think by law the trustee is required to give me the pay off, but when I called her she refused and said to call you. In order to deliver these funds in a timely fashion, we obviously need this amount.
> You may call me on my cel phone at 619-922-9198 if you need to discuss, but I urgently need this number.
> Sincerely,
> Fred Phillips

EXHIBIT  B

Exhibit 18, Page 71

# EXHIBIT "19"

Subj:     **RE: Sundance**
Date:     12/26/2012 10:48:28 A.M. Pacific Standard Time
From:     fcp@phlaw.com
To:       kcabreu@aol.com

Kelly,
    I am trying to get this paid off but I am not sure I will have the cashier's check tomorrow morning because there was a funding delay over the holidays. If I don't have it there will be no choice but to file a chapter 11 bankruptcy which will involve a lot of costs and delays. Is it possible to continue the sale date for a week to allow the necessary time to make sure the cashier's check is in hand?
Fred

EXHIBIT C

# EXHIBIT "20"

1-19-12VailLake

10          MR. FRED PHILLIPS: WELL, THEY ARE

11  ON THERE.

12          THE COURT: WHAT, YOU AND YOUR 18

13  PERCENT?

14          MR. FRED PHILLIPS: I AM SORRY.

15          THE COURT: YOU AND YOUR 18 PERCENT.

16          MR. FRED PHILLIPS: MY FIRM HAS A

17  LIEN, KB HOME HAS A LIEN AND DOUGLAS HAS A

18  LIEN FOR OVER A MILLION AND A HALF DOLLARS.

19          THE COURT: OKAY.

20          MR. FRED PHILLIPS: THEY ARE LIENS

21  ON THE PROPERTY, AND THAT'S WHAT THE STATUTE

22  SAYS.  AND -- AND AGAIN, IN TERMS OF EQUITY,

23  IT BASICALLY, IF THE COURT DOES NOT ORDER --

24          THE COURT: AREN'T THEY SECOND,

25  THIRD, FOURTH, FIFTH IN TIME?

26          MR. FRED PHILLIPS: YES.

27          THE COURT: SO DOESN'T NO. 1 GET THE

28  MONEY FIRST?

225

1          MR. FRED PHILLIPS: YES, YES.  BUT

2  THAT'S WHAT MARSHALING SAYS.  MARSHALING

3  DEALS ONLY WITH SUBORDINATE LIENS.

4          THE COURT: OKAY.

5          MR. FRED PHILLIPS: THE SUBORDINATE

6  LIEN HOLDERS, THAT'S THE CASE FOR MARSHALING.

7          THE COURT: SO AS FAR AS THE

8  FORFEITURE IS CONCERNED, YOU GO FORWARD, AND

Page 235

EXHIBIT D

# EXHIBIT "21"

1  THOMAS C. MUNDELL, ESQ. (SBN 99081)
   MUNDELL ODLUM & HAWS LLP
2  650 East Hospitality Lane, Suite 470
   San Bernardino, California 92408
3  Telephone:  (909) 890-9500
   Facsimile:  (909) 890-9580
4  Email: Tmundell@mohlaw.com

5  GREGORY M. SALVATO, ESQ. (SBN 126285)
   JOSEPH BOUFADEL, ESQ.  (SBN 267312)
6  SALVATO LAW OFFICES
   Wells Fargo Center
7  355 South Grand Avenue, Suite 2450
   Los Angeles, California  90071-9500
8  Telephone:    (213) 484-8400
   Facsimile:    (213) 402-3778
9  Email:  Gsalvato@Salvatolawoffices.com

10  Attorneys for Creditor
    CAMBRIDGE FINANCIAL OF CALIFORNIA, LLC
11

12              **UNITED STATES BANKRUPTCY COURT**

13             **SOUTHERN DISTRICT OF CALIFORNIA**

14                        **SAN DIEGO**

15

16  In re:                              Case No.  12-bk-16684-LA11

17  VAIL LAKE RANCHO CALIFORNIA,
    LLC,                                Chapter 11 - Involuntary
18

19              Debtor.                 **Notice of Objection to Involuntary
                                        Petition and Intent to File Motion to
20                                      Dismiss [FRBP 9014]**

21

22                                      Date:    Hearing to be set
                                        Time:    TBD
23                                      Place:   Courtroom 2  (Judge Adler)
                                                 325 West "F" Street
24                                               San Diego, CA 92101-6991

25

26  //

27  //

28  //

SALVATO LAW
OFFICES

1  **TO THE ALLEGED DEBTOR AND ALL PETITIONING CREDITORS AND**

2  **THEIR ATTORNEYS OF RECORD, IF ANY:**

3      **PLEASE TAKE NOTICE** that creditor CAMBRIDGE FINANCIAL OF

4  CALIFORNIA, LLC ("Cambridge Financial"), a creditor of the alleged debtor Vail Lake

5  Rancho California, LLC ("Debtor") holding both secured and unsecured claims, hereby

6  objects to the collusive involuntary filing by Petitioning Creditors Richard Crowell,

7  Thomas Tahara, and Wayne Gregory, filed on December 26, 2012, and gives notice of its

8  intent to file a Motion to Dismiss the bankruptcy case or seek other appropriate relief.

9      **PLEASE TAKE NOTICE** that the filing of the Involuntary Petition and this

10  Objection thereto initiates a contested matter under Federal Rule of Bankruptcy Procedure

11  9014.

12      **PLEASE TAKE FURTHER NOTICE** that the grounds for this Objection and the

13  intended Motion to Dismiss are that the involuntary petition is a collusive and bad faith

14  filing orchestrated by the Debtor and Debtor's counsel to attempt to avoid the effect of an

15  injunction issued by the State Court in the litigation entitled, *Cambridge Financial of*

16  *California, LLC v. William P. Johnson, et al.,* Case No. RIC 1115973 in the Superior

17  Court for the State of California, Riverside County, a copy of which is attached hereto as

18  Exhibit 1. The state court injunction specifically prohibited the Debtor and its constituent

19  members from filing a bankruptcy proceeding for or on behalf of the Debtor, based upon

20  provisions in the Debtor's operating agreement requiring unanimous consent. The Debtor

21  has violated these provisions in soliciting putative creditors to file the instant involuntary

22  proceeding to avoid the effect of the state court preliminary injunction.

23      These and other grounds supporting the Objection will be set forth in subsequent

24  filings following discovery.

25  //

26  //

27  //

28  //

SALVATO LAW
OFFICES

Notice of Objection to Involuntary Petition     - 2 -     In re Vail Lake Rancho California, LLC, Debtor
Case No. 12-bk-16684-LA11

Exhibit 21, Page 74

1     **WHEREFORE**, Cambridge Financial hereby requests that the Court deny the

2   pending Involuntary Petition and dismiss the bankruptcy case.

3

4   Dated:  January 18, 2013                    MUNDELL ODLUM & HAWS LLP

5                                              and

6                                              SALVATO LAW OFFICES

7                                                  */s/ Gregory M. Salvato*

8                                              By: _____

9                                                   Gregory M. Salvato, Esq.

10                                             Attorneys for Creditor
                                               CAMBRIDGE FINANCIAL OF
11                                             CALIFORNIA, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SALVATO LAW
OFFICES

---

Notice of Objection to Involuntary Petition          - 3 -          In re Vail Lake Rancho California, LLC, Debtor
                                                                    Case No. 12-bk-16684-LA11

# EXHIBIT 1

# EXHIBIT 1

DEC 0 5 2012

1 Gregson M. Perry State Bar No. 123212
Law Offices of Gregson M. Perry
2 18345 Ventura Blvd., Suite 507
Tarzana, CA 91356
3 Telephone: (818) 776-0079
Facsimile: (818) 348-0359
4 E-mail: gperrylaw@prodigy.net

5 Martin A. Cervantes State Bar No. 87487
Law Offices of Martin A. Cervantes
6 1706 Plum Lane, Suite 101
Redlands, CA 92374
7 Telephone: (909) 307-9590
Facsimile: (909) 307-9580
8 E-mail: mac@cervanteslaw.org

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

DEC 05 2012

L. Villanueva

REB

DEC 11 2012

R

9 Attorneys for Plaintiff
Angela Chen

10

11             SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                          COUNTY OF RIVERSIDE

13                            WESTERN DIVISION

14 ANGELA CHEN, an individual,            )  Case No. RIC 1210424
                                          )
15              Plaintiff,                 )  **NOTICE OF RULING**
                                          )
16                                         )
         v.                                )
17                                         )  **CMC Date: 02/13/2013**
   SHINING CITY, INC., a Wyoming           )
18 corporation; VAIL LAKE – RANCHO         )  **Trial Date: None set**
   CALIFORNIA, LLC, a California           )
19 limited liability company; WILLIAM P.   )
   JOHNSON, an individual; and DOES        )  **Time: 9:00 a.m.**
20 1-10, inclusive,                        )  **Date: 11/14/12**
                                          )  **Dept: 12**
21              Defendant.                 )  **Judge: Barkley**
                                          )
22                                         )

23       TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD AND TO ALL

24 PERSONS ACTING IN CONCERT THEREWITH:

25       PLEASE TAKE NOTICE THAT on November 28, 2012, the court issued its

26 minute order granting plaintiff's application for a preliminary injunction enjoining

27 defendants VLRC, William P. Johnson and Shining City, Inc. from (1) conveying or

28 transferring any of VLRC's property without plaintiff's prior written consent, (2)

                                          1

1 | filing for bankruptcy on behalf of VLRC without plaintiff's prior written consent, or

2 | (3) settling, compromising, or releasing any material agreements to which VLRC is a

3 | party without plaintiff's prior written consent.  This injunction is binding upon

4 | defendants and upon all persons who undertake to act in concert with or on behalf of

5 | defendants who have notice of this injunction.

6 |      PLEASE TAKE FURTHER NOTICE THAT plaintiff has satisfied the bond

7 | requirement set forth in the court's minute order by depositing $10,000 in cash with

8 | the clerk of the Riverside Superior Court.

9 |

10 | Dated: December 3, 2012                GREGSON M. PERRY
                                           LAW OFFICES OF GREGSON PERRY

11 |

12 |                                        MARTIN A. CERVANTES
                                           LAW OFFICES OF MARTIN CERVANTES

13 |

14 |

15 |                              By

16 |                                        Martin A. Cervantes
                                           Attorneys for Plaintiff Angela Chen

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

**PROOF OF SERVICE**

STATE OF CALIFORNIA )
)ss.
COUNTY OF SAN BERNARDINO )

I, Glenda R. Kirkley, say:

I am a citizen of the United States and employed in the County of San Bernardino. I am over the age of eighteen years and not a party to the within action. My business address is 1706 Plum Lane, Suite 101, Redlands, California 92374.

On **December 3, 2012** I served the foregoing document described as: **Notice of Ruling**, in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

**PLEASE SEE ATTACHED MAILING LIST**

X_    **BY U.S. MAIL** I caused such envelope to be deposited in the mail, with postage thereon fully prepaid, at Redlands, California [I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one (1) day after the date of deposit for mailing in the affidavit.]

___    **BY PERSONAL SERVICE** I personally delivered such envelope to the offices of the addressee.

___    **BY FEDERAL EXPRESS MAIL** I personally delivered such envelope on ***, 2012 to a Federal Express drop box or office in Redlands, California, marked for delivery on **, 2012.

___    **BY TELECOPIER** I telecopied such document to the addressee at the telecopier number listed for each addressee.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct and that this declaration was executed on **December 3, 2012**, at Redlands, California.

GLENDA R. KIRKLEY

1

**PROOF OF SERVICE**

1

## PROOF OF SERVICE MAILING LIST

2  Attorney for Defendants,

3  FREDERICK C. PHILLIPS, ESQ.
   PHILLIPS, HASKETT & INGWALSON
4  701 "B" Street, Suite 1190
   San Diego, CA  92101
5
   T:  (619) 231-3737
6  F:  (619) 233-1223

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**PROOF OF SERVICE**

# RIVERSIDE SUPERIOR COURT
### PUBLIC ACCESS

## Minute Order

| Case Name: CHEN VS. SHINING CITY INC | |
|---|---|
| RIVERSIDE CIVIL | Injunctive Relief |
| **Case Number:** RIC1210424 | **File Date:** 7/10/2012 |
| **Action Date:** 11/28/2012 | **Action Time:** 8:00 AM | **Department:** 12 |
| **Action Description:** Ruling on Matter Submitted 11/14/12 RE: Preliminary Injunction | |

Honorable Commissioner Paulette Durand-Barkley, Presiding

Clerk: L. Howell

Court Reporter: None

Court subsequently rules on matter taken under submission on 11/28/12.

Preliminary Injunction granted.

The Court subsequently rules on Plaintiff's Application for Preliminary Injunction,

submitted on November 14, 2012, as follows: Preliminary Injunction is

granted. Plaintiff has provided sufficient evidence to support the Preliminary Injunction.

Further, the evidence indicates defendant Shining City, Inc. is a dissolved Wyoming Corporation,

and therefore it lacks the capacity to defend until its status is revived. Bond is

set in the sum of $10,000.00

Hearing held: Pre-disposition hearing.

Clerk's Certificate of Mailing re: ruling on matter submitted 11/14/12

Notice sent to LAW OFFICES OF GREGSON M PERRY on 11/28/12

Notice sent to MARTIN A. CERVANTES ESQ on 11/28/12

PRINT MINUTE ORDER

Print Minute Order

### PROOF OF SERVICE

I certify that:

I am employed in the County of Los Angeles, California, and I am over the age of eighteen years of age and not a party to the matter concerning which service of process was made. My business address is 355 South Grand Avenue, Suite 2450, Los Angeles, California 90071.

On **January 22, 2013,** I served the following document: **Notice of Objection to Involuntary Petition and Intent to File Motion to Dismiss [FRBP 9014],**

1.     By electronic filing, on the persons who are currently on the list to receive e-mail notice /service for this Bankruptcy Proceeding pursuant to the **Mailing Information for Case 12-bk-16684-LA11,** which constitutes service by the Clerk's transmission of the Notification of Electronic Filing pursuant to the Local Rules;

2.     On the following persons by placing a true copy thereof enclosed in a sealed envelope with first class postage thereon fully prepaid in the United States mail in Los Angeles, California, addressed as follows:

Honorable Louise DeCarl Adler
U.S. Bankruptcy Court
325 West F Street, Room 118
San Diego, CA 92101

<u>Counsel for Alleged Debtor</u>
Frederick C. Phillips, Esq.
Phillips, Haskett & Ingwalson, A.P.C.
701 "B" Street, Suite 1190
San Diego, CA 92101-3540

<u>Petitioning Creditor</u>
Thomas Tahara
PO Box 1674
Solana Beach, CA 92075

<u>Petitioning Creditor</u>
Richard Crowell
427 Fern Leaf Way
Corona del Mar, CA 92625

<u>Petitioning Creditor</u>
Wayne Gregory
825-A8 South Waukegan Road
Waukegan, IL 60045

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  January 22, 2013      By:     _/s/ Joseph Boufadel_

                                                     Joseph Boufadel

SALVATO LAW
OFFICES

- 1 -
PROOF OF SERVICE

# EXHIBIT "22"



**Riverside County, California**
## Office of the Treasurer-Tax Collector

Home     Search     Last Search Results     Payment List     FAQ     Contact Us     Property Tax Portal

### Property Tax Payments - Search Results

Listed below are all taxes related to the assessment number you entered that are due at this time. If you entered a supplemental number and it is not listed below, it may be included in the Secured Prior Year Assessment or already paid.

To make a payment, select an option in the Payment List column.

For Secured and Supplemental property taxes the first installment must be paid on the Payment List before a second installment can be added.

Secured Assessments

| View | Assessment # | Installment | Due Date | Status | Amount | Payment List |
|------|-------------|-------------|----------|--------|--------|--------------|
| View Tax Info | 581070016-8 | 1st | 12-10-2012 | Due | $3,420.82 | Add To List |
| | | 2nd | 04-10-2013 | Due | $3,458.32 | Add Both |

Secured Prior Year Assessments

| View | Assessment # | Status | Amount | Payment List |
|------|-------------|--------|--------|--------------|
| Payment Options | 581070016-8 | Due | $25,758.16 | Remove |

Proceed to Payment List



**Riverside County, California**
# Office of the Treasurer-Tax Collector

Home        Search        Last Search Results        Payment List        FAQ        Contact Us        Property Tax Portal

## Property Tax Payments - Search Results

Listed below are all taxes related to the assessment number you entered that are due at this time. If you entered a supplemental number and it is not listed below, it may be included in the Secured Prior Year Assessment or already paid.

To make a payment, select an option in the Payment List column.

For Secured and Supplemental property taxes the first installment must be paid on the Payment List before a second installment can be added.

### Secured Assessments

| View | Assessment # | Installment | Due Date | Status | Amount | Payment List |
|------|-------------|-------------|----------|--------|--------|--------------|
| View Tax Info | 581120005-2 | 1st | 12-10-2012 | Due | $256.69 | Add To List |
| | | 2nd | 04-10-2013 | Due | $294.19 | Add Both |

### Secured Prior Year Assessments

| View | Assessment # | Status | Amount | Payment List |
|------|-------------|--------|--------|--------------|
| Payment Options | 581120005-2 | Due | $2,043.90 | Remove |

Proceed to Payment List

Exhibit 22, Page 84



Riverside County, California
## Office of the Treasurer-Tax Collector

Home      Search      Last Search Results    Payment List    FAQ    Contact Us    Property Tax Portal

### Property Tax Payments - Search Results

Listed below are all taxes related to the assessment number you entered that are due at this time. If you entered a supplemental number and it is not listed below, it may be included in the Secured Prior Year Assessment or already paid.

To make a payment, select an option in the Payment List column.

For Secured and Supplemental property taxes the first installment must be paid on the Payment List before a second installment can be added.

### Secured Assessments

| View | Assessment # | Installment | Due Date | Status | Amount | Payment List |
|------|-------------|-------------|----------|--------|--------|--------------|
| View Tax Info | 581150013-2 | 1st | 12-10-2012 | Due | $2,169.72 | Add To List |
|  |  | 2nd | 04-10-2013 | Due | $2,207.22 | Add Both |

### Secured Prior Year Assessments

| View | Assessment # | Status | Amount | Payment List |
|------|-------------|--------|--------|--------------|
| Payment Options | 581150013-2 | Due | $16,386.36 | Remove |

Proceed to Payment List

Exhibit 22, Page 85



**Riverside County, California**

# Office of the Treasurer-Tax Collector

Home        Search        Last Search Results        Payment List        FAQ        Contact Us        Property Tax Portal

## Property Tax Payments - Search Results

Listed below are all taxes related to the assessment number you entered that are due at this time. If you entered a supplemental number and it is not listed below, it may be included in the Secured Prior Year Assessment or already paid.

To make a payment, select an option in the Payment List column.

For Secured and Supplemental property taxes the first installment must be paid on the Payment List before a second installment can be added.

### Secured Assessments

| View | Assessment # | Installment | Due Date | Status | Amount | Payment List |
|------|-------------|-------------|----------|--------|--------|--------------|
| View Tax Info | 581150015-4 | 1st | 12-10-2012 | Due | $14.03 | Add To List |
|  |  | 2nd | 04-10-2013 | Due | $51.53 | Add Both |

### Secured Prior Year Assessments

| View | Assessment # | Status | Amount | Payment List |
|------|-------------|--------|--------|--------------|
| Payment Options | 581150015-4 | Due | $225.20 | Remove |

Proceed to Payment List

Exhibit 22, Page 86

04/27/2013 11:35PM 951-600-9648         ATTORNEY ABREU                    PAGE 02/12



**Riverside County, California**

# Office of the Treasurer-Tax Collector

Home        Search      Last Search Results    Payment List    FAQ    Contact Us    Property Tax Portal

## Property Tax Payments - Search Results

Listed below are all taxes related to the assessment number you entered that are due at this time. If you entered a supplemental number and it is not listed below, it may be included in the Secured Prior Year Assessment or already paid.

To make a payment, select an option in the Payment List column.

For Secured and Supplemental property taxes the first installment must be paid on the Payment List before a second installment can be added.

### Secured Assessments

| View | Assessment # | Installment | Due Date | Status | Amount | Payment List |
|------|-------------|-------------|----------|--------|--------|--------------|
| View Tax Info | 581070015-7 | 1st | 12-10-2012 | Due | $35.14 | Add To List |
|  |  | 2nd | 04-10-2013 | Due | $72.64 | Add Both |

### Secured Prior Year Assessments

| View | Assessment # | Status | Amount | Payment List |
|------|-------------|--------|--------|--------------|
| Payment Options | 581070015-7 | Due | $383.44 | Remove |

Proceed to Payment List

Exhibit 22, Page 87



**Riverside County, California**

## Office of the Treasurer-Tax Collector

Home    Search    Last Search Results    Payment List    FAQ    Contact Us    Property Tax Portal

### Property Tax Payments - Search Results

Listed below are all taxes related to the assessment number you entered that are due at this time. If you entered a supplemental number and it is not listed below, it may be included in the Secured Prior Year Assessment or already paid.

To make a payment, select an option in the Payment List column.

For Secured and Supplemental property taxes the first installment must be paid on the Payment List before a second installment can be added.

Secured Assessments

| View | Assessment # | Installment | Due Date | Status | Amount | Payment List |
|------|--------------|-------------|----------|--------|--------|--------------|
| View Tax Info | 581150016-5 | 1st | 12-10-2012 | Due | $326.29 | Add To List |
| | | 2nd | 04-10-2013 | Due | $363.79 | Add Both |

Secured Prior Year Assessments

| View | Assessment # | Status | Amount | Payment List |
|------|--------------|--------|--------|--------------|
| Payment Options | 581150016-5 | Due | $2,566.33 | Remove |

Proceed to Payment List



**Riverside County, California**
## Office of the Treasurer-Tax Collector

Home     Search     Last Search Results     Payment List     FAQ     Contact Us     Property Tax Portal

## Property Tax Payments - Search Results

Listed below are all taxes related to the assessment number you entered that are due at this time. If you entered a supplemental number and it is not listed below, it may be included in the Secured Prior Year Assessment or already paid.

To make a payment, select an option in the Payment List column.

For Secured and Supplemental property taxes the first installment must be paid on the Payment List before a second installment can be added.

Secured Assessments

| View | Assessment # | Installment | Due Date | Status | Amount | Payment List |
|---|---|---|---|---|---|---|
| View Tax Info | 581150017-6 | 1st | 12-10-2012 | Due | $105.47 | Add To List |
| | | 2nd | 04-10-2013 | Due | $142.97 | Add Both |

Secured Prior Year Assessments

| View | Assessment # | Status | Amount | Payment List |
|---|---|---|---|---|
| Payment Options | 581150017-6 | Due | $910.59 | Run Tax |

Proceed to Payment List

Exhibit 22, Page 89

04/27/2013  11:35PM  951-600-9648          ATTORNEY ABREU                    PAGE  05/12



**Riverside County, California**
# Office of the Treasurer-Tax Collector

Home    Search    Last Search Results    Payment List    FAQ    Contact Us    Property Tax Portal

## Property Tax Payments - Search Results

Listed below are all taxes related to the assessment number you entered that are due at this time. If you entered a supplemental number and it is not listed below, it may be included in the Secured Prior Year Assessment or already paid.

To make a payment, select an option in the Payment List column.

For Secured and Supplemental property taxes the first installment must be paid on the Payment List before a second installment can be added.

### Secured Assessments

| View | Assessment # | Installment | Due Date | Status | Amount | Payment List |
|------|-------------|-------------|----------|--------|--------|--------------|
| View Tax Info | 917050007-3 | 1st | 12-10-2012 | Due | $1,075.43 | Add To List |
|  |  | 2nd | 04-10-2013 | Due | $1,112.93 | Add Both |

### Secured Prior Year Assessments

| View | Assessment # | Status | Amount | Payment List |
|------|-------------|--------|--------|--------------|
| Payment Options | 917050007-3 | Due | $8,180.14 | Remove |

Proceed to Payment List

Exhibit 22, Page 90

04/27/2013  11:35PM  951-600-9640          ATTORNEY ABREU                    PAGE  06/12



**Riverside County, California**
## Office of the Treasurer-Tax Collector

Home      Search    Last Search Results    Payment List    FAQ    Contact Us    Property Tax Portal

### Property Tax Payments - Search Results

Listed below are all taxes related to the assessment number you entered that are due at this time. If you entered a supplemental number and it is not listed below, it may be included in the Secured Prior Year Assessment or already paid.

To make a payment, select an option in the Payment List column.

For Secured and Supplemental property taxes the first installment must be paid on the Payment List before a second installment can be added.

Secured Assessments

| View | Assessment # | Installment | Due Date | Status | Amount | Payment List |
|------|-------------|-------------|----------|--------|--------|--------------|
| View Tax Info | 917050003-9 | 1st | 12-10-2012 | Due | $991.72 | Add To List |
| | | 2nd | 04-10-2013 | Due | $1,029.22 | Add Both |

Secured Prior Year Assessments

| View | Assessment # | Status | Amount | Payment List |
|------|-------------|--------|--------|--------------|
| Payment Options | 917050003-9 | Due | $7,552.75 | |

Proceed to Payment List

Exhibit 22, Page 91

04/27/2013 11:35PM 951-600-9648      ATTORNEY ABREU      PAGE 07/12

*43.10 acres*



Riverside County, California
## Office of the Treasurer-Tax Collector

Home     Search     Last Search Results     Payment List     FAQ     Contact Us     Property Tax Portal

### Property Tax Payments - Search Results

Listed below are all taxes related to the assessment number you entered that are due at this time. If you entered a supplemental number and it is not listed below, it may be included in the Secured Prior Year Assessment or already paid.

To make a payment, select an option in the Payment List column.

For Secured and Supplemental property taxes the first installment must be paid on the Payment List before a second installment can be added.

#### Secured Assessments

| View | Assessment # | Installment | Due Date | Status | Amount | Payment List |
|---|---|---|---|---|---|---|
| View Tax Info | 581070013-5 | 1st | 12-10-2012 | Due | $314.93 | Add To List |
| | | 2nd | 04-10-2013 | Due | $352.43 | Add Both |

#### Secured Prior Year Assessments

| View | Assessment # | Status | Amount | Payment List |
|---|---|---|---|---|
| Payment Options | 581070013-5 | Due | $12,665.20 | Remove |

Proceed to Payment List

*ONLY ENCUMBERED
BY 2nd TRUST Dead
NOT 1st.*

Exhibit 22, Page 92

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM AUTOMATIC STAY (REAL PROPERTY); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY;  DECLARATIONS IN SUPPORT THEREOF** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On June 14, 2013, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Mary Testerman Duvoisin    mary.m.testerman@usdoj.gov, USTP.region15@usdoj.gov;tiffany.l.carroll@usdoj.gov
- Michael Gerard Fletcher    mfletcher@frandzel.com, efiling@frandzel.com,shom@frandzel.com
- Peter W. Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com,vcorbin@winthropcouchot.com
- Ali M.M. Mojdehi    amojdehi@cooley.com, jgertz@cooley.com;bbyun@cooley.com;arego@cooley.com
- Frederick C. Phillips    fcp@philaw.com
- Thomas M. Robins    trobins@frandzel.com, efiling@frandzel.com,achase@frandzel.com
- Gregory M. Salvato    gsalvato@salvatolawoffices.com, calendar@salvatolawoffices.com
- Bryan Theis    bryan@theislaw.com
- United States Trustee    ustp.region15@usdoj.gov

☐  Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On June 14, 2013, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows.

SEE ATTACHED SERVICE LIST

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on June 14, 2013 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 14, 2013 | Viann Corbin | /s/ Viann Corbin |
|---|---|---|
| Date | Type Name | Signature |

1 **SERVICE VIA FIRST CLASS MAIL**

2

3
| | | |
|---|---|---|
| Vail Lake Rancho California, LLC | Vail Lake-Rancho California, LLC | Kid Gloves |
| 7824 Exchange Place | Attn: William P. Johnson, Registered Agt | Vail Lake MML from Court and other docs |
| La Jolla, CA 92038 | ~~29400 Rancho California RD~~ | Document No. 188411 |
| | ~~Temecula, CA 92591-5204~~ | |
| | **Attempted/Not Known -- 6/10/2013** | |

6
| | | |
|---|---|---|
| Phillips, Haskett & Ingwalson, A.P.C. | United States Trustee | 20 Largest |
| Frederick C. Phillips | Mary Testerman Duvoisin, Esq. | Thomas Tahara, petitioning creditor |
| 701 "B" Street, Suite 1190 | 402 West Broadway, #600 | PO Box 1674 |
| San Diego, CA 92101-3540 | San Diego, CA 92101-8511 | Solana Beach, CA 92075 |

9
| | | |
|---|---|---|
| 20Largest | Wayne Gregory, petitioning creditor | Cambridge Financial of CA LLC |
| Richard Crowell, petitioning creditor | 825-A8 South Waukegan Road | c/o Thomas C. Mjundell, Es. |
| 427 Fern Leaf Way | Waukegan, IL 60045 | Mundell Odlum & Haws LLP |
| Corona del Mar, CA 92625 | | 650 E. Hospitality Lane, #470 |
| | | San Bernardino, CA 92408 |

12
| | | |
|---|---|---|
| Elysian Events, LLC            20Largest | Cambridge Financial of CA LLC | |
| c/o Bryan Theis | c/o Gregory M. Salvato, Esq. | Blum Collins LLP, |
| Theis Law Group, PC | Salvato Law Offices | 707 Wilshire Blvd STE 4880 |
| PO Box 13939 | Wells Fargo Center | Los Angeles, CA 90017-3604 |
| Los Angeles, CA 90013 | 355 S. Grand Ave., #2450 | |
| | Los Angeles, CA 90071-9500 | |

15
Vail Lake Rancho California
c/o William Johnson
PO Box 1955
Rancho Santa Fe, CA 92067

17

18 **20 LARGEST**            **20 LARGEST**            **20 LARGEST**

19
| | | |
|---|---|---|
| North Plaza LLC | Jaraslav Medec | Darrell Connection |
| c/o Richard M Kipperman, Liq.Tee | 38000 Highway 79 S. | 31618 Corte Rosario |
| PO Box 310 | Temecula, CA 92589 | Temecula, CA 92592 |
| La Mesa, CA 91944-3010 | | |

22
| | | |
|---|---|---|
| Wayne Gregory | The Paul Company | Orange County Pump |
| 825-A8 South Waukegan | Attn: Doug Paul | 1627 Boyd Street |
| Waukegan, IL 60045 | 915 Camino Del Mar, #224 | Santa Ana, CA 92705 |
| | Del Mar, CA 92625 | |

25
| | | |
|---|---|---|
| SoCal Edison | Anza Gas Services | James Bree, Dorene Bree |
| PO Box 300 | PO Box 391819 | c/o BuchalterNemer |
| Rosemead, CA 91772-0001 | Anza, CA 92539 | 18400 Von Karman Ave., #800 |
| | | Irvine, CA 92612 |

27

28

1

2                                                                                                   MML from Court

3

4       Dept. Indus. Rel Labor Law Enforce                                                          Franchise Tax Board
        1550 West Main St                                                                           Attn: Bankruptcy
5       El Centro, CA 92243-2105                                                                    PO Box 2952
                                                                                                    Sacramento, CA 96812-2952
6

7       IRS-Insolvency Division                  State Board of Equalization                        US Securities & Exchange Comm.
        PO Box 7346                               PO Box 942879                                      Attn: Bankruptcy Counsel
8       Philadelphia, PA 19101-7346              Sacramento, CA 94279-0001                          5670 Wilshire Blvd., 11th Fl.
                                                                                                    Los Angeles, CA 90036-5627
9

10                                               Dun & Bradstreet                                                NEF RSN6/11/13
        Division of Labor Standards Enforcement  Attn: Lynne Roberts, 2                             Cambridge Financial of California LLC
11      7575 Metropolitan Dr., #210              3501 Corporate Parkway                             c/o Frandzel Robins Bloom & Csato LC
        San Diego, CA 92108-4424                 PO Box 520                                         Thomas Robins, III/Michael G. Fletcher
                                                 Center Valley, PA 1803                             6500 Wilshire Blvd., 17th Fl.
12                                                                                                  Los Angeles, CA 90048

13                                                                                                  **KidGloves – Jr lien holders/TaxCollector**
                                                                                                    **Document No. 188753**
14

15      Security Pacific Bank                     Pacific Western Bank                               First Interstate Bank
        12121 Wilshire Bldv., Suite 1350         (Successor to Security Pacific Bank)               401 North 31st Street
16      Los Angeles, CA 90025                     401 West A Street                                  P.O. Box 30918
                                                 San Diego, CA 92101                                Billings, MT 59116
17

18      KB Home Coastal Inc.                      KB Home                                            Craig Johnson & Associates PC
        12235 El Camino Real, Suite 100          10990 Wilshire Blvd.                               8 Garden Center
19      San Diego, CA 92130                       Los Angeles, CA 90024                             Broomfield, CO 80020-7003

20

21      Phillips, Haskett & Ingwalson PC         XD Conejo Notes, LLC                               Riverside County Treasurer-Tax Collector
        701 B Street, #1190                       2277 Townsgate Rd, #204                            40935 County Center Drive, Suite C
22      San Diego, CA 92101                       Westlake Village, CA 91361                         Temecula, CA  92591

23

24      Riverside County Treasurer-Tax Collector
        P.O. Box 12005
25      Riverside, CA  92502-2205                                                                   **Additional Parties from  Title Report**

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gary Clawson & Jean Clawson
43425 Sage Road
Hemet, CA 92343

Ecstatic Holdings, Inc.
251 Jeanell Dr., #3
Carson City, NV 89703

Ecstatic Holdings, Inc.
Attn: Matthew A. Taylor
311 W. Third St.
Carson City, NV 89703

United Mercantile Bank & Trust Co., NA
1300 East Green Street
Pasadena, CA 91106

First Interstate Bank of California
c/o San Diego DLC
PO Box 210028
San Diego, CA 2121

Shamrock Minerals, Inc.
c/o John Mulder
11731 Corle Sosegado
San Diego, CA 92128

Clifford Douglas, Tee of C. Douglas Profit
Sharing Plan Trust & Douglas 1977 TR
PO Box 2729
Rancho Santa Fe, CA 92067

XD Conejo Notes, LLC
Attn: Susan Lipson
Mundell Odhun & Haws LLP
650 E. Hospitality Lane, #470
San Bernardino, CA 92408

Vail Lake Rancho California
c/o Seltzer Caplan McMahon Citek
750 "B" Street, #2100
San Diego, CA 92101

KB Home Coastal, Inc.
Prindle Decker & Amaro LLP
310 Golden Shore, 4th Fl.
Long Beach, CA 90801-5511

Craig Johnson & Assoc, dba Tenner Johnson
c/o Tenner Johnson LLP
41592 Winchester Rd., Suite 200 PMB 004
Temecula, CA 92590

Badger Law Office
5055 Canyon Crest Dr.
Riverside, CA 92507

Labor Commissioner, Div. of
Labor Standards Enforcement
James E. Berry, Esq.
2031 Howe Ave., Ste. 100
Sacramento, CA 95825

MAINDOCS-#187503-v6-KidGloves_P&A_Mtn_Relief_Stay_362