COOLEY LLP
ALI M. M. MOJDEHI (123846)
(AMOJDEHI@COOLEY.COM)
JANET D. GERTZ (231172)
(JGERTZ@COOLEY.COM)
4401 Eastgate Mall
San Diego, CA  92121
Telephone:      (858) 550-6000
Facsimile:      (858) 550-6420

[Proposed] Counsel for Debtors and Debtors in Possession

### UNITED STATES BANKRUPTCY COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>VAIL LAKE RANCHO CALIFORNIA, LLC, a California limited liability company; VAIL LAKE USA, LLC, a California limited liability company; VAIL LAKE VILLAGE & RESORT, LLC a California limited liability company; VAIL LAKE GROVES, LLC, a California limited liability company; AGUA TIBIA RANCH, LLC, a Delaware limited liability company; OUTDOOR RECREATIONAL MANAGEMENT, LLC, a California limited liability company,<br><br>                Debtors. | Case No.  12-16684-LA11<br><br>**CHAPTER 11**<br><br>Jointly Administered with<br>   Case No. 13-05927-LA11_<br>   Case No. 13-05930-LA11_<br>   Case No. 13-05931-LA11<br>   Case No. 13-05932-LA11_<br>   Case No. 13-05944-LA11<br><br>**NOTICE OF EMERGENCY FIRST DAY MOTION AND <u>EMERGENCY FIRST DAY MOTION</u> FOR INTERIM ORDER AUTHORIZING DEBTORS' USE OF CASH FOR BUSINESS OPERATIONS**<br><br>[No Hearing Required Unless Requested or Set by the Court] |

     **PLEASE TAKE NOTICE THAT THIS IS A FIRST-DAY MOTION FILED PURSUANT TO APPENDIX D1 OF THE LOCAL BANKRUPTCY RULES OF THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA ("LOCAL BANKRUPTCY RULES").  ANY PARTY IN INTEREST WHO OPPOSES THIS FIRST-DAY MOTION MUST IMMEDIATELY NOTIFY THE LAW CLERK OF THE JUDGE ASSIGNED TO THIS BANKRUPTCY CASE.  NO WRITTEN OPPOSITION SHALL BE FILED TO THIS FIRST-DAY MOTION UNLESS THE COURT OTHERWISE DIRECTS.**

*/ / /*

*/ / /*

851262 v3/SD

**TO THE HONORABLE LOUISE DECARL ADLER UNITED STATES BANKRUPTCY JUDGE, THE TWENTY LARGEST UNSECURED CREDITORS, THE PREPETITION LIENHOLDERS AND THE UNITED STATES TRUSTEE:**

## <u>NOTICE OF MOTION AND MOTION</u>

**PLEASE TAKE NOTICE** that the above-captioned debtors, Vail Lake Rancho California, LLC ("VLRC"); Vail Lake USA, LLC ("VLU"); Vail Lake Village & Resort, LLC ("VLVR"); Vail Lake Groves, LLC ("VLG"); Agua Tibia Ranch, LLC ("ATR"); and Outdoor Recreational Management, LLC ("ORM" and together with VLVR, VLU, VLVR, VLG and ATR, the "Debtors"), hereby file this First Day Motion (the "Motion") seeking entry of an interim order, substantially in the form attached hereto as **<u>Exhibit "A"</u>** (the "Interim Cash Collateral Order"), and a final order (the "Final Cash Collateral Order," together with the Interim Cash Collateral Order, the "Cash Collateral Orders"):

   (a)     Authorizing the Debtors' use, for expenses in the ordinary course of business, of any cash received by any of the Debtors post-petition ("Cash") and granting the Debtors a "comfort order" that such Cash is unencumbered and property of the estate;

   (b)     To the extent any Cash is determined by the Court to be the collateral of any of the Debtors' prepetition lienholders (the "Prepetition Lienholders"), authorizing the Debtors' use, for expenses in the ordinary course of business, of such Cash Collateral (as defined in the Interim Cash Collateral Order) pursuant to sections 361 and 363 of the Bankruptcy Code on an *interim* basis pending a final hearing on the Motion (the "Final Hearing");

   (c)     Approving the form of adequate protection provided to the Prepetition Lienholders pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code as to any use of Cash Collateral;

   (d)     Scheduling a Final Hearing on the Motion to consider entry of the Final Cash Collateral Order; and

   (e)     Granting related relief.

1    **PLEASE TAKE NOTICE** that pursuant to Local Bankruptcy Rule 9014-5 and the

2   Guidelines, any party who opposes this Motion shall notify the judge's law clerk of its position

3   by telephone.  No opposition shall be filed to a First Day Motion unless the Court otherwise

4   directs.  Pursuant to the Guidelines, the Court reserves discretion to grant or deny a First Day

5   Motion unless the Court otherwise directs.

6    **PLEASE TAKE FURTHER NOTICE** that the Motion is based upon the accompanying

7   Memorandum of Points and Authorities and the Declaration of Thomas C. Hebrank (the "First

8   Day Declaration") filed on June 12, 2013 in support of the Debtors' first day motions (Dkt. No.

9   54), and the Supplemental Declaration of Thomas C. Hebrank filed in support hereof under

10   separate cover concurrently herewith.  In addition, the Debtors request that the Court take judicial

11   notice of all documents filed with the Court in these cases.

12    **PLEASE TAKE FURTHER NOTICE** that upon filing, the Debtors will serve a copy of this

13   Notice and Motion, the attached Memorandum of Points and Authorities and all supportive

14   papers not already served on:  (a) the Office of the United States Trustee; (b) the creditors

15   appearing on the list of the Debtors' 20 largest unsecured creditors filed in accordance with Rule

16   1007(d); (c) the Prepetition Lienholders; and (d) any parties who have requested special notice.

17   The Debtors intend to effectuate service via facsimile, personal service, or electronic means

18   (where consent has been obtained); provided, however, that service will be effectuated by Express

19   or Overnight Mail where the Debtors are unable to notify by such means.   To the extent

20   necessary, the Debtors request that the Court waive compliance with Local Bankruptcy Rule

21   9014-5 and approve service (in addition to the means of service set forth in such Local

22   Bankruptcy Rule) as set forth above.  In the event that the Court grants the relief requested by the

23   Motion, the Debtors shall serve a conformed copy of the order granting such relief upon each of

24   the foregoing parties and any other parties-in-interest as the Court directs.  The Debtors submit

25   that such notice is sufficient and that no other or further notice be given.

26   / / /

27   / / /

28   / / /

1    Respectfully submitted,

2
Dated: June 14, 2013
3
4                                    COOLEY LLP
                                     ALI M. M. MOJDEHI (123846)
5                                    JANET D. GERTZ (231172)

6
7                                    By: _____ /s/ Ali M. M. Mojdehi _____
                                             Ali M. M. Mojdehi (123846)
8
                                     [Proposed] Counsel for Debtors and Debtors in
9                                    Possession

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     STATEMENT OF FACTS

#### A.     Jurisdiction and Venue

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The venue of the chapter 11 cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409 as the Debtors' offices and members are located in San Diego County.  The statutory bases for the relief requested herein are *sections* 105, 361, 362 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and this Court's "Guidelines for First Day Motions."

#### B.     Relief Requested

By this Motion, the Debtors seek entry of the Cash Collateral Orders granting the following relief, without limitation

(a)     Authorizing the Debtors' use, for expenses in the ordinary course of business, of any cash received by any of the Debtors post-petition ("Cash") and granting the Debtors a "comfort order" that such Cash is unencumbered and property of the estate;

(b)     To the extent any Cash is determined by the Court to be the collateral of any of the persons holding pre-petition liens secured by the Debtors' assets (the "Prepetition Lienholders"), authorizing the Debtors' use, for expenses in the ordinary course of business, of such Cash Collateral (as defined in the Interim Cash Collateral Order) pursuant to sections 361 and 363 of the Bankruptcy Code on an *interim* basis pending a final hearing on the Motion (the "Final Hearing");

(c)     Approving the form of adequate protection provided to the Prepetition Lienholders pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code as to any use of Cash Collateral;

(d)     Scheduling a Final Hearing on the Motion to consider entry of the Final Cash Collateral Order; and

1     (e)  Granting related relief.

2  **C.**  **Brief Background**

3    On December 26, 2012 (the "Involuntary Petition Date"), an involuntary petition for relief

4 under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") was filed in this

5 Court against VLRC, thus commencing Case No. 12-16684-LA-11 (the "Involuntary Case").  On

6 June 10, 2013 ("Relief Date"), the Court entered an order for relief on the basis that no answer or

7 other pleading was timely filed in response to the involuntary petition.

8    The remaining Debtors commenced their respective cases by concurrently filing voluntary

9 petitions for relief under Chapter 11 of the Bankruptcy Code (together, the "Voluntary Cases" and

10 with the Involuntary Case, the "Bankruptcy Cases") on June 5, 2013 (the "Petition Date").  The

11 Court entered orders administratively consolidating the Debtors' cases under the above listed case

12 number (the "Lead Case") on June 12, 2013.  [Docket No. 57, in Lead Case].  The Debtors are

13 operating and managing their affairs as debtors in possession pursuant to sections 1101(a),

14 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or committee has been

15 appointed in these cases to date.

16    The Debtors own and operate various businesses on multiple real properties and projects

17 surrounding or relating to a valuable body of water known as Vail Lake.  Vail Lake is a large

18 reservoir in western Riverside County, California, located on Temecula Creek in the Santa

19 Margarita River watershed, approximately 15 miles east of Temecula, California.  The Debtors'

20 properties cover approximately 9,000 acres and have an estimated water storage capacity of

21 approximately 51,000 acre-feet.  The Debtors' respective assets are both diverse and very

22 valuable.  For example, Vail Lake has tremendous value both because of its strategic location and

23 unique characteristics that lend themselves to recreational development but also because its

24 reservoir serves as a main source of water for the Rancho California Water District, which serves

25 the water needs of the ever-growing Temecula Valley.

26    Various resort and event venue businesses are operated on the Debtors' properties.  Events

27 held at the properties include weddings, concerts and sporting events.  Recent events include the

28 "Tough Mudder" run held in February 2013 and the "Rockin' the Country" concert held over this

Cooley LLP
Attorneys At Law
San Diego

851262 v3/SD                    .

most recent Memorial Day weekend. General resort operations include RV park and campgrounds facilities, lake access, activities such as horseback riding, waterslides and miniature golf, and gift shop, deli and bar operations. The Debtors maintain the premises regularly as part of their business operations. To that end, the Debtors employ approximately 30 individuals working in areas such as deli and gift shop operations, maintenance, office administration, and activities operations. As a private lake, memberships, generally annual, are sold that allow members to use the lake facilities for recreational purposes without payment of separate or additional fees. Non-members may also access the lake facilities for daily fees.

Additional factual background regarding the Debtors is detailed in the First Day Declaration and fully incorporated herein by reference and the Supplemental Declaration of Thomas Hebrank in Support of this Motion ("Supplemental Hebrank Declaration").

### 1.    The Debtors' Pre-Petition Secured Lenders

The security interests asserted by the Debtors' Prepetition Lienholders fall into three categories: (1) the alleged real property encumbrances by Cambridge Financial of California, LLC and certain other entities; (2) the liens asserted by various taxing authorities; and (3) various encumbrances on the Debtors' personal property.

### 2.    Alleged Real Property Encumbrances by Cambridge and Others

As described in the First Day Declaration, beginning in and around 1998, an individual by the name of Angela Chen Sabella ("Sabella") and the lending entity owned and controlled by Sabella, Dynamic Finance, Inc. ("Dynamic"), purported to extend a series of loans to VLRC and VLVR, and VLU, (the "Dynamic Loans"), which were secured by at least 12 deeds of trust recorded against the real properties of VLRC and VLVR, and VLU (the "Dynamic Trust Deeds"). The claims associated with these Dynamic Loans are disputed on numerous grounds, including as discussed in Paragraphs 45 through 48 of the First Day Declaration.

The Dynamic Trust Deeds are enumerated as follows:

1.    Deed of Trust with Absolute Assignment of Leases and Rents, Security Agreement and Fixture Filing made as of July 26, 2002 by VLVR for the benefit of

Dynamic, Doc. No. 2002-526043 recorded 9/23/02 in the Official Records of the County of Riverside.

2.      Deed of Trust with Absolute Assignment of Leases and Rents, Security Agreement and Fixture Filing made as of August 29, 2002 by VLVR for the benefit of Sabella, Doc. No. 2002-526044 recorded 9/23/02 in the Official Records of the County of Riverside.

3.      Deed of Trust with Absolute Assignment of Leases and Rents, Security Agreement and Fixture Filing made as of August 26, 2002 by VLVR for the benefit of Sabella, Doc. No. 2002-526045 recorded 9/23/02 in the Official Records of the County of Riverside.

4.      Deed of Trust with Absolute Assignment of Leases and Rents, Security Agreement and Fixture Filing made as of July 26, 2002 by VLVR for the benefit of Dynamic, Doc. No. 2002-526046 recorded 9/23/02 in the Official Records of the County of Riverside.

5.      Deed of Trust with Absolute Assignment of Leases and Rents, Security Agreement and Fixture Filing made as of July 26, 2002 by VLU for the benefit of Dynamic, Doc. No. 2002-526053 recorded 9/23/02 in the Official Records of the County of Riverside

6.      Deed of Trust with Absolute Assignment of Leases and Rents, Security Agreement and Fixture Filing made as of August 29, 2002 by VLU for the benefit of Sabella, Doc. No. 2002-526054 recorded 9/23/02 in the Official Records of the County of Riverside.

7.      Deed of Trust with Absolute Assignment of Leases and Rents, Security Agreement and Fixture Filing made as of July 26, 2002 by VLU for the benefit of Dynamic, Doc. No. 2002-526055 recorded 9/23/02 in the Official Records of the County of Riverside.

8.      Deed of Trust with Absolute Assignment of Leases and Rents, Security Agreement and Fixture Filing made as of August 26, 2002 by VLU for the benefit of

Sabella, Doc. No. 2002-526056 recorded 9/23/02 in the Official Records of the County of Riverside.

9.      Deed of Trust with Absolute Assignment of Leases and Rents, Security Agreement and Fixture Filing made as of August 29, 2002 by VLRC for the benefit of Sabella, Doc. No. 2002-526061 recorded 9/23/02 in the Official Records of the County of Riverside.

10.     Deed of Trust with Absolute Assignment of Leases and Rents, Security Agreement and Fixture Filing made as of August 29, 2002 by VLRC for the benefit of Sabella, Doc. No. 2002-526062 recorded 9/23/02 in the Official Records of the County of Riverside.

11.     Deed of Trust with Absolute Assignment of Leases and Rents, Security Agreement and Fixture Filing made as of April 5, 2005 by VLRC for the benefit of Dynamic, Doc. No. 2005-0283454 recorded 4/11/05 in the Official Records of the County of Riverside.

12.     Deed of Trust with Absolute Assignment of Leases and Rents, Security Agreement and Fixture Filing made as of April 5, 2005 by VLRC for the benefit of Dynamic, Doc. No. 2005-028345 recorded 4/11/05 in the Official Records of the County of Riverside.

Under each of the above Dynamic Deeds of trust, the relevant Debtor (as trustor) granted to First American Title Company ("FATCO") (as trustee), for the benefit of Dynamic or Sabella (as beneficiary) the following collateral as security for the Loan:

> All real property owned by Trustor located in Riverside County, including "all right, title, interest, and privileges of Trustor in and to … all water, water rights and water stock related to the real property …; all buildings, other improvements and fixtures now or hereafter located on the real property, including, but not limited to, all apparatus, equipment , and appliances used in the operation or occupancy of the real property, it being intended by the parties that all such items shall be conclusively considered to be a part of the real property, whether or not attached or affixed to the real property (the 'Improvements') …; all interest or estate which Trustor may hereafter acquire in the property described above, and all additions and accretions thereto, and the proceeds of any of the foregoing; (all of the foregoing being collectively referred to as the 'Subject

Property' …;

[All of Trustor's] right, title and interest in, to and under: (a) all leases of the Subject Property or any portion thereof, and all other agreements of any kind relating to the use or occupancy of the Subject Property or any portion thereof, whether now existing or entered into after the date hereof ('Leases'); and (b) the rents, revenue, income, issues, deposits[,] security deposits, letters of credit, lease bonds and other deposit substitutes or credit enhancements and profits of the Subject Property, including, without limitation, all amounts payable and all rights and benefits accruing to Trustor under the Leases, and all deposits, security deposits, letters of credit, lease bonds and other deposit substitutes, or credit enhancements ('Payments'). … This is a present and absolute assignment, not an assignment for security purposes only, and beneficiary's right to the Leases and Payments is not contingent upon, and may be exercised without possession of, the Subject Property"; and

All goods, building and other materials, supplies, work in process, equipment, machinery, fixtures, furniture, furnishings, signs and other personal property, wherever situated, which are or are to be incorporated into, used in connection with, or appropriated for use on (i) the real property described in Exhibit A …; (ii) the Improvements (which real property and Improvements are collectively referred to herein as the Subject Property); together with all rents …; all inventory, accounts, cash receipts, deposit accounts, accounts receivable, contract rights, licenses, agreements, general intangibles, chattel paper, instruments, documents, notes, drafts, letters of credit, insurance policies, insurance and condemnation awards and proceeds, any other rights to the payment of money, trade names, trademarks and service marks arising from or related to the ownership, management, leasing or operation of the Subject Property or any business now or hereafter conducted thereon by Trustor; … together with all replacements and proceeds of, and additions and accessions to, any of the foregoing … ."

The following summarizes the principal amounts of the Dynamic Loans that the Debtors understand are now being asserted as outstanding under the notes secured by the Dynamic Trust Deeds:

| Debtor | Principal Amount |
|--------|------------------|
| VLRC | $2,000,000 |
| VLVR | $5,000,000 |
| VLVR | $3,500,000 |
| VLU | $5,400,000 |
| VLU | $17,000,000 |

In September 2010, Sabella and Dynamic purported to assign their interests in the notes associated with the Dynamic Loans described above and related Dynamic Trust Deeds to an entity named Cambridge Financial of California, LLC ("Cambridge"). The Dynamic Loans

described above and related Dynamic Trust Deeds are described in the assignment documents.[1]

A UCC search reveals that there are no UCC-1 filings by any of Dynamic, Sabella, or Cambridge against any of the Debtors.  As such, none of them are perfected in the Debtors' personal property.

### a.    The Kids Gloves Liens

As asserted in their motion for relief from stay, that has since been withdrawn and subsequently renewed as of the time of this filing, Kid Gloves, Inc. and 1690463 Alberta Ltd. (together "Kid Gloves"), assert that they hold certain real property liens against property held by VLRC. [*See* Dkt. No. 35, 69.]  On review of the deed of trust submitted in connection with the initial motion, no assignment of rents provision is included.  Further, neither of the identified entities has filed any type of personal property as to any of the Debtors, based upon a search for such liens performed on the Debtors' behalf as discussed below.  Likewise, the additional purported lienholders identified in the Kid Gloves motion—Security Pacific Bank, KB Homes, and Craig Johnson & Associates (involuntary judgment lien)—do not have any perfected security interest in the Debtors' personal property.  Even if such other purported lienholders had a perfected assignment of rents, as discussed below, none of the Debtors' postpetition Cash constitutes "rents" as that term is used for purposes of sections 363 and 552 of the Bankruptcy Code.

### b.    The Douglas Liens

In addition, as set forth in the First Day Declaration, a number of security interests formerly held by Clifford Douglas ("Douglas") appear to have recently been assigned to an affiliate of Cambridge, XD Conejo Notes, LLC. The Companies are in the process of obtaining the deeds of trust and are evaluating the validity of the underlying debt and purported assignment.

A UCC search reveals that there are no UCC-1 filings by Douglas or XD Conejo Notes,

---

[1] The assignment to Cambridge appears to be a sham transaction as, among other things, Cambridge's assignment was financed by non-interest bearing notes held by Sabella and Dynamic and further provides for reversion to Sabella and Dynamic if Cambridge does not successfully foreclose on the notes and deeds of trust by July 1, 2012 (or, if mutually agreed to be extended, by no later than July 1, 2013).  To this end, Sabella and Dynamic have agreed to cooperate and aid Cambridge in obtaining the Companies' properties.  In substance, therefore, Cambridge appears to hold the position of an optionee, whose option has expired, or will soon expire.

LLC against any of the Debtors.  As such, neither Douglas nor Douglas' assignee, XD Conejo Notes, LLC ("XD Conejo"), have perfected their security interest in the Debtors' personal property.

**2.      Personal Property Encumbrances**

On review of the results of a lien search performed on the Debtors' behalf, the following summarizes the known personal property liens filed against certain of the Debtors, excepting liens filed by taxing authorities:[2]

| Debtor | Creditor | General Collateral Description | Amount |
|---|---|---|---|
| VLRC | Blum Collins LLP (UCC Financing Statement Expires: 3/20/14) | Citrus fruit | $0 |
| VLU | Blum Collins LLP (UCC Financing Statement Expires: 3/20/14) | Citrus fruit | $0 |
| VLU | Ted Goldberg, Trustee (UCC Financing Statement Expires: 7/9/15) | Citrus fruit, revenues and accounts receivable from sale of same (for years 2010 and 2011 only) | $0 |
| VLU | Phillips, Haskett & Ingwalson (UCC Financing Statement Expires: 5/25/17) | Citrus fruit | $1,500,000 |
| VLVR | Sysco Food Services of San Diego, Inc. (UCC Financing Statement Expires: 10/17/13) | Goods and inventory; Instruments; Chattel paper; Documents; Accounts; Accounts receivable; General intangibles; Payment Intangibles; and All proceeds and support obligations thereof | Unknown |
| VLVR | Blum Collins LLP (UCC Financing Statement Expires: 3/20/14) | Citrus fruit | $0 |

**3.      Tax Liens**

On review of the results of a lien search performed on the Debtors' behalf, the following summarizes the known non-consensual personal property liens filed against certain of the Companies by taxing authorities (collectively, the "Taxing Authorities"):

| Debtor | Creditor | General Collateral Description | Amount |
|---|---|---|---|
| VLU | IRS (Federal Tax Lien Expires: 4/2/19) | All property and rights to property | $750 (as of 2009) |
| VLVR | CA Employment Development Dept. (State Tax Lien Expires: 2/1/15) | All property and rights to such property, including all after-acquired property | $16,806.54 (as of 2005) |

[2] In addition, Dynamic filed a UCC-1 in connection with its asserted lien on certain of the Debtors' personal property.  The UCC financing statement has expired and is avoidable by the Debtors, for the benefit of the Debtors' estates.

| | | |
|---|---|---|
| CA Employment Development Dept. (State Tax Lien Expires: 7/5/16) | | $28,131.90 (as of 2006) |
| CA Employment Development Dept. (State Tax Lien Expires: 6/21/17) | | $18,423.77 (as of 2007) |
| CA Employment Development Dept. (State Tax Lien Expires: 10/23/17) | | $1,557.92 (as of 2007) |
| CA Employment Development Dept. (State Tax Lien Expires: 9/22/19) | | $6,906.89 (as of 2009) |
| CA Employment Development Dept. (State Tax Lien Expires: 4/12/22) | | $13,423.30 (as of 2012) |
| IRS (Federal Tax Lien Expires: 8/12/19) | All property and rights to property | $7,124.49 (as of 2009) |
| IRS (Federal Tax Lien Expires: 12/14/22) | | $245,527.23 (as of 2012) |

## II.   DISCUSSION

The Debtors have an urgent need to use cash receipts for day to day operating expenses. The Debtors believe that their cash is unencumbered, at least at it pertains to consensual liens, but as noted by the *Colliers'* treatise, "[a]ny uncertainty as to whether cash is cash collateral is best resolved by seeking [C]ourt authorization."   3-42 COLLIER BANKRUPTCY PRACTICE GUIDE ¶ 43.08.  Thus, in the abundance of caution, the Debtors are seeking a comfort order from the Court that the consensual liens of the Prepetition Lienholders either do not reach, or are unperfected in, the cash received post-petition from the Debtors' operations.

The Debtors also seek the Court's approval to use such cash collateral for expenses in the ordinary course of business and without the consent of the Taxing Authorities.  In such instance, the Debtors request that the Court would make findings that Taxing Authorities are adequately protected.

### A.   The Use of Cash Collateral Under the Bankruptcy Code

The Debtors' use of property of their estates in the ordinary course of business is governed

by *section* 363 of the Bankruptcy Code, which provides in pertinent part that:

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the [debtor] . . . may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

When a debtor's property is in the form of "cash," defined in Section 363(a) of the Bankruptcy Code as "cash, negotiable instruments, documents of title, securities, deposit accounts, other cash equivalents in which the estate and an entity other than the estate have an interest," (including the cash proceeds of collateral subject to the original prepetition lien under section 552(b)), the debtor in possession may not use it unless (a) each entity that has an interest therein consents; or (b) the court, after notice and a hearing, authorizes such use, sale, or lease. 11 U.S.C. §363(c)(2).   Further, a debtor in possession is required by section 363(c)(4) to segregate and account for any cash collateral in its possession, custody, or control, unless the Court authorizes its use pursuant to section 363(c)(2).

### B.      The Impact of Section 552 of the Bankruptcy Code

Under Bankruptcy Code section 552(b)(1), a pre-petition security interest in proceeds from collateral extends to proceeds received post-petition to the extent provided for by the terms of the security agreement and state law.   The "applicable" state law to determine whether a security interest exists in proceeds under the terms of a security agreement and whether an item of property constitutes "proceeds" under the law is Article 9 of the UCC.   *See Arkison v. Frontier Asset Mgmt., LLC (In re Skagit Pac. Corp.)*, 316 B.R. 330, 337 (B.A.P. 9th Cir. 2004).   Under California law, "the attachment of a security interest in collateral gives the secured party the rights to the proceeds provided by [Cal. Com. Code] Section 9315 and is also a security interest in a supporting obligation for the collateral."   *Qmect, Inc. v. Burlingame Capital Partners II, L.P., (In re Qmect, Inc.)*, 373 B.R. 682, 686 (N.D. Cal. 2007) (quoting Cal. Com. Code §9203(f)).

"Proceeds" are defined as:

(a) whatever is acquired upon the sale, lease, license, exchange or other disposition of collateral,

1    (b) whatever is collected on, or distributed on account of, collateral;

2    (c) rights arising out of collateral.  Cal. Com Code §9102(a)(64).

3    Accordingly, "postpetition proceeds, products, offspring, or profits are subject to an after-

4    acquired property clause only if they derive from prepetition collateral."  *In re Premier Golf*

5    *Props., LP*, 477 B.R. 767, 775 (B.A.P. 9th Cir. 2012).  Additionally, "revenue generated by the

6    operation of a debtor's business, post-petition, is not considered proceeds if such revenue

7    represents compensation for goods and services rendered by the debtor in its everyday business

8    performance. *Id*. at 776.

9    **1.    The Debtors' Cash is Unencumbered Post-Petition Receipts**

10    Here, the Debtors believe that the cash being received post-petition is unencumbered by

11    the Pre-petition Lienholders.  Furthermore, any pre-petition cash in the Debtors' possession

12    should also be unencumbered, excepting only as to the Taxing Authorities, as discussed below.

13    In light of the provisions of the Bankruptcy Code pertaining to a debtor's use of cash collateral,

14    however, the Debtors are seeking a comfort order from this Court that proceeding to use the cash

15    for ordinary business expenses would not violate the rights of the Debtors' pre-petition

16    lienholders.

17    The sources of the Debtors' cash receipts, and the entity receiving such receipts, is set

18    forth in summary in the table below and analyzed further below.  As noted below all of the cash

19    receipts of the Debtors' operations are received by ORM, which serves as the operating entity for

20    the Debtors' businesses.  The entity that owns the underlying collateral at issue is set forth in

21    parentheses.

| Entity | Revenue |
|---|---|
| ORM (VLVR & VLRC) | RV park/ campground resort facilities |
| ORM (VLRC) | Memberships |
| ORM (VLG) | Sale of citrus fruit |
| ORM (VLVR) | Parking services |
| ORM (VLVR & VLRC) | Revenue from events held on properties |
| ORM (VLVR & VLRC) | Revenue from concert ticket sales |
| ORM (VLVR) | Revenue from gift shop, food and beverage sales, arcade |
| ORM (VLVR) | Activity revenue (pools/waterslide, horseback riding, miniature golf, remote control racing) |
| ORM (VLRC) | Lake access for non-members |
| ORM (VLVR & VLRC) | RV & boat storage services |

As noted below, there are no pre-petition liens whatsoever recorded against ORM.  As such, the cash received by ORM is unencumbered and should be freely able to be used by the Debtors for expenses in the ordinary course.

**C.     None of the Cash is Derived from "Rents" and Thus is Not Perfected by Virtue of the Dynamic Trust Deeds**

As noted above, the cash is received by ORM, against whom there are no recorded liens.  To the extent, however, that the revenues may be deemed attributable, in whole or in part, to VLR, VLVR, or VLRC under some equitable theory, such cash proceeds are still not encumbered by the liens of Dynamic and Sabella (now asserted by Cambridge).  Although Dynamic and Sabella recorded the Dynamic Trust Deeds, the UCC-1 financing statements they filed have expired and thus are not perfected in the personal property of VLR, VLVR or VLRC.  As such, Dynamic and Sabella's security interest in the Debtors' personal property is avoidable under 11 U.S.C. §544(a)(2).  While an avoidance action would be necessary to accomplish this result, the issue is both relevant to the determination of the use of the Debtors' cash here and is put at issue in this contested matter.  As explained by the bankruptcy court in *The Wright Group*, because the lender "did not have a perfected security interest . . . in existence on the date of the debtor's filing of its bankruptcy petition, [the lender] had no interest in 'cash collateral' which it could enforce pursuant to 11 U.S.C. §363(c)(2).  *Id*. at 807.  The court thus determined that the matter of the avoidance of the lender's lien could be determined in the course of a contested matter, where the use of cash collateral and thus whether the lender had an "interest" had been put at issue.

Divested of a security interest in the Debtors' personal property, the only means for Dynamic, Sabella, Cambridge, Douglas, or XD Conejo to assert an interest in the cash would be if the cash was a proceed of "rents."  As discussed below, the cash received from the Debtors' operations is not derived from rents.

Bankruptcy Code *section* 552(b)(2) allows a pre-petition security interest in property and "amounts paid as rents of such property or the fees, charges, accounts, or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties" to extend to such payments received post-petition.  The general test in the Ninth

Circuit for determining whether income from real property constitutes "rents" under *section 552* is: "If the income is produced by the real property, it is considered rents; but if the income is the result of services rendered or the result of the specific business conducted on the property, then it does not constitute rents." *Premier Golf*, 477 B.R. at 772-73.

In *Premier Golf*, for example, the debtor's income for green fees and driving range fees, where the debtor operated a golf club, were not rents. They were not rents because the generation of income was not dependent upon static real property—but instead was due to the "regular planting, seeding, moving, repositioning holes, watering, fertilizing, and maintaining the golf course." *Id*. at 774. In other words, the services provided by the debtor were a substantial component and basis for the revenues.[3]

Similarly, in *In re The Wright Group, Inc.*, 443 B.R. 795 (Bankr. N.D. Ind. 2011), the debtor received income from customer's use of a miniature golf facility, which was incidental to the amusement operation and was dependent upon the participants paying green fees. In *The Wright Group*, however, the bankruptcy court approached the problem differently. It noted that the use by patrons of the course could not be perfected under real property law because under state law the use of the facility was a "mere license." The bankruptcy court reasoned that a license does not give rise to any form of interest in real estate, and that the proceeds received from this license could not be subject to a security interest perfected under real property law. *Id*. at 799.

Here, as well, the Debtors' revenues cannot be subject to a security interest perfected under real property law and are not "rents". The Debtors' revenues may be segregated into several categories, discussed as follows:

1.    *Revenues from Events Held on the Property*

As discussed in the First Day Declaration, the Debtors' operate as an entertainment and sports venue, including events such as weddings, concerts, theme races and other large-venue

---

[3] Under California law, the test for whether an agreement for the use of real estate is a license or a lease is whether the contract gives exclusive possession of the premises against all the world, including the owner, in which case it is a lease, or whether it merely confers a privilege to occupy under the owner, in which case it is a license, and this is a question of law arising out of the construction of the instrument. *Von Goerlitz v. Turner*, 65 Cal. App. 2d 425, 150 P.2d 278, 280 (Cal. 1944) (citation omitted)

1   entertainment.

2   The admission prices guests and/or members must pay in order to attend these events are

3   substantially similar to the green fees and driving range fees the debtor collected in *Premier Golf*

4   and *The Wright Group*.   That is, the revenues collected provided such guests and members a

5   license to access and enjoy the events, which occur on the properties, but are the product of the

6   labor of the Debtors (*i.e.*, setting up stage, lights, sound; establishing security; preparing and

7   providing food and beverages; setting up and operating casino) and the performers. Like the golf

8   course in *Premier Golf*, the revenue derived from events is not from "real property as shelter or

9   occupancy," but rather "from the usage of real property as entertainment."  477 B.R. at 774.

10   2.   *Revenues from RV and campground resort facilities*

11   ORM/VLVR generally charge between $45 and $110 a day for access to and use of RV

12   and camping facilities, depending on whether a patron comes with an RV and also depending on

13   the time of year (*i.e.*, season, holiday weekend).   There are four campsite areas – each with their

14   own unique characteristics. The Debtors supply a number of amenities, such as gas and electric

15   hookups, shower and bathroom facilities, and laundry facilities to the campsites, maintain them,

16   and provide additional other services to ensure the guests' safety and comfort.

17   In  *Fin. Sec. Assurance, Inc. v. Days Cal. Riverside Ltd. P'ship (In re Days Cal. Riverside*

18   *Ltd. P'ship),* 27 F.3d 374, 377 (9th Cir. 1994), the Ninth Circuit "concluded that hotel room

19   charges were rents based on its determination that under California law, room rent is 'produced

20   by the property.'"  The *Premier Golf* court explained that the Ninth Circuit based its decision on

21   the premise that room rent was generated from the "occupancy" of real property (necessarily, the

22   improvements thereon) and differentiated between revenue from occupancy of rooms and revenue

23   that was generated by other services provided by the hotel."

24   Here, the revenues are being generated by the campgrounds and, as in *Premier Golf*, they

25   have much more to do with the maintenance and various other services that are provided by the

26   Debtors in connection with the campgrounds.   Here, unlike a "hotel," there are no physical

27   improvements on the property that can be said to generate the revenue.   There are no rooms to

28   rent, no lobby, no roof to give shelter.   Indeed, here the situation is very similar to revenue

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

851262 v3/SD

derived from a short-term (hourly or daily) parking lot, which has been held to not be rents under *section* 552. *See In re Easthaven Marina Group, LLC*, 2009 WL 500847, at *2 (Bankr. E.D.N.C. Feb. 26, 2009). The guests bring their own tent or RV, which is parked on the property, for a fee. Here, as in *Premier Golf* and *The Wright Group*, the revenues collected provided such guests and members a license to access and enjoy camping, which occurs on the property, but which are substantially the product of the labor of the Debtors

### 3. *Revenues from RV and boat storage*

Likewise, revenue received for the storage of RV and boats, while on the property, is a service being provided by the Debtors as distinct from being generated by any real property itself. *See In re Northport Marina Assoc's*, 136 B.R. 911, 916 (Bankr. E.D.N.Y. 1992).

### 4. *Revenues from food and beverage, gift shop, video arcade etc.*

The Ninth Circuit has set forth the general rule that "[r]evenue generated by the operation of a debtor's business, post-petition, is not considered proceeds if such revenue represents compensation for goods and services rendered by the debtor in its everyday business performance." None of these cash sources qualify as "rents."

### 5. *Revenues from memberships*

Memberships, generally annual, are sold that allow members to use the lake facilities for recreational purposes without payment of separate or additional fees. This prepayment is purely a cash transaction, where no type of account or other receivable is created. However, even if characterized as a license, if there is no perfected lien in personal property, as is the case for Dynamic, Sabella and/or Cambridge there is no interest.

### 6. *Revenues from activities (horseback riding, miniature golf etc.)*

For the reasons stated above with respect to the Debtors' labor involved in the maintenance and operation of the above-listed activities and the derivation of revenues from the activity rather than the real property, the revenue generated from the above-listed activities are not rents subject to the Dynamic Deeds of Trust.

Nor do the other pre-petition consensual liens prevent the Debtors' use of cash. As noted above, the pre-petition liens asserted against the Debtors' personal property are limited to (i) liens

against fruit produced by an orchard, the cash proceeds of which are not being sought to be used here; and (ii) a lien asserted against the Debtors' personal property by Sysco Food Services of San Diego, Inc which the Debtors believe to be zero in amount. As discussed above, the Debtors' cash revenues are substantially the result of the Debtors' labors and do no derive from prepetition collateral.  As such, the cash is not subject to these liens.  *Premier Golf*, 447 B.R. at 775. Additionally, this is "revenue generated by the operation of a debtor's business, post-petition," and is compensation for goods and services rendered by the debtor in its everyday business performance.  As such, the Debtors' cash is not considered proceeds of pre-petition collateral.  *Id.* at 776.

In sum, none of the consensual pre-petition lienholders have any interest in the Debtors' cash.  The Debtors believe, however, that a "comfort order" would be beneficial, establishing the fact that the cash may be used without consent of these lienholders and without the need for a finding that the lienholders are adequately protected.

### D.    The Debtors Seek Authorization for Use of Cash Collateral As to the Liens of the Taxing Authorities

As stated above, the sole Debtor entity receiving cash is ORM—as to which there are no security interests granted to third parties. To the extent, however, that the Debtors' cash may be deemed to derive from either of VLVR and VLU, various taxing authorities have filed non-consensual pre-petition liens, which would implicate an "interest" in at least the *prepetition* cash of these two entities.

In this respect, under *section* 363, a creditor holding a statutory lien, such as a tax lien, is afforded the same protections as creditors holding a consensual lien on cash collateral.  *See in re Trujillo*, 485 B.R. 238, 251 (Bankr. D. Colo. 2012).  However, unlike consensual liens, statutory liens are not subject to section 552(a) and so continue to attach to property obtained postpetition. *See in re County of Orange*, 189 B.R. 499, 502 (C.D. Cal. 1995); *In re Las Vegas Monorail Co.*, 429 B.R. 317, 329 n.18 (Bankr. D. Nev. 2010).

Nonetheless, the Ninth Circuit has held that as to federal tax liens, although "very broad" per the scope cited above, do not "apply to property acquired after bankruptcy."  *In re Connor*, 27

1  F.3d 365, 366 (9th Cir. 1994); *see also In re May Reporting Services, Inc.*, 115 B.R. 652, 657-658

2  (Bankr. D. S. Dakota 1990) (bankruptcy equities sever the interest of taxing authority in post-

3  petition accounts receivable, absent traceable proceeds).  Thus, after-acquired property should not

4  be subject to a tax lien here.

5  In respect to the Taxing Authorities, therefore, the Debtors seek the Court's authorization

6  for use of cash collateral, pursuant to the provisions of 11 U.S.C. §363(c)(2).  The consent to the

7  Debtors' use of the cash collateral by the Taxing Authorities cannot be obtained, particularly

8  under the exigencies of the present circumstances.  Under such circumstances, Bankruptcy Rule

9  4001(b) provides for a preliminary hearing in which the Court can authorize the Debtors to use

10  only that amount of cash collateral as is necessary to avoid immediate and irreparable harm,

11  pending a final hearing.  Rule 4001(b) requires the Debtors to provide the following information:

12  1.    *The name of each entity with an interest in the cash collateral*

13  The names of the taxing authorities are as follows (i) Internal Revenue Service, and (ii)

14  California Employment Development Department.

15  2.    *The purposes for the use of the cash collateral*

16  As described in detail in the First Day Declaration, and as supplemented by the

17  Supplemental Hebrank Declaration, the Debtors' operate various, service-oriented businesses on

18  their properties. Operations include services relating to sporting and entertainment events held on

19  the properties as well as those relating to the Debtors' resort business, which include the

20  provision of activities such as horseback riding, waterslides and miniature golf as well as gift

21  shop, deli and bar operations.  Further, the Debtors maintain their premises regularly as part of

22  their business operations and employ approximately 30 individuals essential to maintaining their

23  operations on an ongoing basis.

24  The Debtors require the immediate use of cash in their operations to avoid irreparable

25  harm to the estates.  In addition to it being summer generally, the upcoming Fathers' Day

26  Weekend is anticipated to draw a substantial number of patrons to the Debtors' resort facilities.

27  The Debtors have confirmation for upwards of 2,000 people to be accessing their facilities in the

28  coming days, and it is imminently necessary that the Debtors be able to purchase critical supplies

such as toilet paper and other materials to operate their bathroom and shower facilities, ice for their patrons, and food and drink inventory for their bar and deli operations, all of which are virtually exhausted at this time.

The Debtors will be severely harmed if unable to maintain their basic, ordinary course operations, particularly where they are expecting a large crowd. Moreover, the Debtors will suffer financially from a loss of business not only in the immediate sense of losing patrons this weekend, in light of the lack of services essential to the Debtors' operations, but also in the long term damage to their reputation as a service provider in the hospitality industry.  In addition, much of the inventory and other critical materials the Debtors need to utilize cash for themselves generate revenue in the course of the Debtors' business operations which will be lost without immediate access.

Thus, in connection with this weekend, and in the immediate future thereafter, the Debtors have a number of vendors and service providers that require payment in order to preserve the value of the estates as a going concern and avoid irreparable damage to the Debtors' ongoing business operations.

Additionally, the Debtors' next payroll is due to be paid, in the ordinary course, on June 15, 2013.  The Debtors' employees are essential to their operations, particularly in light of the anticipated patronage this coming weekend. The Debtors' ability to meet its payroll obligation is critical not only to maintaining employee morale throughout the course of these proceedings to the benefit of the estate, but even more imminently, to preventing many of the employees from leaving the Debtors.  Loss of employees, and the institutional knowledge they have amassed working for the Debtors prior to the Petition Date, would lead to disruptions to the Debtors' operations to the detriment of the Debtors' going concern value and in addition, raises immediate concerns for public safety in the context of crowd management.

3.    *The material terms, including duration, of the use of the cash collateral*

The cash collateral will be used in accordance with the Budget attached hereto as **Exhibit "B."**  The duration for the Debtors' use of the cash collateral is expected to be for the term set forth in the Budget, with any extension thereof to be by Court approval. Any liens, cash

payments, or other adequate protection that will be provided to each entity with an interest in the cash collateral or, if no additional protection is proposed, an explanation of why each entity's interest is adequately protected.

*Section* 363(e) of the Bankruptcy Code provides that at any time, on request of an entity with an interest in property that has been used, sold or leased or that is proposed to be used, sold or leased, the Court, with or without a hearing, must prohibit or condition such use, sale or lease as is necessary to provide adequate protection. Section 361 provides examples of adequate protection: (1) periodic cash payments; (2) additional or replacement liens; and (3) such other relief as will provide the "indubitable equivalent" of the interest. The term "adequate protection" is intended to be a flexible one. 3-363 *Collier on Bankruptcy* ¶ 363.05. Adequate protection of a lienholder's interest might appropriately include a lien on other assets to the extent, if any, of a decrease in the value of the lender's collateral, including the cash collateral.

Here, to the extent that the cash is deemed to be attributable to any Debtor entity other than ORM (as to which there are no tax liens), the only amount of the cash that would be subject to the Taxing Authorities' prepetition lien would be the cash on hand on the Petition Date, which was in the amount of $11,739.87. The Debtors propose to segregate such prepetition cash and not use this amount, which will adequately protect the Taxing Authorities.

The Debtors also submit that the taxing authorities are adequately protected by the fact that the Debtors' real property has a value that more than exceeds the minimal amount of decrease in the cash that may be used for operating expenses. Moreover, the value of the Debtors' real property will be maintained and enhanced by the continued use of cash collateral for maintenance and the like. As such, no additional grant of adequate protection is needed. The Debtors therefore respectfully request that the Court find that the taxing authorities are Adequately Protected and authorize the Debtors' use of cash collateral in the manner set forth herein.

### E.    Failure to Allow Use of Cash and/or Cash Collateral for Expenses in the Ordinary Course Would Cause Immediate and Irreparable Harm.

Pursuant to Bankruptcy Rule 4001, the Court may grant the relief requested in the Motion

prior to holding a final hearing if the relief is necessary to avoid immediate and irreparable harm. These bankruptcy cases demonstrate exactly the type of facts that necessitate immediate relief to prevent irreparable harm.  As described in the Supplemental Hebrank Declaration, in the normal course of business, the Debtors must use cash on hand and cash flow from operations to fund working capital, capital expenditures, and for other general corporate purposes. An inability to use these funds during the chapter 11 cases could cripple the Debtors' business operations. Indeed, the Debtors must use their cash to, among other things, continue the operation of their businesses in an orderly manner, maintain business relationships with vendors, suppliers and customers, pay employees and satisfy other working capital and operation needs—all of which are necessary to preserve and maintain the Debtors' going-concern value and, ultimately, effectuate a successful reorganization.

Without use of the Cash, and/or Cash Collateral, the Debtors will have no ability to operate their businesses. The Debtors will not be able to pay their vendors and their vendors will likely cease to provide goods and services to the Debtors on credit. The Debtors will not be able to fund their payroll. The Debtors will not be able to pay professionals necessary for the successful reorganization of their businesses. Finally, the Debtors will not be able to service their customers. All of these outcomes will cause immediate and irreparable harm to the Debtors' estates.

The Debtors' ability to finance their operations and the availability to the Debtors of sufficient working capital and liquidity through the use of Cash and/or Cash Collateral is vital to the confidence of the Debtors' employees, suppliers, and customers and to the preservation and maintenance of the going-concern value and other values of the Debtors' estates. The Prepetition Agent and Prepetition Lenders have not consented to the Debtors' use of Cash Collateral in the ordinary course of business.  The Debtors, therefore, seek immediate authority to use Cash, and as may be applicable, any Cash Collateral as set forth herein and in the Interim Cash Collateral Order to prevent immediate and irreparable harm to the Debtors' estates pending the Final Hearing pursuant to Bankruptcy Rule 4001(b).

Accordingly, to the extent that the Debtors require the use of Cash Collateral, the Debtors

submit that they have satisfied the requirements of Bankruptcy Rule 4001 to support immediate Cash Collateral availability.

### F.    Request for Final Hearing

Pursuant to Bankruptcy Rules 4001(b)(2), the Debtors request that the Court set a date for the Final Hearing that is as soon as practicable, but in no event later than 45 days following the entry of the Interim Cash Collateral Order, and fix the time and date prior to the Final Hearing for parties to file objections to the Motion.

### G.    Notice

The Debtors have provided notice of this Motion by electronic mail or facsimile and by overnight mail to: (a) the Office of the United States Trustee for the Southern District of California; (b) the entities listed on the Consolidated List of Creditors Holding the 20 Largest Unsecured Claims; (c) the Prepetition Lienholders; and (d) any parties who have requested special notice.

In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

## III.    CONCLUSION

For the reasons set forth herein, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit "A"**, granting the relief requested herein and granting such other and further relief as the Court deems appropriate.

Dated: June 14, 2013

COOLEY LLP
ALI M. M. MOJDEHI (123846)
JANET D. GERTZ (231172)


By:    /s/ Ali M.M. Mojdehi
           Ali M. M. Mojdehi (123846)

[Proposed] Counsel for Debtors and Debtors in Possession

# Exhibit A

CSD 1001A [11/15/04]
Name, Address, Telephone No. & I.D. No.

Ali M.M. Mojdehi (123846)
Janet D. Gertz (231172)
Cooley LLP
4401 Eastgate Mall
San Diego, CA 92121
Tel. 858 550-6000
Fax: 858 550-6420
[Proposed] Counsel for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

| In Re. | BANKRUPTCY NO. 12-16684-LA11 |
|---|---|
| VAIL LAKE RANCHO CALIFORNIA, LLC, a California limited liability company; VAIL LAKE USA, LLC, a California limited liability company; VAIL LAKE VILLAGE & RESORT, LLC, a California limited liability company; VAIL LAKE GROVES, LLC, a California limited liability company; AGUA TIBIA RANCH, LLC, a Delaware limited liability company; OUTDOOR RECREATIONAL MANAGEMENT, LLC, a California limited liability company,, | Jointly Administered with<br>  Case No. 13-05927-LA11<br>  Case No. 13-05930-LA11<br>  Case No. 13-05931-LA11<br>  Case No. 13-05932-LA11<br>  Case No. 13-05944-LA11 |
| | Date of Hearing:     N/A |
| | Time of Hearing:     N/A |
| Debtors. | Name of Judge:   Hon. Louise DeCarl Adler |

## Interim Order Authorizing Debtors' Use of Cash for Business Operations

**IT IS ORDERED THAT** the relief sought as set forth on the continuation pages attached and numbered two (2)

through 3 with exhibits, if any, for a total of 3 pages, is granted. Motion/Application Docket Entry No. ___.

//

//

//

DATED:

_____
Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under
Fed. R. of Bankr. P. 9011 that the relief in the order is the
relief granted by the court.

Submitted by:
Cooley LLP
_____
 (Firm name)

By: /s/ Ali M.M. Mojdehi
_____
 [Proposed] Attorney for ☒ Movants ☐ Respondent
 Debtors and Debtors in Possession

CSD 1001A

merican LegalNet, Inc.
www.USCourtForms.com

**CSD 1001A** [11/15/04] **(Page 2)**

ORDER AUTHORIZING DEBTORS' USE OF CASH FOR BUSINESS OPERATIONS

DEBTORS: Vail Lake Rancho California, LLC; Vail Lake USA, LLC; Vail Lake          CASE NO: 12-16684-LA11 (lead
Village & Resort, LLC; Vail Lake Groves, LLC; Agua Tibia Ranch, LLC; Outdoor         case)
Recreational Management, LLC

**WHEREAS**, having considered (i) the motion and memorandum of points and authorities of Vail Lake Rancho California, LLC ("VLRC"); Vail Lake USA, LLC ("VLU"); Vail Lake Village & Resort, LLC ("VLVR"); Vail Lake Groves, LLC ("VLG"); Agua Tibia Ranch, LLC ("ATR"); and Outdoor Recreational Management, LLC ("ORM"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), for an interim order authorizing the use of Cash[1] in the Debtors' post-Petition Date business operations (the "Motion") and thereafter hearing the Motion on a final basis; (ii) the Declaration of Thomas C. Hebrank in Support of the Debtors' First Day Motions [Dkt. No. 54], (iii) the Supplemental Declaration of Thomas C. Hebrank in Support of the Motion, and (iv) all other papers relevant to the Motion;

**WHEREAS**, the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409;

**WHEREAS**, it appearing that good cause exists for granting the relief requested in the Motion pursuant to sections 105, 361, 362 and 363 of the Bankruptcy Code;

**WHEREAS**, it also appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, creditors, and all other parties in interest;

**WHEREAS**, the Debtors having provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances and no other or further notice needing be provided;

**THEREFORE**, after due deliberation and good cause appearing, it is hereby ORDERED, that:

1.  The Motion is GRANTED on an interim basis.

2.  The notice on the Motion was adequate.

3.  The Debtors are authorized to use, for expenses in the ordinary course of business, and in accordance with the Budget, of any Cash received by any of the Debtors post-Petition Date.

4.  The Court is reserving final ruling on whether any of the Cash constitutes collateral of any Prepetition Lienholder. To the extent any Cash may be the collateral of any Prepetition Lienholders, the Debtors' are authorized to use such Cash, for expenses in the ordinary course of business, pursuant to sections 361 and 363 of the Bankruptcy Code on an *interim* basis pending a final hearing on the Motion. The Court finds that such use of Cash is necessary to avoid immediate and irreparable harm to the estates of the Debtors pending a final hearing.

5.  The hearing on the approval of the Motion on a final basis is set for _____ _____, 2013 at _.m. in Department 2. Any objections to the Motion shall be filed and served by no later than _____ _____, 2013.  Any replies shall be filed and served by no later than _____ _____, 2013. The Debtors shall give notice of the hearing and pleadings deadlines set forth in this Order.

6.  Nothing herein or in the Motion shall affect or be deemed to constitute an admission to the validity, priority or extent of any lien asserted against the Debtors' estates.

7.  Bankruptcy Rule 4001 has been satisfied.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

**CSD 1001A**

American LegalNet, Inc.
www.USCourtForms.com

CSD 1001A [11/15/04] **(Page 3)**

    8.   The Court retains jurisdiction to interpret and enforce the terms of this Order.

CSD 1001A

American LegalNet, Inc.
www.USCourtForms.com

**CSD 1001A** [11/15/04]
Name, Address, Telephone No. & I.D. No.

Ali M.M. Mojdehi (123846)
Janet D. Gertz (231172)
Cooley LLP
4401 Eastgate Mall
San Diego, CA 92121
Tel. 858 550-6000
Fax: 858 550-6420
[Proposed] Counsel for Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

| | |
|---|---|
| In Re.<br>VAIL LAKE RANCHO CALIFORNIA, LLC, a California limited liability company; VAIL LAKE USA, LLC, a California limited liability company; VAIL LAKE VILLAGE & RESORT, LLC, a California limited liability company; VAIL LAKE GROVES, LLC, a California limited liability company; AGUA TIBIA RANCH, LLC, a Delaware limited liability company; OUTDOOR RECREATIONAL MANAGEMENT, LLC, a California limited liability company,,<br><br>Debtors. | BANKRUPTCY NO. 12-16684-LA11<br>Jointly Administered with<br>   Case No. 13-05927-LA11<br>   Case No. 13-05930-LA11<br>   Case No. 13-05931-LA11<br>   Case No. 13-05932-LA11<br>   Case No. 13-05944-LA11<br>Date of Hearing:   N/A<br>Time of Hearing:   N/A<br>Name of Judge:   Hon. Louise DeCarl Adler |

## Final Order Authorizing Debtors' Use of Cash for Business Operations

      **IT IS ORDERED THAT** the relief sought as set forth on the continuation pages attached and numbered two (2)

through <u>2</u> with exhibits, if any, for a total of <u>2</u> pages, is granted. Motion/Application Docket Entry No. __.

//

//

//

DATED:

_____
Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under
Fed. R. of Bankr. P. 9011 that the relief in the order is the
relief granted by the court.

Submitted by:
Cooley LLP
_____
(Firm name)

By: /s/ Ali M.M. Mojdehi
_____
[Proposed] Attorney for ☒ Movants ☐ Respondent
Debtors and Debtors in Possession

**CSD 1001A**

merican LegalNet, Inc.
www.USCourtForms.com

**CSD 1001A** [11/15/04] **(Page 2)**

ORDER AUTHORIZING DEBTORS' USE OF CASH FOR BUSINESS OPERATIONS
DEBTORS: Vail Lake Rancho California, LLC; Vail Lake USA, LLC; Vail Lake          CASE NO: 12-16684-LA11 (lead
Village & Resort, LLC; Vail Lake Groves, LLC; Agua Tibia Ranch, LLC; Outdoor     case)
Recreational Management, LLC

---

**WHEREAS**, having considered (i) the motion and memorandum of points and authorities of Vail Lake Rancho California, LLC ("VLRC"); Vail Lake USA, LLC ("VLU"); Vail Lake Village & Resort, LLC ("VLVR"); Vail Lake Groves, LLC ("VLG"); Agua Tibia Ranch, LLC ("ATR"); and Outdoor Recreational Management, LLC ("ORM"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), for an interim order authorizing the use of Cash[1] in the Debtors' post-Petition Date business operations (the "Motion") and thereafter hearing the Motion on a final basis; (ii) the Declaration of Thomas C. Hebrank in Support of the Debtors' First Day Motions [Dkt. No. 54], (iii) the Supplemental Declaration of Thomas C. Hebrank in Support of the Motion, and (iv) all other papers relevant to the Motion;

**WHEREAS**, the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409;

**WHEREAS**, it appearing that good cause exists for granting the relief requested in the Motion pursuant to sections 105, 361, 362 and 363 of the Bankruptcy Code;

**WHEREAS**, it also appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, creditors, and all other parties in interest;

**WHEREAS**, the Debtors having provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances and no other or further notice needing be provided;

**THEREFORE**, after due deliberation and good cause appearing, it is hereby ORDERED, that:

1. The Motion is GRANTED on a final basis.

2. The notice on the Motion was adequate.

3. None of the Debtors' Cash received post-Petition Date constitutes the collateral of any Prepetition Lienholder for purposes of section 363 of the Bankruptcy Code. The Debtors are not required to obtain authority to use such Cash, in the ordinary course of business as provided by section 363(c)(1) of the Bankruptcy Code.

4. The Cash on hand as of the Petition Date shall be segregated from all post-Petition Date Cash receipts, which shall adequately protect the interests of the Taxing Authorities.

5. Nothing herein or in the Motion shall affect or be deemed to constitute an admission to the validity, priority or extent of any lien asserted against the Debtors' estates.

6. The Court retains jurisdiction to interpret and enforce the terms of this Order.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

**CSD 1001A**

American LegalNet, Inc.
www.USCourtForms.com

# **<u>Exhibit B</u>**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | June 3,2013 | June 10,2013 | June 17,2013 | June 24,2013 | July 1,2013 | July 8,2013 | July 15,2013 | July 22,2013 | July 29,2013 | August 5,2013 | August 12,2013 | August 19,2013 | August 26,2013 | |
| Beginning Cash Balance | ($33,407) | ($19,033) | $15,122 | $681 | $12,599 | $43,200 | $79,792 | $60,954 | $95,576 | $76,931 | $108,713 | $94,365 | $129,424 | ($33,407) |
| **Cash Inflows - Operations** | | | | | | | | | | | | | | |
| Special Events | 12,545 | | | | | | | | | | | | | 12,545 |
| Membership | 8,000 | 8,000 | 10,000 | 10,500 | 10,500 | 10,000 | 8,000 | 8,000 | 8,000 | 8,000 | 10,000 | 10,500 | 8,000 | 117,500 |
| Guard Shack (Visitor Parking) | 1,313 | 813 | 813 | 313 | 1,250 | 313 | 313 | 313 | 313 | 313 | 313 | 313 | 313 | 7,000 |
| Front Office (RV Storage, RV Income, Mini Golf, Golf Cart Reg, Bike/Day Passes) | 30,313 | 30,313 | 30,313 | 30,313 | 60,625 | 30,313 | 30,313 | 30,313 | 30,313 | 30,313 | 30,313 | 30,313 | 30,313 | 424,375 |
| Deli | 3,000 | 3,000 | 3,000 | 3,000 | 6,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 42,000 |
| Bar | 250 | 250 | 250 | 250 | 500 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,500 |
| Waterslide | 1,500 | 1,500 | 1,500 | 1,500 | 3,000 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 21,000 |
| ***Cash Inflows*** | $56,920 | $43,875 | $45,875 | $45,875 | $81,875 | $45,375 | $43,375 | $43,375 | $43,375 | $43,375 | $45,375 | $45,875 | $43,375 | $627,920 |
| **Cash Outflows - Operations** | | | | | | | | | | | | | | |
| Cost of Goods Sold | 1,625 | 1,625 | 1,625 | 1,625 | 3,250 | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 | 1,625 | 22,750 |
| Property/GL Insurance | 10,849 | | | | 2,840 | | | | | 2,840 | | | | 16,530 |
| Legal | | | | | | | | | | | | | | |
| CRO/Accounting | | | | 20,000 | | | | | 25,000 | | | | 25,000 | 70,000 |
| Appraiser | | | | | | | | | | | | | | |
| US Trustee fees | | | | | | | 975 | | | | | | | 975 |
| Johnson's Mgmt Fee | | | | | | | | | | | | | | |
| Payroll (incl. taxes) | | | 23,500 | | | 23,500 | | | 23,500 | | 23,500 | | 23,500 | 141,000 |
| Jurislov Lake Management | | | | 4,167 | | | | | 4,167 | | | | 4,167 | 12,500 |
| Workman's Comp Insurance | | | 2,025 | | | | 2,025 | | | | | 2,025 | | 6,075 |
| Entertainment | 500 | 500 | 500 | 500 | 11,000 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 17,000 |
| Supplies | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 13,000 |
| Office | 1,177 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 7,177 |
| Advertising | 600 | | | 1,000 | | | | | 600 | | | | 600 | 2,800 |
| Credit Card Fees | 643 | 636 | 666 | 666 | 1,183 | 658 | 628 | 628 | 628 | 628 | 658 | 666 | 628 | 8,916 |
| Repairs & Maintenance | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 39,000 |
| Outside Services | 2,500 | 1,500 | 1,500 | 1,500 | 5,000 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 24,000 |
| Sales Tax | | 960 | | | | | 960 | | | | 1,440 | | | 3,360 |
| Gas & Electric | | | 21,000 | | | | 21,000 | | | | 21,000 | | | 63,000 |
| Other Utilities | | | 5,000 | | | | 5,000 | | | | 5,000 | | | 15,000 |
| Memorial Weekend Trailing Liab | 20,651 | | | | | | | | | | | | | 20,651 |
| ***Cash Outflows*** | $42,546 | $9,721 | $60,316 | $33,957 | $51,273 | $8,783 | $62,213 | $8,753 | $62,020 | $11,593 | $59,723 | $10,816 | $62,020 | $483,734 |
| **Net Cash Flow - Operations** | 14,374 | 34,154 | (14,441) | 11,918 | 30,602 | 36,592 | (18,838) | 34,622 | (18,645) | 31,782 | (14,348) | 35,059 | (18,645) | 144,186 |
| **Ending Cash Balance** | ($19,033) | $15,122 | $681 | $12,599 | $43,200 | $79,792 | $60,954 | $95,576 | $76,931 | $108,713 | $94,365 | $129,424 | $110,779 | $110,779 |